Redacted Public Version

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| XOCKETS, INC., | |
| *Plaintiff*, | |
| v. | Case No. 6-24-cv-00453-LS |
| | Hon. Leon Schydlower, U.S.D.J. |
| MICROSOFT CORPORATION, NVIDIA CORPORATION, and RPX CORPORATION, | |
| *Defendants*. | |

**DEFENDANT MICROSOFT'S OPPOSITION TO PLAINTIFF
XOCKETS' MOTION FOR PRELIMINARY INJUNCTION**

**REDACTED VERSION**

# TABLE OF CONTENTS

**Page**

RELEVANT FACTUAL BACKGROUND ....................................................................2

LEGAL STANDARD .............................................................................................4

ARGUMENT .......................................................................................................5

I.   PLAINTIFF HAS NOT ESTABLISHED AN IMMINENT THREAT OF IRREPARABLE
     HARM .....................................................................................................5

   A.   Plaintiff's Purported Injury Is Not Irreparable Because It Could Be Compensated with
        Monetary Damages ..............................................................................6

   B.   Plaintiff's Extended Delay in Bringing This Action Further Demonstrates the Absence of
        Any Imminent Threat of Irreparable Harm ...............................................9

II.  PLAINTIFF HAS FAILED TO PROVE A LIKELIHOOD OF SUCCESS ON THE
     MERITS .................................................................................................10

   A.   Plaintiff Is Not Likely to Succeed on the Merits of Its Sherman Act § 1 Claim.............. 10

      1.   *Plaintiff Has Not Set Forth Any Direct Evidence of Defendants' Alleged Buyers'*
           *Cartel* ........................................................................................ 10

      2.   *Plaintiff Provides No Evidence of Parallel Conduct Consistent with the Alleged*
           *Buyers' Cartel* ............................................................................... 12

      3.   *Plaintiff's Factual Allegations and So-Called Evidence Are Consistent with*
           *Unilateral Conduct* ........................................................................ 13

      4.   *Plaintiff Has Not Presented Any Competent Expert Evidence to Support the*
           *Existence of the Alleged Buyers' Cartel* .............................................. 15

   B.   Plaintiff Is Not Substantially Likely to Succeed on the Merits of Its Sherman Act § 2
        Conspiracy Claims ............................................................................. 16

   C.   Plaintiff Cannot Show the Required Antitrust Injury .......................................... 17

III. THE BALANCE OF EQUITIES TIPS CLEARLY IN MICROSOFT'S FAVOR ................. 18

IV.  PLAINTIFF'S ASSERTION THAT THE PROPOSED INJUNCTION IS IN THE PUBLIC
     INTEREST IS UNSUPPORTED ..................................................................... 20

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Academy of Allergy & Asthma in Primary Care v. La. Health Svc. & Indem. Co.*,
　2023 WL 8185692 (E.D. La. Nov. 27, 2023) ...............................................................13

*Air Prod. & Chems., Inc. v. Gen. Servs. Admin.*,
　700 F. Supp. 3d 487 (N.D. Tex. 2023).........................................................................8

*Alvarez v. Texas Educ. Agency*,
　2020 WL 7258256 (W.D. Tex. Dec. 9, 2020) ..............................................................5

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
　750 F.2d 1470 (9th Cir. 1985).....................................................................................7

*Anderson v. 21st Mortg. Corp.*,
　2016 WL 11582928 (W.D. Tex. Sept. 26, 2016) ................................................. 11, 17

*Apple Barrel Prods., Inc. v. Beard*,
　730 F.2d 384 (5th Cir. 1984).....................................................................................18

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)...................................................................................................10

*Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*,
　875 F.2d 1174 (5th Cir. 1989).....................................................................................8

*Aviation Specialties, Inc. v. United Techs. Corp.*,
　568 F.2d 1186 (5th Cir. 1978)...................................................................................12

*Bailey v. Shell W. E&P, Inc.*,
　609 F.3d 710 (5th Cir. 2010).....................................................................................18

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)............................................................................................ 11, 12

*BHI Energy I Power Servs., LLC v. KVP Energy Servs., LLC*,
　2023 WL 223179 (N.D. Tex. Jan. 17, 2023) ...............................................................8

*Boardman v. Pac. Seafood Grp.*,
　822 F.3d 1011 (9th Cir. 2016)....................................................................................7

*Boire v. Pilot Freight Carriers, Inc.*,
　515 F. 2d 1185 (5th Cir. 1975) ...................................................................................9

Redacted Public Version

*California v. Am. Stores Co.*,
  492 U.S. 1301 (1989) ..................................................................................... 7

*Cascades Computer Innovation LLC v. RPX Corp.*,
  2013 WL 6247594 (N.D. Cal. Dec. 3, 2013) ............................................... 12

*Chacon v. Granata*,
  515 F.2d 922 (5th Cir. 1975) ........................................................................ 6

*Citibank, N.A. v. Citytrust*,
  756 F. 2d 273 (2d Cir. 1985) ........................................................................ 9

*In re Commodity Exch., Inc.*,
  213 F. Supp. 3d 631 (S.D.N.Y. 2016) .......................................................... 15

*Congress of Racial Equality v. Douglas*,
  318 F.2d 95 (5th Cir. 1963) .......................................................................... 10

*Cont'l Auto. Sys., Inc. v. Avanci, LLC*,
  485 F. Supp. 3d 712 (N.D. Tex. 2020), *aff'd, Cont'l Auto. Sys., Inc. v. Avanci, LLC*, 2022 WL 2205469 (5th Cir. June 21, 2022) ................................. 11, 12, 14, 18

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., LLC*,
  710 F.3d 579 (5th Cir. 2013) ........................................................................ 18

*Dealer Comput. Servs., Inc. v. Ford Motor Co*.,
  2006 WL 801033 (S.D. Tex. Mar. 28, 2006), *aff'd*, 190 F. App'x 396 (5th Cir. 2006) ................................................................................................... 5

*Deep South Commc'ns, LLC v. Fellegy*,
  652 F. Supp. 3d 636 (M.D. La. 2023) .......................................................... 7

*Dennis v. Melancon, Inc. v. City of New Orleans*,
  703 F.3d 262 (5th Cir. 2012) ........................................................................ 6

*Dickey's Barbecue Rests., Inc. v. GEM Inv. Grp., L.L.C.*,
  2012 WL 1344352 (N.D. Tex. Apr. 18, 2012) ............................................. 8

*Div. 80, LLC v. Garland*,
  2022 WL 3648454 (S.D. Tex. Aug. 23, 2022) ............................................. 8

*Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*,
  441 F.2d 560 (5th Cir. 1971) ........................................................................ 5

*Ferrer v. Chevron Corp.*,
  484 F.3d 776 (5th Cir. 2007) ........................................................................ 17

Redacted Public Version

*Flywheel Fitness, LLC v. Flywheel Sports, Inc.*,
    2013 WL 12138593 (E.D. Tex. Feb. 6, 2013) ................................................9

*Fund for Animals v. Frizzell*,
    530 F. 2d 982 (D.C. Cir. 1975) .....................................................................9

*Future Proof Brands, LLC v. Molson Coors Bev. Co.*,
    2020 U.S. Dist. LEXIS 272489 (W.D. Tex. Dec. 14, 2020) .................... 10, 12

*Goal Acquisitions Corp. v. Digit. Virgo*,
    2024 WL 1078431 (W.D. Tex. Mar. 12, 2024) ..........................................19

*Golden Bridge Tech., Inc. v. Motorola, Inc.*,
    547 F.3d 266 (5th Cir. 2008) .......................................................................13

*Golf City, Inc. v. Wilson Sporting Goods, Co., Inc.*,
    555 F.2d 426 (5th Cir. 1977) .......................................................................14

*Gould v. Gen. Photonics Corp.*,
    1979 WL 25064 (N.D. Cal. Mar. 2, 1979) ..................................................12

*Gray Cas. & Sur. Co. v. 3i Contracting, LLC*,
    2024 WL 1121800 (N.D. Tex. Mar. 13, 2024) ..............................................5

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
    49 F.3d 1551 (Fed. Cir. 1995) ......................................................................6

*Hinds Cnty v. Wachovia Bank N.A.*,
    620 F. Supp. 2d 499 ...................................................................................15

*Holland Am. Ins. Co. v. Succession of Roy*,
    777 F.2d 992 (5th Cir. 1985) ........................................................................6

*Hosp. of Jefferson, Inc. v. Se. Med. All.*,
    123 F.3d 301 (5th Cir. 1997) .......................................................................18

*Ill. Tool Works, Inc. v. Ind. Ink, Inc.*,
    547 U.S. 28 (2006) .....................................................................................17

*Interox Am. v. PPG Indus., Inc.*,
    736 F.2d 194 (5th Cir. 1984) ........................................................................6

*Island Intell. Prop. LLC v. TD Ameritrade, Inc.*,
    2022 WL 17080738 (E.D. Tex. Nov. 17, 2022) ..........................................17

*Jebaco, Inc. v. Harrah's Operating Co., Inc.*,
    587 F.3d 314 (5th Cir. 2009) .................................................................. 17, 18

Redacted Public Version

*Johnson v. Hosp. Corp. of Am.*,
   95 F.3d 383 (5th Cir. 1996) ................................................................. 15

*JSW Steel (USA) Inc. v. Nucor Corp.*,
   586 F. Supp. 3d 585 (S.D. Tex. 2022) .................................................. 15

*Kleinmann v. City of Cedar Park*,
   2022 WL 22362584 (W.D. Tex. July 20, 2022) ...................................... 6

*Leaf Trading Cards, LLC v. Upper Deck Co.*,
   2019 WL 7882552 (N.D. Tex. Sept. 18, 2019) ....................................... 9

*Lewis v. S.S. Baune*,
   534 F.2d 1115 (5th Cir. 1976) ............................................................... 5

*Marlin v. Moody Nat'l Bank, N.A.*,
   248 F. App'x 534 (5th Cir. 2007) ......................................................... 16

*Mesa Hills Specialty Hosp. v. Becerra*,
   2024 WL 1687685 (W.D. Tex. Apr. 17, 2024) ..................................... 10

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
   760 F.2d 618 (5th Cir. 1985) ................................................................. 5

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984) ............................................................................. 12

*Moore v. Brown*,
   868 F.3d 398 (5th Cir. 2017) ................................................................. 4

*Motile Optics, LLC v. SAVV Ent. Sys., Inc.*,
   2017 WL 2901709 (E.D. Tex. Jan. 10, 2017), *R&R adopted*, 2017 WL
   2901715 (E.D. Tex. Feb. 1, 2017) ........................................................ 6

*Nero AG v. MPEG LA, L.L.C.*,
   2010 WL 4878835 (C.D. Cal. Nov. 24, 2010) ..................................... 11

*Pastel Cartel, LLC v. U.S. Food & Drug Admin.*,
   2023 WL 9503484 (W.D. Tex. Dec. 14, 2023) ...................................... 5

*Payne v. Travenol Lab'y.*,
   565 F.2d 895 (5th Cir. 1978) ............................................................... 20

*Phototron Corp. v. Eastman Kodak Co.*,
   842 F.2d 95 (5th Cir. 1988) ................................................................. 18

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
   158 F. Supp. 3d 544 (E.D. La. 2016) .................................................. 15

Redacted Public Version

*Preston v. Seterus, Inc.*,
  2012 WL 13094123 (N.D. Tex. Aug. 22, 2012) ............................................................4

*Proofpoint, Inc. v. Boone*,
  2021 WL 5194724 (W.D. Tex. Sept. 21, 2021) ...................................................... 8, 9

*Quanta Comput., Inc. v. LG Elecs. Inc.*,
  553 U.S. 617 (2008) ..............................................................................................15

*Royal Drug Co., Inc. v. Grp. Life & Health Ins. Co.*,
  737 F.2d 1433 (5th Cir. 1984) .................................................................................13

*Russell C. House Transfer & Stor. Co. v. U.S.*,
  189 F.2d 349 (5th Cir. 1951) ...................................................................................19

*Sampson v. Murray*,
  415 U.S. 61 (1974) ..................................................................................................6

*Schine Chain Theatres v. U.S.*,
  334 U.S. 110 (1948) ...............................................................................................20

*Sony Elecs., Inc. v. Soundview Techs., Inc.*,
  157 F. Supp. 2d 180 (D. Conn. 2001) ......................................................................12

*Starbucks Corp. v. McKinney*,
  144 S. Ct. 1570 (2024) .............................................................................................5

*Sulmeyer v. Coca Cola Co.*,
  515 F.2d 835 (5th Cir. 1975) ...................................................................................17

*Sumitomo Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc.*,
  2007 WL 2318903 (N.D. Cal. Aug. 13, 2007), *aff'd*, 301 F. App'x 959 (Fed.
  Cir. 2008) ............................................................................................................11

*Tribal Sols. Grp., LLC v. Valandra*,
  2023 WL 7314308 (5th Cir. 2023) ..........................................................................10

*Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.*,
  496 F.3d 403 (5th Cir. 2007).................................................................................12

*Union Carbide Corp. v. UGI Corp.*,
  731 F.2d 1186 (5th Cir. 1984).................................................................................20

*United States v. Abbott*,
  110 F.4th 700 (5th Cir. 2024)...................................................................................5

*United States v. Emerson*,
  270 F.3d 203 (5th Cir. 2001)....................................................................................6

Redacted Public Version

*Waggoner v. Denbury Onshore, L.L.C.*,
    612 F. App'x 734 (5th Cir. 2015) ....................................................................18

*Wealthmark Advisors Inc. v. Phoenix Life Ins. Co*.,
    2017 WL 1133506 (W.D. Tex. Mar. 24, 2017)................................................16

*Winter v. Nat'l Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ...............................................................................................4

*Wireless Agents LLC v. T-Mobile USA, Inc.*,
    2006 WL 1540587 (N.D. Tex. June 6, 2006) ........................................... 6, 9

*Wynn Oil Co. v. Purolator Chem. Corp.*,
    536 F.2d 84 (5th Cir. 1976) ............................................................................20

**Statutes**

15 U.S.C. § 15(a) ......................................................................................................18

Sherman Act § 1 ................................................................................................ 10, 16

Sherman Act § 2 .......................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 65(d)(1)............................................................................................19

Foo Yun Chae, *No merger scrutiny of Microsoft's hiring of Inflection staff, EU
    says*, Reuters (Sept. 18, 2024, 2:42 PM),
    https://www.reuters.com/markets/europe/eu-antitrust-regulators-will-not-act-
    microsofts-hiring-inflection-staff-2024-09-18/ ............................................15

News & Events, FTC, https://www.ftc.gov/news-events/news/speeches (last
    visited Oct. 2, 2024).........................................................................................14

U.S. Dept. of Justice, *Bus. Rev. Ltr. to Avanci*, July 28, 2020 ................................. 11, 20

Plaintiff Xockets' motion for a preliminary injunction based upon its antitrust claims fails at the threshold because of its complete failure to demonstrate any threat of irreparable harm or any hope of showing a likelihood of success on the merits. Plaintiff alleges that it would have received patent license or acquisition revenues but for NVIDIA's and Microsoft's alleged agreement to only seek to purchase or license Plaintiff's patents through RPX. But any lost revenues would be compensable with monetary damages, negating any claim of irreparable harm. Notably, Xockets does not allege that it makes any products of its own that compete with Defendants' products, because it does not. The absence of irreparable harm is further confirmed by the fact that Plaintiff sat on its supposed rights for years—claiming it was aware that NVIDIA and Microsoft were allegedly infringing its patents at least as early as 2022. Plaintiff then waited more than three months after it claims it learned about Defendants' alleged buyers' cartel before filing this motion. On these facts alone, Plaintiff's alleged harms are not irreparable and do not support the extraordinary remedy of preliminary relief.

Plaintiff fares no better in trying to demonstrate a likelihood of success on the merits of its antitrust claims. To state a plausible claim of conspiracy, Plaintiff must come forward with direct or circumstantial evidence supporting the existence of an agreement by Defendants to participate in the alleged anticompetitive scheme. But Plaintiff has presented no such evidence. To the contrary, there is not even any evidence that NVIDIA and Microsoft acted in parallel when not engaging in patent license negotiations with Plaintiff. Plaintiff cites no evidence that it *ever offered* a patent license to NVIDIA or Microsoft, and Plaintiff fails to present any evidence that *anyone* took a license to Plaintiff's supposedly valuable patents in the years *before* the alleged conspiracy began. Instead, all that Plaintiff can show is that NVIDIA and Microsoft are two members of the RPX platform (which seeks to license patents on behalf of its many members on a non-exclusive

basis), and that Microsoft did not accept an unsolicited and ***anonymous*** offer from a third-party

broker to ***purchase a patent holding company*** that turned out to be Plaintiff. None of these facts

support the existence of the alleged agreement by NVIDIA and Microsoft to refuse to engage in

individual negotiations to license or acquire Plaintiff's patents. Nor has Plaintiff provided any

competent expert analysis to support the existence of such an agreement.

Plaintiff's manufactured-for-litigation claims, based on nothing more than wild

speculation, do not come close to satisfying the pleading standards, much less the stringent

standards for granting a preliminary injunction. Moreover, the requested injunction is hopelessly

overbroad and vague, seeking injunctive relief Plaintiff ***cannot*** legally obtain based upon its patent

claims and threatening to disrupt Defendants' procompetitive operations, so the balance of

hardships tips decisively in Defendants' favor. Plaintiff's motion should be denied.

## RELEVANT FACTUAL BACKGROUND

Plaintiff alleges that Xockets and Microsoft discussed the potential benefits of Xockets'

technology in May 2016 and again in March 2017. FAC ¶ 257; Mot. at 3–4, 13. But when Microsoft

allegedly did not express further interest in continuing these discussions, Plaintiff did not follow

up. Plaintiff does not allege that it ever offered Microsoft a patent license or that Microsoft ever

refused to negotiate a patent license with Plaintiff. Instead, Plaintiff claims, without support, that

"Microsoft just took Xockets' technology without paying for it." FAC ¶ 258.

Plaintiff asserts that non-party Mellanox adopted Plaintiff's technology, that NVIDIA

subsequently acquired Mellanox, and that NVIDIA has been infringing Plaintiff's patents since

that acquisition, which was made public in 2019. *See* FAC ¶¶ 23–24, 33–36, 70; Declaration of

Jason Sheasby, ECF No. 4-1, ¶ 12; Exs. 2, 7. Plaintiff further alleges that its technology is

embodied in the products Microsoft purchases as a customer of NVIDIA. *See* FAC ¶¶ 23–25, 83.

Redacted Public Version

Plaintiff does not point to any evidence that it ever offered NVIDIA a patent license or that NVIDIA ever refused to negotiate a patent license with Plaintiff. While Plaintiff asserts that it was aware of the alleged infringement of its patents by NVIDIA and Microsoft no later than 2022, FAC ¶ 43; Mot. at 4-5, Plaintiff does not allege that it took any action to remedy this claimed infringement until it filed this lawsuit more than two years later. *See, e.g.*, FAC ¶ 43.

In March 2024, a third-party broker—Tech+IP—sent Microsoft an unsolicited email offering a "'Perfect Timing' Opportunity to Acquire [Redacted] and its Patent Portfolio Fundamental to Enabling AI & Modern Clouds," anonymizing the party on whose behalf it was purportedly acting. Ex. A, Declaration of Michael Wetter ("Wetter Decl.") ¶¶ 2-4 (redaction in original); FAC ¶ 282. As is apparent from the email and attached "teaser," the offer was not for a patent license, but for the acquisition of the unnamed company's entire business. This communication did not disclose that the company was Xockets. Ex. A, Wetter Decl. ¶ 3. Plaintiff alleges that a similar outreach was made to NVIDIA the same day. FAC ¶ 281.

Plaintiff further alleges ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████[1] FAC ¶¶ 283–84; Mot. Ex. 34, Declaration of Brian Hinman ¶ 9, ECF No. 4-35. However, it is undisputed that the terms of the RPX membership agreement are non-exclusive and that each of RPX's members, including NVIDIA and Microsoft, were free to engage in individual patent licensing or acquisition negotiations with Plaintiff had they been independently interested in doing so. Declaration of Ryan Hanneken ("Hanneken Decl.") ¶ 4; Declaration of Daniel P. McCurdy ("McCurdy Decl.") ¶ 10. Indeed, as explained by Microsoft's

---

[1] As set forth in RPX's Opposition, it was ***Xockets*** that reached out to RPX, not the other way around, as Plaintiff claims. McCurdy Decl. ¶ 12; Hanneken Decl. ¶¶6–7.

Redacted Public Version

expert economist the theory posited by Plaintiff and its economist "does not even consider the possibility that a decision to not license Xockets' patent technology could be because it has limited or no value to Defendants or is being offered at a price … that is not commensurate with its value." Ex. D, Declaration of John H. Johnson, IV, Ph.D. ¶ 9.

Plaintiff presents no evidence that it ever told Microsoft it believed Microsoft was infringing its patents or that Microsoft needed a license at any time between 2017 (when it allegedly discussed its technology with Microsoft) and when it filed this lawsuit seven years later. And it offers no evidence for its hyperbolic claims of theft and unsupported mischaracterizations of NVIDIA's and Microsoft's own technology—developed independently of Xockets—as supposedly belonging to Plaintiff. Instead, more than three months after Plaintiff claims to have learned of the alleged buyers' cartel ███████████, and more than two years after it claims to have learned about the alleged infringement of its patents by NVIDIA and Microsoft, Plaintiff filed this suit and moved for a preliminary injunction.

## LEGAL STANDARD

Preliminary injunctions are an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted); *see also Preston v. Seterus, Inc.*, 2012 WL 13094123, at *1 (N.D. Tex. Aug. 22, 2012). A court may grant such relief only when the plaintiff establishes: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm if the injunction does not issue; (4) that the grant of an injunction is in the public interest."[2] *Moore v. Brown*, 868

---

[2] Plaintiff says that the fourth prong of this standard requires a showing that the injunction "will not disserve the public interest." Mot. at 33. But the "traditional rule is that a plaintiff seeking a

Redacted Public Version

F.3d 398, 402–03 (5th Cir. 2017). Injunctive relief will be denied based on a failure to prove each of these four elements. *J.A. b/n/f Alvarez v. Texas Educ. Agency*, 2020 WL 7258256, at *7 (W.D. Tex. Dec. 9, 2020).

Even when a plaintiff meets each requirement, "the decision whether to grant or deny a preliminary injunction remains within the court's discretion, and the decision to grant a preliminary injunction is treated as the exception rather than the rule." *Pastel Cartel, LLC v. U.S. Food & Drug Admin.*, 2023 WL 9503484, at *3 (W.D. Tex. Dec. 14, 2023) (citing *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)). Where, as here, Plaintiff seeks to disturb the existing status quo, a preliminary injunction is strongly disfavored and should not be issued unless the facts and law clearly favor the moving party. *See Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971) (affirming denial of motion to enjoin defendant from "continuing to refuse to sell [plaintiffs'] supplies"); *Dealer Comput. Servs., Inc. v. Ford Motor Co.*, 2006 WL 801033, at *4 (S.D. Tex. Mar. 28, 2006), *aff'd*, 190 F. App'x 396 (5th Cir. 2006) (denying injunction that would impose a new licensing agreement) (citation omitted).

## ARGUMENT

## I.   PLAINTIFF HAS NOT ESTABLISHED AN IMMINENT THREAT OF IRREPARABLE HARM

Irreparable harm is the "most essential" element for granting a preliminary injunction. *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976); *see also Gray Cas. & Sur. Co. v. 3i Contracting, LLC*, 2024 WL 1121800, at *10 (N.D. Tex. Mar. 13, 2024). Plaintiff must establish that "(1) the harm to the movant is imminent; (2) the injury would be irreparable; and (3) that [the

---

preliminary injunction must make a clear showing that … an injunction is in the public interest." *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1571 (2024); *accord United States v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024).

Redacted Public Version

movant] has no other adequate legal remedy." *Kleinmann v. City of Cedar Park*, 2022 WL 22362584, at *3 (W.D. Tex. July 20, 2022) (citations omitted); *see also Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). Courts will not grant a preliminary injunction "simply to prevent the possibility of some remote future injury." *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001). Rather, a "*presently existing actual threat must be shown*." *Id.* (emphasis in original); *see also Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). The possibility that adequate "relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *Dennis v. Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012).

### A.   Plaintiff's Purported Injury Is Not Irreparable Because It Could Be Compensated with Monetary Damages

Plaintiff has failed to demonstrate any threatened harm that cannot be compensated by money damages. As Plaintiff acknowledges, "an injury is irreparable if it cannot be undone through monetary remedies." Mot. at 30 (citing *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984)); *see also Dennis*, 703 F.3d at 279.

Here, Plaintiff's claimed harm is the loss of a market rate license or acquisition fee, for Plaintiff's patents-in-suit—precisely the type of claimed lost revenues that are compensable by damages. *Motile Optics, LLC v. SAVV Ent. Sys., Inc.*, 2017 WL 2901709, at *4 (E.D. Tex. Jan. 10, 2017), *R&R adopted*, 2017 WL 2901715 (E.D. Tex. Feb. 1, 2017); *see also High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995); *Wireless Agents LLC v. T-Mobile USA, Inc.*, 2006 WL 1540587, at *4 (N.D. Tex. June 6, 2006). Plaintiff's own cited case recognizes that "an adequate damages award could be assessed based upon either the estimated value of the technology or upon the value paid by a licensee of the technology." *Interox*, 736 F.2d at 202.

Redacted Public Version

Plaintiff posits three forms of purported irreparable harm. Mot. at 30-32. None of them satisfy the irreparable harm test.

*First*, Plaintiff claims that irreparable harm is shown by the purported harm to competition caused by the alleged buyers' cartel, citing *California v. Am. Stores Co.*, 492 U.S. 1301 (1989) and *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011 (9th Cir. 2016). Mot. at 30-31. But those two cases involved challenges to proposed mergers between horizontal competitors causing harm to the public and which could not be unscrambled if not preliminarily enjoined. That is a far cry from the alleged agreement here directed solely at Plaintiff's technology that does not involve any structural intermingling of Defendants' businesses or assets or claimed harm to any entity other than Plaintiff. There is nothing irreparable in the "harm to competition" alleged by Plaintiff, which is indistinguishable from the claim that Plaintiff has been deprived of patent licensing revenue or acquisition fees that could be compensated with monetary damages.

*Second*, Plaintiff claims that the alleged buyers' cartel will cause irreparable harm because it will "eventually drive [Plaintiff] out of business," and proffers a statement from Xockets' President, Brian Hinman, in support.[3] Mot. at 31; Hinman Decl. ¶ 10. Mr. Hinman states:

> **Since RPX has become involved**, Xockets has been unable to license or sell its patents to any potential buyer or licensee (including Microsoft, NVIDIA, or RPX) at a fair market rate. If Plaintiff is unable to obtain a fair return on its patents or is unable to license or sell its patents at all, this will *eventually* drive Xockets out of business.

---

[3] While affidavits may be used in support of a preliminary injunction motion, such motions will be denied "if the affidavits are too vague or conclusory to demonstrate a clear right to relief." *Deep South Commc'ns, LLC v. Fellegy*, 652 F. Supp. 3d 636, 667 (M.D. La. 2023); *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (injunction improper when based on conclusory affidavits from plaintiff's "own executives delineating the disruptive effect of [defendant's] contracts on [its] business"). The Hinman declaration fits this description to a tee.

Redacted Public Version

Hinman Decl. ¶ 10 (emphases added). The fatal problem with Mr. Hinman's self-serving and conclusory assertion is that there is no evidence that Plaintiff was able to license its patents **to anyone** for the many years before the alleged buyers' cartel was purportedly formed in 2024, yet this never caused Plaintiff to go out of business. Indeed, Plaintiff points to no evidence that it has any business besides the holding of patents, and Plaintiff never explains what operating costs it incurs or why it could not continue to exist indefinitely as a holding company without patent revenues from Defendants.[4] The mere conclusory assertion that a plaintiff will eventually go out of business is insufficient to prove imminent irreparable harm.[5] *Div. 80, LLC v. Garland*, 2022 WL 3648454, at *2-4 (S.D. Tex. Aug. 23, 2022); *see also Dickey's Barbecue Rests., Inc. v. GEM Inv. Grp., L.L.C.*, 2012 WL 1344352, at *5 (N.D. Tex. Apr. 18, 2012); *BHI Energy I Power Servs., LLC v. KVP Energy Servs., LLC*, 2023 WL 223179, at *4-6 (N.D. Tex. Jan. 17, 2023).

*Third*, there is no merit to Plaintiff's assertion (Mot. at 31–32) that an alleged loss of business opportunities with NVIDIA and Microsoft constitutes irreparable injury. *Air Prod. & Chems., Inc. v. Gen. Servs. Admin.*, 700 F. Supp. 3d 487, 507 (N.D. Tex. 2023). Plaintiff cites no case where a court has found that an "eventual" *potential* loss of hypothetical business opportunities demonstrated imminent irreparable harm. Though Plaintiff cites *Proofpoint, Inc. v. Boone*, Mot. at 30, that case involved the threatened loss of goodwill with existing customers caused by a former employee's violation of a non-compete agreement, where he took confidential

---

[4] Plaintiff does not explain what its business does, if anything, besides hold patents and it appears that its website was created for this litigation. As of just two months ago, its website was non-existent—with the message "Coming Soon." Ex. C, Declaration of Rebecca Ou ("Ou Decl."). Today, its website still identifies no products or services for sale, and the only news updates posted on the site relate to this litigation. Ex. C, Ou Decl.

[5] Plaintiff's reliance on *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.* is unavailing. 875 F.2d 1174, 1179 (5th Cir. 1989). In *Atwood*, it was uncontested that plaintiffs were on the verge of going bankrupt. There is no such evidence here.

information to his new employer. 2021 WL 5194724, at *5–6 (W.D. Tex. Sept. 21, 2021). There is no evidence of lost goodwill with any of Plaintiff's existing customers or business partners here.

**B.**   **Plaintiff's Extended Delay in Bringing This Action Further Demonstrates the Absence of Any Imminent Threat of Irreparable Harm**

Plaintiff concedes that it was aware of Defendants' alleged patent infringement ***no later than 2022***, FAC ¶ 43, and further admits that it became aware of the alleged buyers' cartel ***no later than June 2024***. Plaintiff's Opposition to Emergency Motion for a Continuance ("Pl.'s Opp'n") at 4, ECF No. 39. Yet, Plaintiff waited ***three months*** to file this action and seek preliminary relief. By itself, this delay confirms the absence of any imminent irreparable harm. *See Flywheel Fitness, LLC v. Flywheel Sports, Inc.*, 2013 WL 12138593, at *4 (E.D. Tex. Feb. 6, 2013).

Absent a good explanation, a material delay in filing for relief "militates against the issuance of a preliminary injunction." *Wireless Agents,* 2006 WL 1540587, at *4; *see also Leaf Trading Cards, LLC v. Upper Deck Co.*, 2019 WL 7882552, at *2 (N.D. Tex. Sept. 18, 2019) (delay "demonstrates a lack of urgency and undercuts the need for a preliminary injunction") (citations omitted). Indeed, courts have found that ***a three-month delay, which is the bare minimum amount of time that Plaintiff delayed here, is inconsistent with a claim of imminent irreparable harm***. *See Boire v. Pilot Freight Carriers, Inc.*, 515 F. 2d 1185, 1193 (5th Cir. 1975) (three-month delay); *Citibank, N.A. v. Citytrust*, 756 F. 2d 273, 276–77 (2d Cir. 1985) (ten-week delay); *Fund for Animals v. Frizzell*, 530 F. 2d 982, 987 (D.C. Cir. 1975) (44-day delay); *see also Leaf Trading*, 2019 WL 7882552, at *2 (collecting cases).

Plaintiff does not explain why it waited three months after the purported "buyers' cartel was announced in June 2024" before seeking any relief. Pl.'s Opp'n at 4. Nor does Plaintiff explain why it waited years to file this litigation after discovering Defendants' purported infringement of its patents in 2022, or why it never approached Microsoft about its purported infringement or asked

Microsoft to take a license (as opposed to using a third-party broker to shop its entire business on an anonymous basis) before bringing this action. *Id.*

## II.    PLAINTIFF HAS FAILED TO PROVE A LIKELIHOOD OF SUCCESS ON THE MERITS

A preliminary injunction will not be granted where the movant cannot show that it is "substantially likely" to succeed on the merits of its claims. *See Mesa Hills Specialty Hosp. v. Becerra*, 2024 WL 1687685, at *2 (W.D. Tex. Apr. 17, 2024). A preliminary injunction should "only be used when it is clear that the question presented by the litigant who seeks the injunction is free from doubt." *Congress of Racial Equality v. Douglas*, 318 F.2d 95, 97 (5th Cir. 1963). Here, Plaintiff offers the same type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that the Supreme Court has found to be insufficient even to withstand a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A fortiori, such unsupported speculation about Defendants engaging in unlawful conduct—as opposed to actual evidence of such conduct—cannot meet the higher standards of proof required for a Court to grant preliminary relief. *See, e.g.*, *Future Proof Brands, LLC v. Molson Coors Bev. Co.*, 2020 U.S. Dist. LEXIS 272489, at *6 (W.D. Tex. Dec. 14, 2020); *see also Tribal Sols. Grp., LLC v. Valandra*, 2023 WL 7314308, at *2 (5th Cir. 2023).

### A.    Plaintiff Is Not Likely to Succeed on the Merits of Its Sherman Act § 1 Claim

#### 1.    *Plaintiff Has Not Set Forth Any Direct Evidence of Defendants' Alleged Buyers' Cartel*

Plaintiff has not come forward with any direct evidence of Defendants' alleged buyers' cartel, such as a writing showing its existence or testimony from someone with personal knowledge that such an agreement not to engage in individual patent license or acquisition negotiations with Plaintiff took place. Plaintiff is also hopelessly vague as to the identity of the participants in the

alleged conspiracy.[6] Instead of offering actual direct evidence, Plaintiff points to RPX's past public description of its business model as purported evidence of a buyers' cartel. Mot. at 11. But this is a red herring. That description—of a non-exclusive patent licensing platform—says nothing about any agreement among Microsoft and NVIDIA or any other company to only negotiate for certain patent licenses through RPX. *See* Hanneken Decl. ¶¶ 2-4; McCurdy Decl. ¶ 10. To the contrary, the Microsoft-RPX Agreement, executed two years before the purported buyers' cartel was formed, expressly reserves the right to engage in individual licensing negotiations for any patents, including those which RPX seeks to license. McCurdy Decl. ¶ 10, Ex. A ¶ 4.[7]

Further, direct evidence negating the existence of any buyers' cartel, in the form of sworn denials, has been submitted by executives of both Microsoft and NVIDIA. Ex. A, Wetter Decl. ¶ 7; Ex. B, Declaration of Nicholas Kim ¶ 7; Declaration of Benjamin Damstedt ("Damstedt Decl.") ¶ 5. This evidence refutes Plaintiff's unsupported speculation that Defendants agreed with each other not to engage in individual patent license or acquisition negotiations with Plaintiff.

---

[6] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *Anderson v. 21st Mortg. Corp.*, 2016 WL 11582928, at *7 (W.D. Tex. Sept. 26, 2016) (dismissing conspiracy claims where plaintiff was vague as to the "specific time, place, or person involved in the alleged conspiracies") (citations omitted). As Dr. Johnson notes about the opinion of Plaintiff's expert: "He does not explain whether the alleged conspiracy is limited to Microsoft, Nvidia, and RPX or if it includes other unspecified potential patent acquirers who are also clients of RPX, though he concedes that these are both possibilities." Ex. D, Johnson Decl. ¶ 3.

[7] Courts and the United States Department of Justice have emphasized that offering and taking licenses from patent pools or licensing platforms is not anticompetitive when individual licensing is also permitted. *See* U.S. Dept. of Justice, *Bus. Rev. Ltr. to Avanci*, July 28, 2020, at 1-5 (platform unlikely to harm competition where "licensors have the right to license their essential patents independently"); *Sumitomo Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc.*, 2007 WL 2318903, at *15 (N.D. Cal. Aug. 13, 2007), *aff'd*, 301 F. App'x 959 (Fed. Cir. 2008); *Nero AG v. MPEG LA, L.L.C.*, 2010 WL 4878835, at *2 (C.D. Cal. Nov. 24, 2010). Indeed, lead counsel for Plaintiff successfully argued this very point to the Northern District of Texas just a few years ago, securing a dismissal of a group boycott claim against a platform licensing pool and its members. *See Cont'l Auto. Sys., Inc. v. Avanci, LLC*, 485 F. Supp. 3d 712, 722 (N.D. Tex. 2020), *aff'd*, 2022 WL 2205469 (5th Cir. June 21, 2022).

Redacted Public Version

### 2. *Plaintiff Provides No Evidence of Parallel Conduct Consistent with the Alleged Buyers' Cartel*

To prove a conspiracy not to engage in individual negotiations or commercial dealings with a plaintiff through circumstantial evidence, there must, at the threshold, be evidence showing parallel conduct consistent with the alleged agreement.[8] *See Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.*, 496 F.3d 403, 409 (5th Cir. 2007) (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984)); *see also Aviation Specialties, Inc. v. United Techs. Corp.*, 568 F.2d 1186, 1192 (5th Cir. 1978); *Avanci*, 485 F. Supp. 3d at 731. Plaintiff has proffered no such evidence of parallel conduct here.[9]

There is no evidence that Plaintiff *ever* offered a license to its patents to NVIDIA or Microsoft, let alone evidence that both companies refused, in parallel, to engage in any negotiations about such a license. Instead, the only evidence of any failure by Defendants to pursue its technology that Plaintiff cites is the unsolicited March 27, 2024 email from a third-party broker to Microsoft attaching a "teaser" and proposed nondisclosure agreement for the sale of an unidentified company and its patent portfolio, and a purported similar outreach to NVIDIA. FAC ¶¶ 281-82. While Microsoft did not respond to this solicitation, Plaintiff presents no evidence that either NVIDIA or Microsoft knew that it was Xockets' business that the third-party broker was anonymously offering for sale, or that NVIDIA or Microsoft were even aware that the third-party

---

[8] Plaintiffs' cases are inapposite because none of them alleged that a purported co-conspirator purchased the allegedly infringing products from an upstream supplier. *See Cascades Computer Innovation LLC v. RPX Corp.*, 2013 WL 6247594, at *9 (N.D. Cal. Dec. 3, 2013); *Sony Elecs., Inc. v. Soundview Techs., Inc.*, 157 F. Supp. 2d 180, 187 (D. Conn. 2001); *Gould v. Gen. Photonics Corp.*, 1979 WL 25064, *1 (N.D. Cal. Mar. 2, 1979); *see also infra* at 15.

[9] Even if Plaintiff alleged sufficient facts supporting the existence of parallel conduct, which it does not, parallel conduct without "some further factual enhancement" would be insufficient even to meet the motion to dismiss standard articulated in *Twombly*, 550 U.S. at 556–57, a standard which is less rigorous than the standard for granting a motion for a preliminary injunction. *See Future Proof Brands*, 2020 U.S. Dist. LEXIS 272489, at *6.

Redacted Public Version

broker had reached out to both companies. Ex. A, Wetter Decl. ¶ 3; Ex. B, Kim Decl. ¶ 3; Damstedt Decl. ¶ 7. Moreover, there is no evidence that, somehow, either NVIDIA or Microsoft should have interpreted this anonymous offer to acquire a business as a claim of infringement of the anonymous entity's patents or an offer to license those patents. These facts do not just fail to demonstrate parallel conduct; they also undermine any showing of a motive for the alleged cartel because Plaintiff has not presented any evidence that NVIDIA or Microsoft even knew that the 2024 solicitation was on behalf of Xockets.

Nor does Plaintiff allege that RPX had substantive negotiations with Plaintiff about acquiring the Xockets patent holding business. Instead, Plaintiff only claims that RPX reached out to Plaintiff "about a potential licensing agreement on behalf of its 'members.'" Mot. at 14. Such behavior is consistent with RPX's platform licensing business, and Plaintiff has offered no evidence to show that this alleged expression of interest by RPX was part of any agreement by NVIDIA and Microsoft not to individually license or acquire Plaintiff's technology.

### 3. *Plaintiff's Factual Allegations and So-Called Evidence Are Consistent with Unilateral Conduct*

In the absence of direct evidence of a conspiracy, Plaintiff must present circumstantial evidence which proves the existence of the alleged agreement and tends to exclude the possibility that the defendants acted independently. *See Golden Bridge Tech.*, *Inc. v. Motorola, Inc.*, 547 F.3d 266, 271–72 (5th Cir. 2008). Such circumstantial evidence is referred to in the case law as "plus factors." *See Royal Drug Co., Inc. v. Grp. Life & Health Ins. Co.*, 737 F.2d 1433, 1437 (5th Cir. 1984); *see also Academy of Allergy & Asthma in Primary Care v. La. Health Svc. & Indem. Co.*, 2023 WL 8185692, at **9–10 (E.D. La. Nov. 27, 2023) ("The 'plus factors' ensure that courts punish concerted action and actual agreements rather than unilateral, independent conduct of

competitors."). But Plaintiff has failed to come forward with evidence of sufficient plus factors to prove the existence of the alleged buyers' cartel by Defendants, as opposed to unilateral conduct.

*First*, Plaintiff's own allegations show ample independent, non-collusive business reasons why NVIDIA and Microsoft would individually decide not to pursue a license for Plaintiff's patents. *Golf City, Inc. v. Wilson Sporting Goods, Co., Inc.*, 555 F.2d 426, 431 (5th Cir. 1977) ("parallel conduct is consistent with independent competitive decisions"); *see also Avanci*, 485 F. Supp. 3d at 732 (defendants' refusal to negotiate licensing deals with plaintiff without more "alleges at best parallel conduct" which is insufficient by itself, to prove an agreement). To begin with, Plaintiff presents no evidence that any license was ***ever*** offered to NVIDIA or Microsoft. As for NVIDIA, Plaintiff asserts, without support, that Mellanox misappropriated Plaintiff's technology "without Xockets' knowledge or permission" in 2016, *see* FAC ¶ 23, and that NVIDIA subsequently began using that technology when it acquired Mellanox. FAC ¶ 33. But Plaintiff does not offer any evidence that it ever notified NVIDIA that it was infringing Plaintiff's patents. Nor does Plaintiff offer any evidence to negate the logical scenario in which NVIDIA would have had no interest in paying for this technology a second time by licensing it from Plaintiff after it already paid billions of dollars for its acquisition of Mellanox. Indeed, the FTC has recognized that it is entirely rational and not an antitrust violation for an individual prospective licensee to unilaterally delay taking licenses before it has determined a need to do so.[10]

As for Microsoft, Plaintiff asserts that Microsoft purchases products from NVIDIA that embody Plaintiff's technology. *See* FAC ¶¶ 30–32. Even if Plaintiff were correct that there was

---

[10] Rebecca Kelly Slaughter, Comm'r of FTC, SEPs, Antitrust, and the FTC, Remarks as Prepared for Delivery at the ANSI World Standards Week: Intell. Prop. Rights Pol'y Advisory Grp. Meeting at 5 (October 29, 2021) ("Holdout, as long as it is unilateral and not done collusively … fits squarely into the box of the problems that have patent law solutions.") (available at News & Events, FTC, https://www.ftc.gov/news-events/news/speeches (last visited Oct. 2, 2024)).

any infringement (which Microsoft denies), it would be rational for Microsoft, the customer—in its unilateral self-interest—to not seek a license from Xockets for products it purchased from NVIDIA. That is because an economically rational customer, when purchasing products, relies on the supplier of those products, to hold any licenses purportedly necessary to use those products, thereby protecting the customer from any alleged infringement claim pursuant to the patent exhaustion doctrine. *See Quanta Comput., Inc. v. LG Elecs. Inc.*, 553 U.S. 617, 633–38 (2008).

*Second*, the mere fact of NVIDIA's and Microsoft's purported collaboration to develop and implement artificial intelligence products and the companies' attendance at RPX meetings (Mot. at 15–17) is insufficient to prove the existence of the alleged buyers' cartel agreement. Mere opportunities to conspire are not nearly enough where plaintiff presents no other evidence of concerted action.[11] *In re Pool Prods. Distrib. Mkt. Antitrust Litig*., 158 F. Supp. 3d 544, 554–55 (E.D. La. 2016); *see also JSW Steel (USA) Inc. v. Nucor Corp*., 586 F. Supp. 3d 585, 597 (S.D. Tex. 2022); *Johnson v. Hosp. Corp. of Am*., 95 F.3d 383, 392 (5th Cir. 1996).

### 4.    *Plaintiff Has Not Presented Any Competent Expert Evidence to Support the Existence of the Alleged Buyers' Cartel*

To fill its evidentiary void, Plaintiff tries to rely on the "expert" declaration of Dr. Andreas Groehn, an economist who purports to opine that "Microsoft and NVIDIA (both alone or in

---

[11] Plaintiff's claim that ongoing government investigations into NVIDIA and Microsoft are indicative of a conspiracy is wrong both factually and as a matter of law. *See, e.g.*, *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 662 (S.D.N.Y. 2016) ("mere fact that regulatory entities have investigated, and may still be investigating, the possibility of misconduct ... is not a 'plus factor'"); *Hinds Cnty v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 514 (S.D.N.Y. 2009). In any event, the investigation that Plaintiff references—the FTC's inquiry into Open AI and Microsoft's investment in OpenAI and other AI companies—has nothing to do with Plaintiff's allegations here. Notably, the European Union has since closed its investigation related to Microsoft's investment in Inflection AI. Foo Yun Chae, *No merger scrutiny of Microsoft's hiring of Inflection staff, EU says*, Reuters (Sept. 18, 2024, 2:42 PM), https://www.reuters.com/markets/europe/eu-antitrust-regulators-will-not-act-microsofts-hiring-inflection-staff-2024-09-18/.

combination with other technology companies) have agreed to fix prices below the market rate and effectively become a patent licensing or patent rights acquisition monopsony." Groehn Decl. ¶ 11, ECF No. 4-43. However, this unsupported "opinion" is not based on any economic analysis; it is simply a regurgitation of Plaintiff's alleged speculative facts, with no expert value added. As Microsoft's expert, Dr. Johnson, explains, Dr. Groehn has not conducted any of the economic analyses that a competent expert would employ before being able to render a reliable opinion with respect to the existence of an alleged buyers' cartel. Ex. D, Johnson Decl. ¶ 4.

It is not within the expertise of an economics expert to be a "conspiratologist" or to opine on whether a conspiracy exists. *See Marlin v. Moody Nat'l Bank*, *N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) (affirming exclusion of expert testimony about the existence of a conspiracy for which he has no personal knowledge); *see also Wealthmark Advisors Inc. v. Phoenix Life Ins. Co.*, 2017 WL 1133506, at *5 (W.D. Tex. Mar. 24, 2017); Ex. D, Johnson Decl. ¶ 3. Plaintiff has thus presented no competent expert evidence to buttress its complete lack of factual support for the alleged conspiracy and has not demonstrated any likelihood of success in prevailing in its Section 1 cause of action against the wildly speculative and non-existent buyers' cartel.

### B.  Plaintiff Is Not Substantially Likely to Succeed on the Merits of Its Sherman Act § 2 Conspiracy Claims

Plaintiff's Section 2 conspiracy to monopolize claim fares no better than its claim under Section 1. First, because the alleged buyers' cartel is also the centerpiece of this claim, the complete absence of any direct or circumstantial evidence of this conspiracy dooms this cause of action as well. *See supra* § 2.A. Second, Plaintiff's own expert has acknowledged that NVIDIA and Microsoft are just two of many other potential market participants, *see* Groehn Decl. ¶¶ 10–11, 13, ECF No. 4-43, making a conspiracy to monopsonize implausible. Ex. D, Johnson Decl. ¶ 14; *see also* FAC ¶ 273 (RPX "has more than 450 members"). Third, the lack of any proof that Microsoft

knew the identity of the anonymous company seeking to sell its "business" when the alleged conspiracy formed, that Microsoft knew NVIDIA was also approached, or that either company should have interpreted this outreach as a claim of patent infringement, defeats a showing of the required specific intent to monopsonize. *See Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (no credit given to "conclusory allegations, unwarranted factual inferences, or legal conclusions"); *see also Anderson*, 2016 WL 11582928, at *2.

In addition, a conspiracy to monopolize claim requires proof of a relevant market. *See Sulmeyer v. Coca Cola Co.*, 515 F.2d 835, 850 (5th Cir. 1975). Plaintiff asserts that the relevant market is the "Xockets Patents Market," alleging that "the 'substitutes' in this market consist of all entities that purchase, acquire, or license Xockets' technology." Mot. at 27. But Plaintiff never offers any proof that the patents it owns are a relevant market by themselves, with no substitute technology available.[12] The law is clear that the mere fact that Plaintiff has patents does not necessarily make its patents indispensable. *Ill. Tool Works, Inc. v. Ind. Ink, Inc.*, 547 U.S. 28, 45–46 (2006). And there is no evidence in the record that Plaintiff's patents could not be easily designed around or that there were no alternatives to Plaintiff's technology. *See Island Intell. Prop. LLC v. TD Ameritrade, Inc.*, 2022 WL 17080738, at *1–2 (E.D. Tex. Nov. 17, 2022).

### C.    Plaintiff Cannot Show the Required Antitrust Injury

Plaintiff also fails the likelihood-of-success test for both of its antitrust claims because it has not produced evidence to show that it has suffered an antitrust injury—*i.e.*, that it was "injured in [its] business or property 'by reason of' an antitrust violation." *Jebaco, Inc. v. Harrah's*

---

[12] Dr. Groehn has not even attempted to utilize the commonly accepted economic tools to define a relevant market. Instead, "[h]e performs a minimal assessment of any commonly applied qualitative factors (e.g., Brown Shoe factors), and no quantitative analysis at all (e.g., analysis of bids, Hypothetical Monopsonist test) despite conceding in his report that the Hypothetical Monopsonist test provides a formal way to define relevant markets." Ex. D, Johnson Decl. ¶ 4.

*Operating Co., Inc.*, 587 F.3d 314, 319 (5th Cir. 2009) (quoting 15 U.S.C. § 15(a)); *Dr.'s Hosp. of Jefferson, Inc. v. Se. Med. All.*, 123 F.3d 301, 305 (5th Cir. 1997); *see also Phototron Corp. v. Eastman Kodak Co.*, 842 F.2d 95, 98–99 (5th Cir. 1988) (plaintiff must show substantial likelihood of being able to prove antitrust injury before injunction can be granted). The Fifth Circuit has "unequivocally held" that a decrease in earnings or royalties resulting from downstream conduct in a market in which the plaintiff is not a participant is not antitrust injury. *Waggoner v. Denbury Onshore, L.L.C.*, 612 F. App'x 734, 738–39 (5th Cir. 2015); *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 727 (5th Cir. 2010); *Jebaco*, 587 F.3d at 320–21; *Avanci, LLC*, 485 F. Supp. 3d at 729–30.

Further, to establish an antitrust injury from the alleged buyers' cartel, Plaintiff would have to prove that, absent the cartel, Defendants would license or acquire its patents at a higher price because their products would otherwise infringe. But Plaintiff has not come forward with any evidence of its fantastical claims of "IP theft" by Defendants, or of its unsupported mischaracterizations of NVIDIA's and Microsoft's own technology as supposedly being "stolen" from Xockets. Indeed, Plaintiff's patents do not even ***mention*** "DPUs" or "artificial intelligence" which Plaintiff alleges are central to its claims of patent infringement.[13]

## III.   THE BALANCE OF EQUITIES TIPS CLEARLY IN MICROSOFT'S FAVOR

Plaintiff also has the burden of demonstrating that the hardships it would suffer absent a preliminary injunction outweigh any hardships Defendants would suffer if the broad injunction sought is granted. *See Daniels Health Scis., L.L.C. v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013); *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 390 (5th Cir. 1984). Plaintiff cannot satisfy this test.

---

[13] *See generally* FAC Exs. 1–7, ECF Nos. 7-1–7-7.

Redacted Public Version

First, the amount of harm Plaintiff would suffer absent the injunction is entirely speculative. There is no evidence Plaintiff has *ever* been able to license its patents, so there is no basis for the Court to find that Plaintiff is being deprived of a significant amount of royalties or patent fees by the alleged buyers' cartel, ████████████████████████████████████. Plaintiff does not explain why, if its patents had a significant economic value, it had not realized some of this value prior to the formation of the alleged buyers' cartel by Defendants.

On the other hand, the incredibly vague terms of the injunction Plaintiff seeks would subject Defendants to massive uncertainty and a disruption of their businesses. Plaintiff seeks to enjoin Defendants from "continuing, effectuating, or enforcing any agreement between or among each other or any other entity (other than [Plaintiff]) relating to the purchase, use or license of Xockets' technology." Mot. at 34. But there is no way to understand what this broad language means. As noted above, Plaintiff's mischaracterizations of Microsoft and NVIDIA's own technology, *developed completely independently of Xockets*, as somehow being "Xockets' technology" is hotly contested. If Microsoft enters into (or continues to perform under) a purchase agreement with NVIDIA of the products accused of infringement, would that agreement be prohibited by the injunction, even though Plaintiff is not legally entitled to injunctive relief on its patent claims? What if it seeks to be indemnified by a supplier against any infringement claim by Plaintiff? Does this language prohibit a joint defense agreement to more efficiently work on common issues such as patent invalidity? Such a vague injunction would cause havoc to Defendants' business activities and defenses. It should be rejected on this ground alone. *Acad. of Allergy*, 2014 WL 12496897, at *11; *Goal Acquisitions Corp. v. Digit. Virgo*, 2024 WL 1078431, at *4 (W.D. Tex. Mar. 12, 2024; *Russell C. House Transfer & Storage Co. v. U.S.*, 189 F.2d 349, 351 (5th Cir. 1951); *see also* Fed. R. Civ. P. 65(d)(1).

Redacted Public Version

The proposed injunction would also prohibit legal and procompetitive practices. For example, Plaintiff's proposed injunction would literally prohibit (1) Microsoft taking a sublicense to Plaintiff's patents from NVIDIA in the event NVIDIA decides to take a license; and (2) Microsoft taking a license to Plaintiff's patents through RPX. *See* Proposed Order on Mot., ECF No. 4-44. Nor can Plaintiff cure this defect by narrowing the injunction to just require Defendants to obey the law. *See, e.g.*, *Schine Chain Theatres v. U.S.*, 334 U.S. 110, 125 (1948) (injunction against monopolizing too broad); *Payne v. Travenol Lab'y.*, 565 F.2d 895, 897–98 (5th Cir. 1978); *Wynn Oil Co. v. Purolator Chem. Corp.*, 536 F.2d 84, 86 (5th Cir. 1976).

## IV.   PLAINTIFF'S ASSERTION THAT THE PROPOSED INJUNCTION IS IN THE PUBLIC INTEREST IS UNSUPPORTED

Citing to *Union Carbide Corp. v. UGI Corp.*, Mot. at 33, Plaintiff claims that the proposed injunction would "serve the public interest by assuring that competition is untainted by unfair advantage." 731 F.2d 1186, 1192 (5th Cir. 1984) (internal quotations omitted). But this argument depends on Plaintiff demonstrating a likelihood of success that Defendants violated the antitrust laws, which it cannot do. On the other hand, the public interest would be damaged if the proposed injunction, with its vague terms prohibiting lawful conduct, impedes the ability of NVIDIA and Microsoft to develop breakthrough AI products which will benefit the world, or the ability of these companies to participate in individual and platform licensing agreements related to Plaintiff's technology—activities that are widely recognized to be legitimate and procompetitive. *See U.S. Dept. of Justice Bus. Rev. Ltr. to Avanci*, July 28, 2020, at 1–5.

## CONCLUSION

For all the foregoing reasons, Microsoft respectfully requests that the Court deny Plaintiff's motion for a preliminary injunction.

Redacted Public Version

DATED: October 9, 2024

/s/ Thomas M. Melsheimer
Thomas M. Melsheimer (SBN: 13922550)
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Tel: (214) 453-6500
Fax: (214) 453-6400
tmelsheimer@winston.com

Kelly C. Hunsaker (CA Bar No: 168307)
Matthew R. McCullough (*pro hac vice*)
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Tel: (650) 858-6500
Fax: (650) 858-6550
khunsaker@winston.com
mrmccullough@winston.com

Jeffrey L. Kessler (*pro hac vice*)
Aldo A. Badini (*pro hac vice*)
Susannah P. Torpey (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
abadini@winston.com
storpey@winston.com

Scott M. Border (*pro hac vice*)
**WINSTON & STRAWN LLP**
1901 L Street, N.W.
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
sborder@winston.com

Bruce A. Koehler
Andres E. Almanzan
**MOUNCE, GREEN, MEYERS, SAFI,**
**PAXSON & GALATZAN, P.C.**
P.O. Box 1977

Redacted Public Version

El Paso, TX 79950
Tel: (915) 532-2000
Fax: (915) 541-1548
koehler@mgmsg.com
almanzan@mgmsg.com

***Attorneys for Defendant Microsoft Corp.***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 9, 2024, the foregoing was electronically filed with the Clerk of

Court using CM/ECF system, and all counsel of record were served via email.

/s/ Thomas M. Melsheimer
Thomas M. Melsheimer
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Tel: (214) 453-6500
Fax: (214) 453-6400
tmelsheimer@winston.com
