Case 6:24-cv-00453-LS   Document 112   Filed 10/22/24   Page 1 of 5

FILED
October 21, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____cap_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

XOCKETS, INC.,

    Plaintiff,

NVIDIA CORPORATION,
MICROSOFT CORPORATION, and
RPX CORPORATION,

    Defendants.

Civil Action No. 6:24-cv-453-LS

## SUR-REPLY DECLARATION OF DANIEL P. MCCURDY

I, Daniel P. McCurdy, under penalty of perjury, declare as follows:

1. I am the Chief Executive Officer ("CEO") of RPX Corporation ("RPX"). I submit this declaration in support of RPX's Opposition to Xockets, Inc.'s ("Xockets") Motion for a Preliminary Injunction. Unless otherwise specified, I have personal knowledge of the facts stated herein and, if called as a witness, could and would testify to such facts competently under oath.

2. I have read the Reply Declaration of Brian Hinman ("Hinman Reply Decl.," Dkt. 100-2). In his declaration, Mr. Hinman repeated his claim that I contacted him in May 2024 and that I "made statements to the effect that [I] was being directed by members who were aware of an available portfolio of intellectual property." (Hinman Reply Decl. ¶ 2.) As explained in my prior declaration and shown in its accompanying exhibits (Dkt. 82-3–82-13), both allegations are false.

3. Now, Mr. Hinman further alleges that the "interaction" during which I supposedly made these statements was an in-person "dinner meeting" on May 22, 2024 after I "flew from New York to Houston and asked [Mr. Hinman] to have dinner with [me]." (*Id.* ¶ 2.)

These new claims also are false. I have not been to Houston since June 2023 and was not in Houston on May 22, 2024. I did not have dinner with Mr. Hinman on May 22, 2024 and I do not recall ever having dinner with him.

4. For the entirety of the day of the purported dinner, May 22, 2024, I was in Bantam, Connecticut, not Houston, Texas. At 2:00 P.M. Eastern Time on May 22,[1] I led a RPX company-wide Zoom meeting from Bantam, Connecticut. Exhibit A, which is a screenshot from a recording of the meeting, shows I was sitting in a room in the house I was renting in Bantam, Connecticut at the time, and at the beginning of the meeting, I noted that it was turning summer where I was and that "I don't know what Ben and our other Texans are like but it's gotta be hot there too." I obviously was not in Houston as Mr. Hinman claims.

5. My calendar from May 20 through May 24, 2024 confirms that this RPX company-wide meeting was scheduled to begin at 2:00 P.M. Eastern Time on May 22, 2024. (Ex. B.)[2] My calendar does ***not*** show a flight from New York to Houston that day because I did not fly from New York to Houston on May 22, 2024. (*Id.*) Similarly, my calendar does ***not*** show any meeting (dinner or otherwise) with Brian Hinman on May 22, 2024 because we did not speak— let alone meet in Houston for dinner—on May 22, 2024. (*Id.*)

6. I have also reviewed my corporate expense report from May of 2024 (May Expense Report).[3] (Ex. C.) My May Expense Report shows no car services, hotels, meals or any other expense (including no dinner) in Houston in May of 2024. (*Id.*) Again, this is because I was not in Houston in May of 2024 and did not have dinner with Mr. Hinman as he claims.

---

1  The time stamp in Exhibit A is 11:00 A.M. Pacific Time.
2  Exhibit B includes personal information not relevant to the current litigation that has been redacted.
3  Exhibit C includes personal information not relevant to the current litigation that has been redacted.

7. Mr. Hinman includes in his Reply Declaration a purported text message from him to Robert Cote on May 22, 2024 stating that I called Mr. Hinman to invite him to dinner. (Hinman Reply Decl. ¶ 2). I have since reviewed my phone records from the only phone that I use. The records from the time period May 16, 2024 through June 15, 2024 ("May–June Phone Records"). (Ex. D.)[4] show that I did not call Mr. Hinman at any time on or around May 22, 2024. (*Id.* at 18.) The only record of a call I have between myself and Mr. Hinman during this time period is on the morning of May 28, 2024 when *Mr. Hinman* called *me* from his number ((845) 590-5627) and we spoke for a total of 19 minutes. (*Id.* at 20.) The only time Mr. Hinman's number (or any number with a "845" area code) appears in my May–June Phone Records is that day, May 28, 2024, when Mr. Hinman reached out to me. (*Id.*)

8. As I described in my previous declaration, Mr. Hinman contacted me on May 24, 2024 (two days after this supposed dinner on May 22, which never occurred). (Ex. E.) His own message confirms that we had not spoken—let alone met or had dinner—days prior to his May 24 email. The May 24 email says nothing about having had dinner 36 hours earlier, or even that we had spoken, as you would expect if we had just met for several hours. Mr. Hinman did not write that it was great to catch up, ask me how my flight from Houston back to New York was, or tell me that he wanted to follow up on any recent conversation. (*Id.*) Instead—consistent with the fact that we had not had dinner 36 hours before his email—Mr. Hinman wrote that he wanted to "catch up with [me] to see how things [were] going on [my] end and to update [me] on how [Mr. Hinman's] little world [was] evolving." (*Id.*) Mr. Hinman's email—and his professed desire to tell me what he had been doing—is only consistent with the truth of the matter: the two of us had not

---

[4] Exhibit D also include the phone activity of my family members, which have been redacted for privacy purposes. All phone numbers apart from Mr. Hinman's ((845) 590-5627) have been anonymized apart from the area code for privacy purposes.

spoken for some time, and I believe the email Mr. Hinman himself sent confirms the falsity of his claim that we had dinner shortly before. When I did not respond immediately to this email, Mr. Hinman followed up on May 28, 2024 asking if I had "a few minutes [that day] to catch up?" (*Id.*) I responded that "I [was] free until 11:30am Eastern [that] morning" and invited Mr. Hinman to give me a call, which he then did. (Ex. D at 20.) Thus, Mr. Hinman and I exchanged three emails within days of this supposed dinner. None of the emails mentioned the dinner or even that we had seen each other or spoken recently.

9. During this 19-minute call with Mr. Hinman on May 28, neither of us mentioned having had dinner with each other less than a week earlier because that dinner *did not happen*, and at no point did I indicate that I was being directed by RPX Members to speak with Mr. Hinman. At most, just a few of these 19 minutes related to AI patents (Mr. Hinman did not mention Xockets by name and did not inform me he was associated in any way with Xockets). I asked Mr. Hinman if these patents might be the same patents that Elvir Causevic, CEO of the patent brokerage firm Tech+IP Advisory, LLC, had written me about earlier that same morning on May 28. Mr. Hinman replied that if Mr. Causevic had contacted me already I should just speak to him about it, which I did the following day via a Zoom teleconference. The rest of the time during my 19-minute call with Mr. Hinman was devoted to catching up, as we had not seen each other or communicated for some time. To be clear, I did not speak to Mr. Hinman on May 28, 2024 at the direction of an RPX Member, I did so because Mr. Hinman emailed me twice and then called me. (Ex. E.)

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 18, 2024

_____
Daniel P. McCurdy
Chief Executive Officer, RPX Corporation