**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| XOCKETS, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>MICROSOFT CORPORATION, NVIDIA CORPORATION, and RPX CORPORATION,<br><br>*Defendants*. | Case No. 6-24-cv-00453-LS<br><br>Hon. Leon Schydlower, U.S.D.J. |

**DEFENDANTS MICROSOFT CORPORATION AND RPX CORPORATION'S
JOINT PARTIAL MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

**Page**

RELEVANT COMPLAINT ALLEGATIONS ............................................................................ 2

LEGAL STANDARD ............................................................................................................ 4

I.      Plaintiff Fails to Plausibly Allege a Section 1 Conspiracy Claim ..................................... 5

        A.      Plaintiff Does Not Plausibly Allege a Conspiracy .................................................. 5

                1.      Plaintiff Pleads No Direct Evidence of the Purported Side Agreement ...... 6

                2.      Plaintiff Pleads No Plausible Circumstantial Evidence Supporting an
                        Agreement through Parallel Conduct ........................................................... 8

        B.      Plaintiff Fails to Plausibly Allege that Defendants Unreasonably Restrained Trade
                ............................................................................................................................. 10

II.     Plaintiff Does Not Plausibly Allege a Relevant Market or Defendants' Market Power ... 13

        A.      Plaintiff's Proposed Market Covering Only Its Own Patents Fails to Consider
                Substitute Technologies and Patents ...................................................................... 13

        B.      Plaintiff's Claims of Market Power Fail Because the Complaint Does Not
                Consider the Many Potential Substitute Buyers or Other Licensees of Plaintiff's
                Patents ................................................................................................................... 15

III.    Plaintiff Does Not Allege Facts Plausibly Supporting Its Section 2 Conspiracy to
        Monopolize Claim ......................................................................................................... 17

IV.     Plaintiff Lacks Article III Standing to Assert Its Antitrust Claims for Failing to Plead
        Non-Speculative Injury in Fact ...................................................................................... 18

CONCLUSION ................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Lab'ys v. Brennan*,
    952 F.2d 1346 (Fed. Cir. 1991)................................................................14

*Acad. of Allergy & Asthma in Primary Care v. La. Health Serv. & Indem. Co.*,
    2020 WL 4050243 (E.D La. July 17, 2020) ...............................................14, 17

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
    300 F.3d 620 (5th Cir. 2002) ...................................................................13, 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)....................................................................................5

*Associated News, Inc. v. Curtis Circulation Co., Inc.*,
    1986 WL 13791 (S.D. Tex. Dec. 4, 1986).................................................8

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*,
    909 F. Supp. 162 (S.D.N.Y. 1995) ...........................................................14, 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................... *passim*

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
    691 F. App'x 389 (9th Cir. 2017) .............................................................8

*BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*,
    49 F.4th 520 (5th Cir. 2022) .....................................................................6

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
    441 U.S. 1 (1979)............................................................................2, 10, 11, 12

*Brunswick Corp. v. Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)....................................................................................20

*Buffalo Broad. Co. v. Am. Soc. of Composers, Authors, Publishers*,
    744 F.2d 917 (2d Cir. 1984).......................................................................6, 12

*Cal. Dental Ass'n v. FTC*,
    526 U.S. 756 (1999)....................................................................................11

*Campfield v. State Farm*,
532 F.3d 1111 (10th Cir. 2008) ...........................................................16

*CCPI Inc. v. Am. Premier, Inc.*,
967 F. Supp. 813 (D. Del. 1997) ...........................................................14

*City of Pontiac Police and Fire Ret. Sys. v. BNP Paribas Secs. Corp.*,
92 F.4th 381 (2d Cir. 2024) ...................................................................7

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...............................................................................19

*Clean Water Opportunities, Inc. v. Willamette Valley Co.*,
759 F. App'x 244 (5th Cir. 2019) ...........................................................5

*Cont'l Auto. Sys., Inc. v. Avanci, LLC*,
27 F.4th 326 (5th Cir. 2022) .................................................................20

*Cont'l Auto. Sys., Inc. v. Avanci, LLC*,
485 F. Supp. 3d 712 (N.D. Tex. 2020), *aff'd*, 2022 WL 2205469 (5th Cir. June
21, 2022) .........................................................................................11, 12

*Corr Wireless Commc'n, L.L.C. v. AT&T, Inc.*,
893 F. Supp. 2d 789 (N.D. Miss. 2012).................................................5

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)...............................................................................18

*Dehoog v. Inbev*,
2016 WL 5853733 (D. Or. July 22, 2016), *R & R adopted by* 2016 WL
5858663 (D. Or. Oct. 3, 2016) ..............................................................19

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002) ................................................................11

*Doctors Hosp. of Jefferson, Inc. v. Se. Med. Alliance, Inc.*,
889 F. Supp. 879 (E.D. La. 1995)..........................................................11

*Doyle v. Nationwide Mortg., LLC*,
2021 WL 2457732 (S.D. Tex. June 16, 2021) .........................................3

*E. & G. Gabriel v. Gabriel Bros., Inc.*,
1994 WL 369147 (S.D.N.Y. July 13, 1994) ..........................................15

*Futurevision Cable Sys., Inc. v. Multivision Cable TV Corp.*,
789 F. Supp. 760 (S.D. Miss. 1992).......................................................17

*In re Gee,*
    941 F.3d 153 (5th Cir. 2019) ........................................................................19

*Ill. Tool Works, Inc. v. Ind. Ink, Inc.,*
    547 U.S. 28 (2006) ........................................................................................14

*Intel Corp. v. Fortress Inv. Grp. LLC,*
    511 F. Supp. 3d 1006 (N.D. Cal. 2021) ........................................................15

*J.T. Gibbons, Inc. v. Crawford Fitting Co.,*
    704 F.2d 787 (5th Cir. 1983) ........................................................................15

*Jacobs v. Tempur-Pedic Int'l, Inc.,*
    626 F. 3d 1327 (11th Cir. 2010) ...................................................................14

*Jayco Sys., Inc. v. Savin Bus. Machs Corp.,*
    777 F.2d 306 (5th Cir. 1985) ........................................................................16

*Kendall v. Visa U.S.A., Inc.,*
    518 F.3d 1042 (9th Cir. 2008) ........................................................................5

*Little v. KPMG LLP,*
    575 F.3d 533 (5th Cir. 2009) ...................................................................18, 20

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)........................................................................................18

*Marion Healthcare LLC v. S. Ill. Healthcare,*
    2013 WL 4510168 (S.D. Ill. Aug. 26, 2013) ................................................16

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n,*
    751 F.3d 368 (5th Cir. 2014) ..........................................................................5

*Matsushita Elec. Indus. Co., Ltd. v. Cinram Int'l, Inc.,*
    299 F. Supp. 2d 370 (D. Del. 2004)...............................................................12

*Michael E. Jones M.D., P.C. v. UnitedHealth Grp., Inc.,*
    2020 WL 4895675 (S.D.N.Y. Aug. 19, 2020).................................................18

*Monsanto Co. v. Spray-Rite Serv. Corp.,*
    465 U.S. 752 (1984).........................................................................................6

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,*
    833 F.2d 583 (5th Cir. 1987) ........................................................................19

*Norris v. Hearst Tr.,*
    500 F.3d 454 (5th Cir. 2007) ........................................................................20

*North Tex. Spec. Physicians v. FTC*,
   528 F.3d 346 (5th Cir. 2008) ............................................................11

*Nova Designs, Inc. v. Scuba Retailers Ass'n*,
   202 F.3d 1088 (9th Cir. 2000) ..........................................................17

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
   472 U.S. 284 (1985).........................................................................11

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
   997 F. Supp. 2d 526 (N.D. Tex. 2014) ................................................9

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
   911 F.3d 505 (8th Cir. 2018) ..............................................................8

*PharmaRx Pharm., Inc.* v. *GE Healthcare, Inc.*,
   596 F. App'x 580 (9th Cir. 2015) ....................................................8, 9

*Pollard Banknote L.P. v. Sci. Games Int'l, Inc.*,
   2011 WL 13162042 (N.D. Ga. Jan. 18, 2011) ...................................17

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
   615 F.3d 412 (5th Cir. 2010) .......................................................13, 14

*Quadvest, L.P. v. San Jacinto River Auth.*,
   No. 19-cv-04598 (S.D. Tex. Oct. 17, 2024), ECF No. 309 ................14

*Quanta Comput., Inc. v. LG Elecs. Inc.*,
   553 U.S. 617 (2008)...........................................................................9

*Ramirez v. Guadarrama*,
   2 F. 4th 506 (5th Cir. 2021) ..............................................................10

*Smith v. Thibodeaux*,
   2024 WL 1335649 (M.D. La. Mar. 28, 2024) ....................................10

*Star Tobacco, Inc. v. Darilek*,
   298 F. Supp. 2d 436 (E.D. Tex. 2003)................................................14

*Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*,
   2021 WL 940690 (S.D. Tex. Feb. 8, 2021) ........................................19

*Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*,
   754 F. App'x 235 (5th Cir. 2018) ......................................................19

*Total Benefit Servs., Inc. v. Grp. Ins. Admin.*,
   875 F. Supp. 1228 (E.D. La. 1995).....................................................17

*Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.*,
  496 F.3d 403 (5th Cir. 2007) ................................................................6

*Turner v. Va. Dep't of Med. Assistance Servs.*,
  230 F. Supp. 3d 498 (W.D. Va. 2017) ...............................................10

*Vaughn Med. Equip. Repair Serv., LLC v. Jordan Reses Supply Co.*,
  2010 WL 3488244 (E.D. La. Aug. 26, 2010) .....................................14

*Vendever LLC v. Intermatic Mfg. Ltd.*,
  2011 WL 4346324 (N.D. Tex. Sept. 16, 2011).....................................5

*Viazis v. Am. Ass'n of Orthodontists*,
  314 F.3d 758 (5th Cir. 2002) ................................................................6

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
  382 U.S. 172 (1965)............................................................................14

*Wampler v. Sw. Bell Tel. Co.*,
  597 F.3d 741 (5th Cir. 2010) ..............................................................13

*Witches Brew Tours LLC v. New Orleans Archdiocesan Cemeteries*,
  2022 WL 3586757 (E.D. La. Aug. 22, 2022) ...............................13, 14

**Statutes**

15 U.S.C. § 1 ..............................................................................5, 10, 13, 17

15 U.S.C. §§ 1-38 .................................................................................13

15 U.S.C. § 2 ....................................................................................13, 17, 18

**Other Authorities**

7 Areeda & Hovenkamp, *Antitrust Law*, ¶ 1510 (5th ed. 2023) ...................10

*Antitrust Guidelines for the Licensing of Intellectual Property*, DOJ & FTC (Jan.
  12, 2017) ............................................................................................11

Fed. R. Civ. P. 11 ................................................................................20

Fed. R. Civ. P. 12(b)(6).........................................................................5

U.S. Const. art. III.......................................................................2, 18, 19, 20

Plaintiff filed the First Amended Complaint alleging both patent infringement and antitrust claims. This Motion, filed on behalf of Defendants Microsoft Corporation and RPX Corporation, and Defendant NVIDIA's concurrently filed motion, seek dismissal of Plaintiff's antitrust claims, which come nowhere close to meeting the pleading standards dictated by the Supreme Court of the United States in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Plaintiff's antitrust claims are based on conclusory assertions of a "buyers' cartel." That cartel supposedly was formed in the Spring of 2024, when NVIDIA and Microsoft allegedly entered into a "side agreement" not to negotiate a potential license or acquisition of Plaintiff's patents independently, but to only negotiate through RPX. This conclusory assertion is unsupported and factually bankrupt. The Complaint's only allegation of conduct by NVIDIA and Microsoft after the claimed conspiracy began is that neither responded to separate, unsolicited emails from a third-party broker related to an opportunity to purchase an anonymous company. Their lack of response to these separate unsolicited emails is entirely consistent with both NVIDIA's and Microsoft's independent decision-making, as illustrated by the fact—conceded in the Complaint—that neither company was interested in pursuing Plaintiff's portfolio during the years prior to the beginning of the claimed conspiracy. The Complaint's antitrust conspiracy allegations thus fail, as a matter of law, because Defendants' alleged conduct is just as consistent with their own, independent decision-making as with any alleged conspiracy. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553, 570 (2007).

The Complaint's only other purported evidence of an alleged antitrust violation—the RPX membership agreements—expressly negates Plaintiff's conspiracy claim. In direct contravention to the alleged side agreement, the RPX membership agreements specifically enshrine the ability of each RPX member to individually negotiate. They are also the type of joint licensing

arrangements that the Supreme Court has held to be lawful under the rule of reason because of the efficiency benefits joint licenses provide to licensors and licensees through one-stop shopping. *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 19–21, 24–25 (1979) ("*BMI*").

Plaintiff has likewise failed to plausibly allege a relevant market or market power. Plaintiff's limitation of the market to its own patents fails, as a matter of law, because it gives no consideration to any available alternative technologies or patents. Moreover, Plaintiff's failure to consider the buyer-side competition posed by dozens of potential buyers or licensees of Plaintiff's patents other than NVIDIA and Microsoft—which the Complaint itself identifies—renders its allegations of Defendants' monopsony power in the market for Plaintiff's patents implausible.

Finally, Plaintiff fails to plausibly allege that the claimed conspiracy caused it any injury in fact sufficient to establish Article III standing, let alone the required antitrust injury. While Plaintiff makes the conclusory assertion that the alleged side agreement to form a buyers' cartel has deprived it of a competitive market price for its patents, Plaintiff cannot overcome the fact that the alleged conspiracy only began in the Spring of 2024, yet Plaintiff had not been able to enter into a single license or sale of its patent rights for the decade prior. These facts render any claim of injury speculative and unsupportable.

Plaintiff seeks to do exactly what the Supreme Court has said it may not do: put forward wholly conclusory allegations of an antitrust conspiracy without sufficient plausible factual allegations to support it and then aspire to fill in the details through years of burdensome and expensive discovery. The hearing on Plaintiff's motion for a preliminary injunction demonstrated that amending the Complaint will not salvage Plaintiff's claims. Plaintiff's antitrust claims should therefore be dismissed with prejudice.

## RELEVANT COMPLAINT ALLEGATIONS

Despite asserting that its patents are "essential to AI" (FAC ¶ 242), ensuring that AI "can

be made widely available and affordable to **every business in every industry**" (*id.* ¶¶ 19, 212 (emphasis added)), Plaintiff alleges that two potential buyers, NVIDIA and Microsoft, formed a buyers' cartel to "negotiate only through RPX" for the potential license or acquisition of Plaintiff's patents. *Id.* ¶¶ 258, 281, 282. Plaintiff infers this supposed agreement from two types of allegations.

*First*, Plaintiff asserts that a "Xockets' representative" sent unsolicited communications separately to NVIDIA and Microsoft employees in March 2024, to which NVIDIA and Microsoft did not respond.[1] *Id.* ¶¶ 281–82, 287. Those communications, which are not attached to the Complaint but are incorporated by reference, make clear that the outreach related to the potential *acquisition of an unnamed company*, not a mere patent license, and **never revealed the fact that the company was Xockets**.[2] The absence of a response to these separate unsolicited emails cannot be evidence of an agreement to boycott Plaintiff when the Complaint presents no evidence that either NVIDIA or Microsoft ever knew the inquiries were on behalf of Xockets or that a similar unsolicited email had been sent to the other.

*Second*, although the Complaint alleges RPX contacted Plaintiff in May 2024 expressing interest in "an available portfolio of intellectual property" on behalf of its members (FAC ¶ 283), Plaintiff conceded at the preliminary injunction hearing that this allegation is wrong, and, in fact, it was Plaintiff who contacted RPX in May 2024, not the other way around. The only other relevant allegation is that RPX's CEO allegedly claimed he "was being directed by members" of RPX. *Id.*

---

[1] The Complaint alleges that Plaintiff discussed its technology with Microsoft in 2017 and with NVIDIA in 2022. FAC ¶¶ 257–58, 241–43. However, neither company is alleged to have made any effort to seek a license or other rights to Plaintiff's patents in the years prior to the formation of the alleged conspiracy in the Spring of 2024. *Id.*

[2] *See* Wetter Decl., ECF No. 84-4; Kim Decl., ECF No. 84-9; Damstedt Decl., ECF No. 83-3. Under applicable law, the Court may consider these documents because they are "referred to in the plaintiff's complaint" and are "integral to the" claims. *Doyle v. Nationwide Mortg., LLC*, 2021 WL 2457732, at *2 (S.D. Tex. June 16, 2021).

But nothing in this statement supports Plaintiff's contention that the RPX representative was acting on behalf of NVIDIA or Microsoft: Plaintiff admits that RPX has "450 members" (*id*. ¶ 273), fails to identify any communication where any RPX representative said it was acting specifically on behalf of NVIDIA or Microsoft, and fails to identify any factual allegations that would be necessary to infer any separate "side agreement" between NVIDIA and Microsoft to negotiate only through RPX. Nor do the RPX membership agreements provide any support for such an agreement. To the contrary, these agreements expressly provide that each member is free to license or acquire any patents or technology through its own individual negotiations.[3]

Plaintiff asserts that the alleged buyers' cartel has "prevented [it] from obtaining a fair market price for its patents," because, in addition to NVIDIA and Microsoft, none of RPX's other members "will negotiate at all with Xockets," causing demand for its patents to drop to "effectively zero." *Id*. ¶ 286. Plaintiff omits that the demand for its patents was already "effectively zero" because Plaintiff ignores that it had no success in selling or licensing its patents in the decade prior to the formation of the purported conspiracy. And Plaintiff further fails to consider the more than 40 other potential buyers of its patents. *Id*. ¶ 235.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 373 (5th Cir. 2014). A claim is only plausible on its face when the plaintiff pleads "factual content that allows the court

---

[3] *See* NVIDIA Ex. 1 (RPX-NVIDIA First Amendment to the Membership and License Agreement), ¶ 3, ECF No. 83-5; McCurdy Decl. Ex. C (RPX-Microsoft Third Amendment to Membership and License Agreement), ¶ 4, ECF No. 82-6. For the same reasons applicable to the March 2024 communications, the Court may consider the RPX membership agreements for purposes of this Motion. *See supra* n.2.

4

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot rely on mere "labels and conclusions"; a "formulaic recitation of the elements of a cause of action [also] will not do." *Twombly*, 550 U.S. at 555; *see also Clean Water Opportunities, Inc. v. Willamette Valley Co.*, 759 F. App'x 244, 246 (5th Cir. 2019); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046 (9th Cir. 2008); *Vendever LLC v. Intermatic Mfg. Ltd.*, 2011 WL 4346324, at *2, *8 (N.D. Tex. Sept. 16, 2011).

Given the exorbitant costs of antitrust litigation, courts "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 528 n.17 (1983); *see also Corr Wireless Commc'n, L.L.C. v. AT&T, Inc.*, 893 F. Supp. 2d 789, 809–10 n.16 (N.D. Miss. 2012). Accordingly, the "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When the allegations fall short (i.e., when they do not allow the court to infer more than the mere possibility of wrongdoing), then plaintiff's claims should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009); *see also Marucci Sports*, 751 F.3d at 375.

## <u>ARGUMENT</u>

### I.     Plaintiff Fails to Plausibly Allege a Section 1 Conspiracy Claim

To succeed on its Section 1 claim, Plaintiff must plausibly allege facts showing that Defendants "(1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520, 525 (5th Cir. 2022). Plaintiff fails to allege plausible facts establishing any of these three essential elements.

#### A.     *Plaintiff Does Not Plausibly Allege a Conspiracy*

An antitrust plaintiff can plead a conspiracy with either direct or circumstantial evidence. *Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.*, 496 F.3d 403, 409 (5th Cir. 2007).

Direct evidence "is that which explicitly refers to an understanding between the alleged conspirators." *Id.* (cleaned up); *see also Viazis v. Am. Ass'n of Orthodontists*, 314 F.3d 758, 762 (5th Cir. 2002). Absent direct evidence, a plaintiff must allege facts constituting circumstantial evidence of an agreement through (i) parallel conduct and (ii) "plus factors" tending to exclude the possibility of independent action. *Tunica*, 496 F.3d at 409 (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984)). Plaintiff has plausibly alleged neither.

1.      *Plaintiff Pleads No Direct Evidence of the Purported Side Agreement*

While Plaintiff has argued that the RPX membership agreements, and the membership of NVIDIA and Microsoft in RPX (FAC ¶ 3), comprise direct evidence of the alleged conspiracy, this makes no sense. For starters, Plaintiff does not challenge RPX's membership agreements, or the RPX business model, as anticompetitive. Plaintiff has conceded that "[c]ollective licensing arrangements," like those engaged in by RPX, "are legally permissible" where, as here, an "alternative opportunity to acquire individual rights is realistically available." Pl.'s Reply Br. at 17–18, ECF No. 99-2 (quoting *Buffalo Broad. Co. v. Am. Soc. of Composers, Authors, Publishers*, 744 F.2d 917, 925 (2d Cir. 1984)).

Instead, the Complaint alleges an unlawful "side agreement," the supposed buyers' cartel between NVIDIA and Microsoft to negotiate rights to Plaintiff's patents only through RPX. FAC ¶ 287. But the Complaint fails to allege plausible facts that, if credited, would comprise direct evidence of any such agreement. There are no allegations identifying any specific communications between NVIDIA and Microsoft relating to Plaintiff or Plaintiff's patents, or any such communications between either NVIDIA or Microsoft and RPX from which an illegal agreement could be inferred. As to NVIDIA, the Complaint alleges only that Plaintiff's "representative" (a third-party broker, Tech+IP) sent a few unsolicited emails to NVIDIA employees between March and June 2024. *Id.* ¶ 281. As to Microsoft, Plaintiff merely alleges that Plaintiff's "representative"

separately sent unsolicited emails to Microsoft employees in March and April 2024 indicating that an anonymous company was available for acquisition. *Id*. ¶ 282.

The so-called side agreement likewise cannot be found anywhere in the terms of the RPX membership agreements, and its very existence is contradicted by their written terms. There is no obligation to license or acquire any technology exclusively through RPX; rather, the agreements expressly provide that each member is free to license or acquire any patents through its own individual negotiations. *See supra* n.3. Thus, the Court may not draw a plausible inference from the RPX membership agreements that NVIDIA and Microsoft agreed to negotiate with Plaintiff only through RPX, because that is contrary to what the membership agreements actually say.

Nor is any direct evidence of the conspiracy found in the Complaint's allegations about the historic contents of various iterations of RPX's website and SEC filings over the past decade. FAC ¶¶ 273–80. Such outdated allegations cannot as a matter of law comprise plausible evidence of an alleged conspiracy that Plaintiff asserts began in March 2024.[4] *See, e.g.*, *City of Pontiac Police and Fire Ret. Sys. v. BNP Paribas Secs. Corp.*, 92 F.4th 381, 404–08 (2d Cir. 2024) (communications predating alleged conspiracy were "stale" and "do not constitute plausible evidence of conspiracy"); *PharmaRx Pharm., Inc.* v. *GE Healthcare, Inc.*, 596 F. App'x 580, 581 (9th Cir. 2015). Regardless, the website and SEC filings do not state anything about the RPX platform being exclusive or about any agreement to acquire or license patents only though RPX.

---

[4] Plaintiff contends that RPX "has openly acknowledged in its SEC filings that its practices may be illegal and in violation of competition and antitrust laws." FAC ¶ 280. But this allegation, which selectively quotes from boilerplate registration statement "Risk Factors" is preposterous, lest most every U.S. public company find itself accused of unlawful conduct. *Id*. at ¶ 280 n.98.

2.     *Plaintiff Pleads No Plausible Circumstantial Evidence Supporting an Agreement through Parallel Conduct*

The Complaint pleads no circumstantial evidence of a conspiracy, because it fails to allege any facts supporting an inference of parallel conduct and thus its (factually wrong and conclusory) allegations of "plus factors" tending to exclude the possibility of independent action are of no consequence. *See Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 691 F. App'x 389, 391 (9th Cir. 2017). The mere allegation that Plaintiff's broker communicated with NVIDIA and Microsoft separately about the potential acquisition of an unidentified company, and that neither of them purchased or licensed the patents prior to this litigation, does not properly plead parallel conduct. The communications Plaintiff cites were from a third-party broker on behalf of an anonymous seller, so there are no non-conclusory facts plausibly alleged that either NVIDIA or Microsoft even knew the communications were made on behalf of Plaintiff, or that such communications were a demand for a patent license. "[I]t is well recognized that mere refusal by a group of defendants to deal with a plaintiff is not itself sufficient evidence of a conspiracy or concerted conduct." *Associated News, Inc. v. Curtis Circulation Co., Inc.*, 1986 WL 13791, at *6 (S.D. Tex. Dec. 4, 1986).

Even if Plaintiff had properly pled parallel conduct, the Complaint would still not be capable of supporting a conspiracy claim because it has not alleged any ***facts*** tending to exclude the equally—if not more—likely possibility that NVIDIA's and Microsoft's respective lack of engagement was the result of independent action by each company. *Twombly*, 550 U.S. at 556–57. The Complaint alleges that many years ago (2017), Microsoft received a presentation from Plaintiff about its portfolio (FAC ¶ 258) and that in March 2024—some seven years later—it received an inquiry from "Tech+IP" asking about Microsoft's interest in pursuing an acquisition of an unnamed and unidentified technology company (*id*. ¶ 282). But the Complaint offers no

factual allegations whatsoever to negate the possibility that NVIDIA and Microsoft did not follow up on the invitation to acquire the unidentified company because they each independently had no interest in such an anonymous acquisition, or that they did not seek to license Plaintiff's patents during the alleged conspiracy period because they each independently determined they did not need or want to license the patents, for any number of reasons. In the case of Microsoft, Plaintiff has not alleged any facts to negate the practical reality that a purchaser of products might reasonably expect its supplier to obtain any necessary patent licenses, thereby protecting a customer such as Microsoft from any alleged infringement claim pursuant to the patent exhaustion doctrine. *Quanta Comput., Inc. v. LG Elecs. Inc.*, 553 U.S. 617, 625 (2008) ("The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item.").

Nor is any circumstantial evidence of the alleged conspiracy found in the Complaint's allegations that NVIDIA and Microsoft were separately approached by Plaintiff many years earlier, but neither was interested in pursuing Plaintiff's purported technology. Those alleged instances occurred years before the alleged conspiracy began. FAC ¶¶ 241–243, 257–258, 281–282. Accordingly, to the extent such instances are even relevant (they are not—*see, e.g.*, *PharmaRx*, 596 F. App'x at 581), the allegations that NVIDIA and Microsoft separately did not pursue negotiations with Plaintiff for many years before the alleged conspiracy began is evidence that is inconsistent with—not supportive of—any later refusal to deal. Rather, they are consistent with each company determining on its own that it had no need or interest in whatever it was that Plaintiff had to offer. *See In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 538–39 (N.D. Tex. 2014) ("[j]ust because Defendants' rational business interests can be recast in a suspicious light does not mean the allegations actually suggest a conspiracy was formed").

Because of the complete absence of any allegations plausibly supporting the existence of the alleged side agreement, Plaintiff's Section 1 claim should be dismissed under the governing *Twombly* doctrine. The case law does not permit Plaintiff to use this litigation as a fishing expedition in search of a conspiracy that cannot be plausibly pled. *Ramirez v. Guadarrama*, 2 F. 4th 506, 513 (5th Cir. 2021) (plaintiffs cannot "fail to allege an element of their claim and then use discovery to find it"); *see also Smith v. Thibodeaux*, 2024 WL 1335649, at *6 (M.D. La. Mar. 28, 2024); *Turner v. Va. Dep't of Med. Assistance Servs.*, 230 F. Supp. 3d 498, 511 (W.D. Va. 2017).

### B. Plaintiff Fails to Plausibly Allege that Defendants Unreasonably Restrained Trade

A second reason that Plaintiff's Section 1 claim fails is because Plaintiff does not plead facts plausibly showing an unreasonable restraint of trade. Despite Plaintiff's attempt to invoke the *per se* rule against "price fixing,"[5] FAC ¶¶ 287, 301, the agreement alleged is not subject to *per se* condemnation. Before the *per se* rule may be applied, courts must determine "whether the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output, and in what portion of the market, or instead one designed to 'increase economic efficiency and render markets more, rather than less, competitive.'" *BMI*, 441 U.S. at 19–20 (citations omitted). The Supreme Court, circuit courts, and the antitrust agencies all recognize that patent pools and other joint IP licensing activities (similar to RPX) offer a range of procompetitive benefits, including "reducing transaction costs, clearing blocking positions, and avoiding costly infringement litigation" and "are evaluated under the rule of reason."[6] *See Antitrust*

---

[5] Plaintiff pleads no facts to establish any "price fixing" agreement. Just because a joint licensing agreement may achieve price efficiencies—like volume discounts or rewards programs—does not equate to "price fixing" that qualifies for *per se* treatment. 7 Areeda & Hovenkamp, *Antitrust Law*, ¶ 1510, at 402 (5th ed. 2023).

[6] Plaintiff's counsel successfully argued in other litigation that the rule of reason applies to a joint licensing platform. *See Avanci*, 485 F. Supp. 3d at 731, *aff'd*, 2022 WL 2205469 (5th Cir. June 21,

*Guidelines for the Licensing of Intellectual Property*, DOJ & FTC at 16–17 (Jan. 12, 2017) (hereinafter the "IP Licensing Guidelines").

*BMI* is on point because that case considered, and rejected, a claim—like Plaintiff's—that it was *per se* illegal price fixing for competitors to offer to license intellectual property at a price for the joint license decided by the group. In *BMI*, the Supreme Court held that such joint licensing is not price-fixing subject to *per se* treatment as it "is not a 'naked restrain[t] of trade with no purpose except stifling of competition.'"[7] *BMI*, 441 U.S. at 20. Instead, the Court found that such joint licensing activity was an efficient means of offering one-stop shopping for a multitude of intellectual property rights that avoided the delays and high transaction costs associated with individual negotiations. *Id*. at 21–22.

Similarly, here, any purported agreement by RPX to acquire license rights to Plaintiff's patents for the benefit of RPX's members would be efficient for **both** the patent owner **and** RPX members in avoiding costs and litigation expenses. And, of course, pursuing a transaction with RPX is voluntary and just one of multiple **options** Plaintiff has to monetize its patents. In fact, Plaintiff's own conduct, as alleged in the Complaint, demonstrates that the rule of reason analysis is appropriate here—Plaintiff voluntarily approached and engaged in discussions with RPX

---

2022). Group purchasing agreements are likewise evaluated under the rule of reason because of the efficiencies they offer. *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 295 (1985).

[7] For precisely the same reasons that *per se* analysis is inapplicable here under the Supreme Court's rationale in *BMI*, the "quick look" approach is equally inappropriate. The "quick look" approach can be employed "when the great likelihood of anticompetitive effects can be easily ascertained." *North Tex. Spec. Physicians v. FTC*, 528 F.3d 346, 362 (5th Cir. 2008); *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 770 (1999). Here, the efficiency benefits of joint licensing through RPX render quick look analysis inapplicable to any alleged agreement by Defendants to license Plaintiff's patents only through RPX. As BMI held, the rule of reason is the applicable mode of analysis for a joint licensing agreement. *BMI*, 441 U.S. at 24; *see also Doctors Hosp. of Jefferson, Inc. v. Se. Med. Alliance, Inc.*, 889 F. Supp. 879, 888 (E.D. La. 1995); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 205-06 (4th Cir. 2002).

regarding a joint licensing transaction, evidently recognizing the potential efficiency benefits for patent owners of monetizing and marketing patents through the RPX channel.[8] *See* FAC ¶ 283.

Plaintiff's claims fail as a matter of law when analyzed under the "rule of reason." The Complaint lacks any plausible facts suggesting that Defendants' alleged conduct might harm competition. Indeed, the very aspects of RPX's business model that Plaintiff points to are procompetitive or otherwise unlikely to harm competition. *See, e.g.*, FAC, Ex. 10. The value of RPX's business model to its members and patent owners is RPX's intermediary role helping ***both*** parties reduce their risk and considerable transactional costs—such as the costs patent owners otherwise would face from negotiating with multiple prospective licensees individually (including inevitable debates over whether the patent reads on each prospective licensee's technology)—and offering an alternative ***option*** for licensing patents. *See, e.g.*, FAC ¶¶ 275–76; *id*. Ex. 12.

Plaintiff has not alleged facts plausibly demonstrating that RPX's business model forecloses patent owners from any "'realistic opportunity' as a 'practical matter'" of pursuing any number of other methods to monetize their patents, including by negotiating "to obtain individual licenses to [the essential patents]" or alleging infringement in court (as Plaintiff is currently doing). *Matsushita Elec. Indus. Co., Ltd. v. Cinram Int'l, Inc.*, 299 F. Supp. 2d 370, 378–79 (D. Del. 2004); *BMI*, 441 U.S. at 23 (no restraint of trade in the joint licensing arrangement where no agreement "not to sell individually"); *Buffalo Broad. Co.*, 744 F.2d at 925–26 (joint license alternative is not restraint of trade when option of individual licensing exists). An RPX joint license is simply another option available and does not comprise a restraint of trade, let alone an unreasonable one.

---

[8] As Plaintiff conceded during the preliminary injunction hearing, the Court should assume that it was Plaintiff that first reached out to RPX and not vice-versa. Prelim. Inj. Hearing Tr., 17:15–20, 29:13–15, ECF No. 122. Consequently, any allegations in the Complaint to the contrary should be disregarded. *See, e.g.*, FAC ¶ 283.

*See Avanci*, 485 F. Supp. 3d at 732. Because there is no plausible evidence of any alleged side agreement by NVIDIA and Microsoft to fix prices, the rule of reason applies, and Plaintiff has not pled facts to plausibly show any unreasonable restraint of trade.

## II.    Plaintiff Does Not Plausibly Allege a Relevant Market or Defendants' Market Power

Plaintiff's Section 1 and Section 2 claims fail to plausibly establish a cognizable relevant product market and Defendants' power in that market—prerequisites for pleading any Sherman Act claim. *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010); *Witches Brew Tours LLC v. New Orleans Archdiocesan Cemeteries*, 2022 WL 3586757, at *4–7 (E.D. La. Aug. 22, 2022). The Complaint must plead plausible facts that consider two different elements: (i) the specific patents under consideration and all their reasonable substitutes which will define the relevant product market, and (ii) the companies potentially interested in buying or licensing Plaintiff's patents, which will determine whether Plaintiff can plausibly allege that NVIDIA and Microsoft have any monopsony power within the alleged buyers' market for Plaintiff's patents. Plaintiff fails to plausibly consider either of these elements so its relevant market and market power claims should be rejected.

### A.    *Plaintiff's Proposed Market Covering Only Its Own Patents Fails to Consider Substitute Technologies and Patents*

Plaintiff makes the conclusory assertion that the relevant product market is "the market for purchase, acquisition, or licensing of technology covered by Xockets' patents." FAC ¶ 295. But Plaintiff must "plausibly define" the relevant product market to include all reasonable substitutes. *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417–18 (5th Cir. 2010) (quoting *Apani Sw., Inc. v Coca-Cola Enters., Inc.*, 300 F.3d 620, 628 (5th Cir. 2002) (internal citation and quotation omitted)). Nowhere in its 196-page Complaint does Plaintiff allege any facts showing that "the technology covered by Xockets' patents" is not interchangeable or competitive with other

technologies or patents. Indeed, the Complaint does not address the issue of alternative technologies in the context of defining the relevant product market at all.

Plaintiff's failure to consider (or even mention) reasonable substitute technologies for its own patents renders its proposed relevant market "legally unsustainable" and requires dismissal. *Vaughn Med. Equip. Repair Serv., LLC v. Jordan Reses Supply Co.*, 2010 WL 3488244, at *19–20 (E.D. La. Aug. 26, 2010).[9] Courts grant dismissal where, like here, "a plaintiff alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products." *Apani*, 300 F.3d at 628; *see also Leegin*, 615 F.3d at 418; *Witches Brew Tours*, at *5; *see also CCPI Inc. v. Am. Premier, Inc.*, 967 F. Supp. 813, 817–18 (D. Del. 1997) (plaintiff's "failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal" (citation and internal quotation omitted)); *see also Quadvest, L.P. v. San Jacinto River Auth.*, No. 19-cv-04598 (S.D. Tex. Oct. 17, 2024), ECF No. 309.

The fact that Plaintiff has patents does not make the technology allegedly covered by those patents commercially indispensable, nor does it define a relevant product market for antitrust purposes. *See, e.g.*, *Ill. Tool Works, Inc. v. Ind. Ink, Inc.*, 547 U.S. 28, 45–46 (2006); *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 178 (1965); *CCPI Inc.*, 967 F. Supp. at 818 (plaintiff "cannot define the relevant product market by" its patents, as "[s]uch a product market will not survive a motion to dismiss"); *Abbott Lab'ys v. Brennan*, 952 F.2d 1346, 1354 (Fed. Cir. 1991) ("[A] patent holder has no market power in any relevant sense if there are close

---

[9] *See also PSKS*, 615 F.3d at 418; *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F. 3d 1327, 1338 (11th Cir. 2010) (accepting "skimpy allegations" would "absolve [plaintiff] of the responsibility under *Twombly* to plead facts 'plausibly suggesting'" the controls of a relevant market); *Acad. of Allergy & Asthma in Primary Care v. La. Health Serv. & Indem. Co.*, 2020 WL 4050243, at *9 (E.D La. July 17, 2020) (legally insufficient market where plaintiff failed "to attempt a plausible explanation as to why a market should be limited in a particular way"); *Star Tobacco, Inc. v. Darilek*, 298 F. Supp. 2d 436, 447 (E.D. Tex. 2003).

substitutes for the patented product.") (citations omitted); *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 172 (S.D.N.Y. 1995) ("it is obvious that merely obtaining a patent for a product does not create a product market for antitrust purposes").

As the U.S. Department of Justice and Federal Trade Commission have explained, "[t]echnology markets consist of the intellectual property . . . ***and its close substitutes—that is, the technologies or goods that are close enough substitutes to constrain significantly the exercise of market power with respect to the intellectual property that is licensed***." IP Licensing Guidelines at 9 (emphasis added); *see also Intel Corp. v. Fortress Inv. Grp. LLC*, 511 F. Supp. 3d 1006, 1021 (N.D. Cal. 2021). In other words, technology product markets are typically not limited to the subject matter covered by a specific set of patents, as the relevant market must include alternative technologies that may be "close substitutes." *See* IP Licensing Guidelines; *J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 704 F.2d 787, 796 (5th Cir. 1983). Plaintiff has failed to plead any facts regarding the existence of technologically "close substitutes," which would need to be included in the relevant product market definition. *See B.V. Optische*, 909 F. Supp. at 172 (plaintiffs failed to define market in terms of reasonable interchangeability or explain rationale underlying narrow proposed market definition); *see also E. & G. Gabriel v. Gabriel Bros., Inc.*, 1994 WL 369147, at *3 (S.D.N.Y. July 13, 1994) (dismissing complaint where alleged relevant market "is economically nonsensical").

> **B.    Plaintiff's Claims of Market Power Fail Because the Complaint Does Not Consider the Many Potential Substitute Buyers or Other Licensees of Plaintiff's Patents**

Even if the relevant product market were limited to Plaintiff's patents, the Complaint's failure to consider the many other admitted potential buyers or licensees of Plaintiff's patents—whether "GPU-enabled AI" platform/server companies (FAC ¶ 297) or otherwise—renders its allegations of Defendants' monopsony power in the market for Plaintiff's patents implausible. As

Plaintiff has recognized, courts look to the ***competing buyers*** when determining the existence of alleged market power in monopsony cases. Pl.'s Mot. 26–27, ECF No. 5-1 (quoting *Campfield v. State Farm*, 532 F.3d 1111, 1118 (10th Cir. 2008)). Here, the Complaint fails to consider the many other potential buyers or licensees for Plaintiff's patents, assuming the patents have value, besides NVIDIA and Microsoft. *See, e.g.*, *Campfield*, 532 F.3d at 1118.[10]

In an attempt to artificially "circumscribe the market" to ***only*** NVIDIA and Microsoft, Plaintiff concludes that "[g]iven their AI-driven roles and the necessity of Xockets' technology to those roles as set forth above, NVIDIA and Microsoft constitute a ***large part*** of the demand for Xockets' patented technology." FAC ¶ 285 (emphasis added). But the Complaint does not plausibly rule out the possibility of many other potential buyers or licensees of Plaintiff's patents. To the contrary, the Complaint's allegations expressly identify dozens of other companies that would have to be included in any market for Plaintiff's patents, and these allegations affirmatively negate the existence of Plaintiff's market power allegation against Defendants.

For example, the Complaint ***admits*** that at least 40 other companies, including some of Microsoft's largest competitors, use the very same accused NVIDIA products. FAC ¶ 235. Indeed, according to the Complaint, NVIDIA's accused products are experiencing "Widespread Adoption by Every Major Cloud Provider, Server Maker and Leading AI Company." *Id.* ¶ 231. The Complaint also alleges that Plaintiff's patents would be desired by numerous potential buyers or licensees that are not "GPU-enabled AI" companies. *Id.* Ex. 8 at 4 (identifying ***nine*** alleged uses for Plaintiff's technology). And the Complaint further alleges that various Non-Practicing Entities

---

[10] *See also Jayco Sys., Inc. v. Savin Bus. Machs Corp.*, 777 F.2d 306, 320 (5th Cir. 1985) ("single purchaser of a product cannot generally be considered a relevant market"); *Marion Healthcare LLC v. S. Ill. Healthcare*, 2013 WL 4510168, at *11 (S.D. Ill. Aug. 26, 2013) (plaintiff "failed to include in the relevant markets all potential buyers of inpatient or outpatient services").

("NPEs") and Patent Assertion Entities ("PAEs")[11] are potential buyers of Plaintiff's patents. *See* FAC ¶ 257.

In sum, the Complaint's allegations about the existence of dozens of potential licensees or buyers of its patent rights negates any allegation that NVIDIA and Microsoft would possess monopsony power in a buyers' market for Plaintiff's patents. Plaintiff cannot overcome its own allegations that require any claim of monopsony power to take into account the buyer-side competition posed by (i) other "GPU-enabled AI" companies using the same accused NVIDIA products; (ii) non-"GPU-enabled AI" companies that Plaintiff claims need Plaintiff's patents; and (iii) NPEs or PAEs that Plaintiff claims are interested in purchasing its patents. *Futurevision Cable Sys., Inc. v. Multivision Cable TV Corp.*, 789 F. Supp. 760, 768–69 (S.D. Miss. 1992); *see also Total Benefit Servs., Inc. v. Grp. Ins. Admin.*, 875 F. Supp. 1228, 1238–39 (E.D. La. 1995); *Pollard Banknote L.P. v. Sci. Games Int'l, Inc.*, 2011 WL 13162042, at *9 (N.D. Ga. Jan. 18, 2011).

## III.    Plaintiff Does Not Allege Facts Plausibly Supporting Its Section 2 Conspiracy to Monopolize Claim

To plead a conspiracy to monopolize claim under Section 2 of the Sherman Act, Plaintiff must plausibly allege: "(1) the existence of specific intent to monopolize; (2) the existence of a combination or conspiracy to achieve that end; (3) overt acts in furtherance of the combination or conspiracy; and (4) an effect upon a substantial amount of interstate commerce." *Acad. of Allergy & Asthma in Primary Care*, 2022 WL 980791, at *9 (W.D. Tex. Mar. 31, 2022). As with its Section 1 claim, Plaintiff's conspiracy to monopolize claim fails because the Complaint contains no allegations capable of supporting the existence of the alleged conspiracy. *See Nova Designs, Inc.*

---

[11] "PAEs are businesses that acquire patents from third parties and seek to generate revenue by asserting them against alleged infringers." Fed. Trade Comm'n, Patent Assertion Entity Activity 1–3 (2016).

*v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1092 (9th Cir. 2000).

Plaintiff's Section 2 claim also fails because Plaintiff concludes, with no facts in support, that the alleged conspiracy "was undertaken for the specific purpose of obtaining monopsony power over the market for the purchase, acquisition, or licensing of technology covered by Xockets' patents." FAC ¶ 303. Such "[f]ormulaic recitations" of Defendants' alleged intent to monopolize cannot satisfy Plaintiff's burden to satisfy this specific intent element. *Michael E. Jones M.D., P.C. v. UnitedHealth Grp., Inc.*, 2020 WL 4895675, at *11 (S.D.N.Y. Aug. 19, 2020).

## IV. Plaintiff Lacks Article III Standing to Assert Its Antitrust Claims for Failing to Plead Non-Speculative Injury in Fact

Plaintiff's antitrust claims fail for a lack of Article III standing. Plaintiff asserts that Defendants' conspiracy has "led to lost revenues and opportunities," which will eventually drive it "out of business." FAC ¶ 296. This purely hypothetical assertion is belied by the fact that Plaintiff does not allege that it ***ever*** earned any revenue from its patents in its decade-long existence before the alleged conspiracy began. *See id*. ¶ 55. There is thus no non-speculative factual basis from which to infer that Defendants' purported conspiracy has had any injurious effect on Plaintiff's ability to sell or license its patents.

To satisfy the foundational requirement of standing under Article III of the U.S. Constitution, Plaintiff must allege facts that tend to show it suffered a cognizable, concrete, and non-hypothetical injury-in-fact that was caused by Defendants' alleged conduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). Alleged injuries that are "merely conjectural or hypothetical do not suffice to confer standing." *Little*, 575 F.3d at 540 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344–46, 350 (2006)). A plaintiff must also show that the alleged injury is "certainly impending"— speculative claims of potential injury that rely on a "highly attenuated chain of possibilities" will

not do. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (rejecting "objectively reasonable likelihood" standard as "inconsistent with our requirement that 'threatened injury must be certainly impending to constitute injury in fact'").[12] Here, Plaintiff offers nothing more than conclusory allegations of injury that are entirely speculative in nature and more likely to arise from Plaintiff's long-standing lack of any commercial success, low patent quality, or marginal (if any) patent value. *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 587–88 (5th Cir. 1987) ("A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical.").

Specifically, Plaintiff alleges that any licensing fee that it would negotiate with RPX will be lower than "market rates" it could get from individually negotiated licenses. *Id*. ¶¶ 287, 302. Plaintiff further asserts, without any concrete factual allegations in support, that the alleged conspiracy will cause it to eventually be driven out of business. *See, e.g.*, *id*. ¶¶ 8, 286, 288, 292, 296. But this claimed injury is predicated on hypothetical assumptions at odds with the facts alleged in the Complaint.

The Complaint fails to allege any non-hypothetical fact of Article III injury because its speculative allegations of injury are indistinguishable from the lack of revenues it experienced for years prior to the start of the alleged conspiracy in the Spring of 2024. No facts are alleged suggesting Plaintiff was *ever* able to successfully license its patents; suggesting *any* prior royalties or revenues; suggesting the existence of any "market price" below which prices could fall; or suggesting that anyone has ever viewed Plaintiff's issued patents as "fundamental," "groundbreaking," valuable or valid, or in any way synonymous with NVIDIA's DPU

---

[12] *See also Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 2021 WL 940690, at *5–6 (S.D. Tex. Feb. 8, 2021) (citing *Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 241 (5th Cir. 2018)); *In re Gee*, 941 F.3d 153, 163–65 (5th Cir. 2019); *Dehoog v. Inbev*, 2016 WL 5853733, at *3–4 (D. Or. July 22, 2016), *R & R adopted by* 2016 WL 5858663 (D. Or. Oct. 3, 2016).

technology.[13] *Id.* ¶ 1. In contrast, the Complaint ***does*** allege that the circumstances and lack of demand for its patents remained the same after Plaintiff asked RPX to get involved. Plaintiff approached Microsoft in 2016–2017 and NVIDIA in 2022, but neither expressed interest in entering into negotiations then, *id.* ¶¶ 257–58, 241–43, and neither expressed interest in such negotiations later. *Id.* ¶¶ 281–82.

In short, Plaintiff's conclusory assertion that the price it can get for any sale of its patent rights to RPX is lower than the so-called "market rate" it can obtain absent the alleged conspiracy is pure conjecture. And such conjecture is wholly insufficient to demonstrate Article III fact of injury at the pleading stage. *See Avanci*, 27 F.4th at 333; *Little*, 575 F.3d at 540. For the same reason, Plaintiff has not pled facts showing antitrust injury, which applies an even higher injury standard than Article III for asserting antitrust claims. *See Brunswick Corp. v. Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Norris v. Hearst Tr.*, 500 F.3d 454, 465 (5th Cir. 2007).

## <u>CONCLUSION</u>

For all of these reasons, Plaintiff's antitrust claims should be dismissed with prejudice. The preliminary injunction hearing demonstrated that there are no additional facts that Plaintiff can plead, consistent with Rule 11, to plausibly support the existence of the alleged side agreement to only negotiate for Plaintiff's patents through RPX, or to plead the plausible existence of a relevant market in which Defendants have monopsony power. The Complaint also does not establish non-speculative Article III injury for its antitrust claims as it alleges consequences from the claimed conspiracy that are indistinguishable from the state of the world before the alleged conspiracy is claimed to have come into existence.

---

[13] Indeed, Plaintiff does not even allege facts showing that it ever offered a patent license to NVIDIA or Microsoft, let alone that it communicated with either of them about the prices they would be willing to pay for such patent rights. Nor does Plaintiff allege that RPX engaged in any price negotiations with Plaintiff or offered it any particular price for its patent rights.

Dated: November 12, 2024

/s/ *Thomas M. Melsheimer*

Thomas M. Melsheimer (SBN: 13922550)
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, Texas 75201
Tel: (214) 453-6500
Fax: (214) 453-6400
tmelsheimer@winston.com

Kelly C. Hunsaker (CA Bar No. 168307)
Matthew R. McCullough (*pro hac vice*)
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, California 94065
Tel: (650) 858-6500
Fax: (650) 858-6550
khunsaker@winston.com
mrmccullough@winston.com

Jeffrey L. Kessler (*pro hac vice*)
Aldo A. Badini (*pro hac vice*)
Susannah P. Torpey (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
abadini@winston.com
storpey@winston.com

Scott M. Border (*pro hac vice*)
**WINSTON & STRAWN LLP**
1901 L Street, N.W.
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100

Bruce A. Koehler
Andres E. Almanzan
**MOUNCE, GREEN, MYERS, SAFI,
PAXSON & GALATZAN, P.C.**
P.O. Box 1977

/s/ *Deron R. Dacus*

Deron R. Dacus (SBN: 00790553)
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Tel: (903) 705-1117
ddacus@dacusfirm.com

Garrard R. Beeney (*pro hac vice*)
Steven L. Holley (*pro hac vice*)
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000
beeneyg@sullcrom.com
holleys@sullcrom.com

Adam S. Paris (*pro hac vice*)
Caroline M.L. Black (*pro hac vice*)
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Tel: (310) 712-6600
parisa@sullcrom.com
blackcar@sullcrom.com

*Counsel for Defendant RPX Corporation*

El Paso, Texas 79950
Tel: (915) 532-2000
Fax: (915) 541-1548
koehler@mgmsg.com
almanzan@mgmsg.com

***Counsel for Defendant Microsoft
Corporation***

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on November 12, 2024, the foregoing was electronically filed with the Clerk of Court using CM/ECF, and served via CM/ECF upon all counsel of record who are deemed to have consented to electronic service per Local Rule CV-5(b)(1).

<u>/s/ *Thomas M. Melsheimer*</u>
Thomas M. Melsheimer
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, Texas 75201
Tel: (214) 453-6500
Fax: (214) 453-6400
