# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

|  |  |
|---|---|
| XOCKETS, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 6:24-cv-453-ADA |
| NVIDIA CORPORATION, MICROSOFT CORPORATION, and RPX CORPORATION, | |
| Defendants. | |

# DEFENDANT MICROSOFT CORPORATION'S OPPOSED MOTION TO SEVER AND STAY PATENT CLAIMS UNDER THE CUSTOMER-SUIT EXCEPTION

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................. 1

II.     LEGAL STANDARDS ..................................................................................... 3

      A.      Customer-suit exception ....................................................................... 3

      B.      Traditional stay factors.......................................................................... 4

      C.      Severance .............................................................................................. 5

III.    ARGUMENT ................................................................................................... 5

      A.      All three customer-suit factors strongly favor severance and stay of Xockets'
            patent claims against Microsoft. ............................................................ 6

            1.      Xockets' patent claims against Microsoft are based on use of the NVIDIA
                  Accused Products, and its patent case against NVIDIA will resolve all the
                  major issues in Xockets' patent claims against Microsoft. ........................ 6

            2.      Microsoft agrees to be bound by infringement and invalidity issues
                  decided in the case against NVIDIA........................................................... 9

            3.      NVIDIA is the only source of the Accused Products.................................. 9

      B.      The traditional stay factors strongly support severance and stay.......................... 10

      C.      Courts regularly sever patent and antitrust claims................................................ 11

      D.      Xockets' unprompted new infringement contentions purporting to include non-
            NVIDIA products are outside the scope of the pleadings, violate the patent joinder
            statute, should be disregarded, and further justify severance and stay. ................ 13

IV.     CONCLUSION................................................................................................ 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Red River Waterway Comm'n*,
  231 F.3d 211 (5th Cir. 2000) ...................................................................................4

*Brunet v. United Gas Pipeline Co.*,
  15 F.3d 500 (5th Cir. 1994) ....................................................................................5

*Dali Wireless, Inc. v. Ericsson Inc.*,
  No. 6:22-CV-01313-ADA, 2023 WL 1423990 (W.D. Tex. Jan. 30, 2023) ................... *passim*

*Decapolis Sys., LLC v. Univ. Health Sys. Servs. of Tex., Inc.*,
  No. 6:21-CV-01252-ADA, 2022 WL 2373705 (W.D. Tex. June 30, 2022) .......................6, 8

*In re EMC Corp.*,
  677 F.3d 1351 (Fed. Cir. 2012).......................................................................16, 17

*Glenayre Elecs., Inc. v. Jackson*,
  443 F.3d 851 (Fed. Cir. 2006).................................................................................8

*In re Google Inc.*,
  588 F. App'x 988 (Fed. Cir. 2014) .......................................................................4, 12

*GreatGigz Sols., LLC v. Costco Wholesale Corp.*,
  No. 6:21-CV-00807-ADA, 2022 WL 1037114 (W.D. Tex. Apr. 6, 2022) ...........................6

*Henan Oil Tools, Inc. v. Eng'g Enters.*,
  262 F. Supp. 629 (S.D. Tex. 1966)........................................................................11

*Infinite Data LLC v. Home Depot U.S.A. Inc.*,
  No. 13–260–RGA, 2014 WL 265704 (D. Del. 2014)..................................................9

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990).............................................................................3

*Kraus v. Emhart Corp.*,
  320 F. Supp. 60 (N.D. Cal. 1970) .........................................................................12

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)..............................................................................................4

*In re Nintendo Co.*,
  544 F. App'x 934 (Fed. Cir. 2013) ..............................................................14, 15, 16

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014) ............................................................................3, 5, 8, 15

*Sonrai Memory Ltd. v. Samsung Elecs. Co.*,
  No. 6:21-CV-00169-ADA, 2022 WL 572301 (W.D. Tex. Feb. 24, 2022) ......................2, 5, 6

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
  657 F.3d 1349 (Fed. Cir. 2011) .............................................................................................4, 17

*Topia Tech., Inc. v. Dropbox, Inc.*,
  No. 6:21-CV-01373-ADA, 2022 WL 18109619 (W.D. Tex. Dec. 29, 2022) ................ *passim*

*United States v. Colomb*,
  419 F.3d 292 (5th Cir. 2005) ......................................................................................................11

*Wood Arts Golf, Inc. v. Callaway Golf Co.*,
  196 F. Supp.2d 467 (S.D. Tex. 2002) ........................................................................................13

**Statutes**

35 U.S.C. § 299 ...........................................................................................................................*passim*

35 U.S.C. § 299(a) ........................................................................................................................7, 15

35 U.S.C. § 299(b) ........................................................................................................................7, 15

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................12

Fed. R. Civ. P. 15(a) ........................................................................................................................14

Fed. R. Civ. P. 18 .............................................................................................................................15

Fed. R. Civ. P. 20 .......................................................................................................................16, 17

Fed. R. Civ. P. 21 ....................................................................................................................1, 5, 12

Fed. R. Civ. P. 26(f) .........................................................................................................................13

## I.      INTRODUCTION

Defendant Microsoft Corporation is a customer of NVIDIA Corporation with respect to all products accused of patent infringement in this case.  Pursuant to the customer-suit exception and consistent with well-established authority in this district, Microsoft respectfully moves to (1) sever Plaintiff Xockets, Inc.'s patent infringement claims against Microsoft pursuant to Federal Rule of Civil Procedure 21; and (2) stay those patent claims pending resolution of Xockets' patent claims against NVIDIA, the Defendant who designed, developed and supplies the products accused of infringement in Xockets' First Amended Complaint.  It is NVIDIA who possesses the most relevant knowledge and discovery and is best equipped to defend its products against Xockets' claims of infringement.  And resolution of the patent claims against NVIDIA will resolve all or substantially all of the patent claims against Microsoft, including major issues of infringement and invalidity as to the NVIDIA products.  Granting Microsoft's motion to sever and stay while proceeding first on the patent claims against NVIDIA therefore streamlines the case, promotes judicial economy, avoids duplication, conserves court and party resources, and poses no prejudice to Xockets, who will have the full and fair opportunity to litigate its patent infringement claims against the original designer, developer, and supplier who sells the accused DPU products to Microsoft.  NVIDIA has indicated they agree and support the relief requested herein and intend to file a joinder in this Motion.

The scope of Xockets' patent claims is constrained by its First Amended Complaint.  Dkt. 7 ("FAC").  There, Xockets alleges that NVIDIA's BlueField, ConnectX and NVLINK Switch DPUs including NVIDIA's Hopper and Blackwell GPU-enabled servers ("NVIDIA Accused Products") infringe seven asserted patents.  *Id.* at ¶¶ 9 n. 6, 188, 209.  In contrast, in that Complaint, Xockets only alleges infringement by Microsoft based on the mere "***use*** of the accused NVIDIA

systems and components that NVIDIA sells to Microsoft" (*id.* ¶ 83) and expressly defines "Microsoft Accused Products" solely in terms of the "***use*** of NVIDIA BlueField DPUs and ConnectX DPUs" and "***use*** of NVIDIA NVLink Switch DPUs, in its server systems in its Microsoft's Azure Cloud platform, including NVIDIA's Hopper and Blackwell GPU-enabled server computer systems." *Id.* at ¶ 244; *see also id.* ¶ 30 ("Microsoft is a customer of NVIDIA…").[1]

Each of the three customer-stay factors is squarely met here.  First, Xockets' claims of infringement against Microsoft in the First Amended Complaint are based solely on use of the accused NVIDIA products such that there is "significant overlap" in the patent claims against both Defendants; second, Microsoft agrees to be bound by determinations of infringement and validity decided in the NVIDIA case as to the accused NVIDIA products; and third, NVIDIA is Microsoft's only source of the NVIDIA Accused Products and Microsoft's liability depends on whether those products infringe.  *Dali Wireless, Inc. v. Ericsson Inc.*, No. 6:22-CV-01313-ADA, 2023 WL 1423990, at *2 (W.D. Tex. Jan. 30, 2023) (severing and staying claims against customer); *see also Sonrai Memory Ltd. v. Samsung Elecs. Co.*, No. 6:21-CV-00169-ADA, 2022 WL 572301 (W.D. Tex. Feb. 24, 2022) (severing and staying claims against customer).  All traditional stay factors also weigh strongly in favor of a stay.  There is no prejudice to Xockets in litigating its patent claims against NVIDIA first; doing so will simplify the issues in the case; and the case is at an early stage with no trial date yet set.  Accordingly, granting Microsoft's Motion satisfies the guiding principles of promoting judicial economy and avoiding waste and duplication, and

---

[1]  Unprompted and without a scheduling order, Xockets purported to serve infringement contentions on Microsoft identifying two unrelated non-NVIDIA products for the first time.  As explained in Section III.D below, these non-NVIDIA products are outside the scope of the First Amended Complaint, mis-joined under the patent joinder statute (35 U.S.C. § 299), and not properly before the Court.

Microsoft respectfully requests that the Court sever and stay Xockets' patent claims against Microsoft under the customer-suit exception pending resolution of Xockets' patent claims against NVIDIA.

## II.    LEGAL STANDARDS

### A.    Customer-suit exception

Although it originated as an exception to the first-to-file rule for earlier-filed cases against a supplier's customers, courts, including the Federal Circuit, have "applied the customer-suit exception to cases in which the supplier and customer are named as defendants in the same case." *Dali Wireless*, 2023 WL 1423990, at *2 (citing *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014)).  The customer-suit exception ensures that "litigation against . . . the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).  This allows courts "to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute."  *Nintendo*, 756 F.3d at 1365.

"In determining whether the customer-suit exception applies, the court analyzes three factors: (1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product."  *Dali Wireless*, 2023 WL 1423990, at *2 (quotation omitted); *accord, e.g.*, *Topia Tech., Inc. v. Dropbox, Inc.*, No. 6:21-CV-01373-ADA, 2022 WL 18109619, at *2 (W.D. Tex. Dec. 29, 2022).

For the first factor to favor relief, the customer need not literally be a "reseller" of the supplier's accused product; instead, it is sufficient that the customer be an "end-user of the accused [] system" such that "there is 'significant overlap' between the infringement contentions against

the manufacturer and the customer." *Dali Wireless*, 2023 WL 1423990, at *3. "To warrant a stay of the customer suit, the case involving the manufacturer 'need only have the potential to resolve the major issues concerning the claims against the customer—not every issue.' " *Id*. at *2 (internal quotations omitted) (quoting *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011)).

Courts employ a "flexible approach" to avoid wasteful expenditure of resources and will therefore "stay[] proceedings if the other suit [or claim] is so closely related that substantial savings of litigation resources can be expected." *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014). The "guiding principles in the customer suit exception cases are efficiency and judicial economy." *Spread Spectrum*, 657 F.3d at 1357 (citation omitted).

### B.    Traditional stay factors

A trial court has broad discretion to stay an action against a party to promote judicial economy. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

Although this "Court gives great weight to the three factors considered under the customer-suit exception," it has also considered, "for the sake of completeness," the traditional stay factors— i.e., "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set." *Dali Wireless*, 2023 WL 1423990, at *4, *2 (quotation omitted); *accord Topia*, 2022 WL 18109619, at *3–4.

4

### C.    Severance

Federal Rule of Civil Procedure 21 provides that "[t]he court may also sever any claim against a party."  Courts in this district and the Federal Circuit have regularly relied on Rule 21 to sever and stay patent claims against a customer-defendant under the customer-suit exception.  *See also Nintendo*, 756 F.3d at 1365–66 (ordering district court to sever claims against customers); *Dali Wireless*, 2023 WL 1423990, at *2 (severing and staying claims against customer); *Sonrai Memory*, 2022 WL 572301, at *3 (severing and staying claims against customer).  "The trial court has broad discretion to sever issues to be tried before it."  *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994).  "Severance [is] appropriate 'where the administration of justice would be materially advanced….' "  *Nintendo*, 756 F.3d at 1366.

### III.    ARGUMENT

All customer-suit and traditional stay factors weigh strongly in favor of severing and staying Xockets' patent infringement claims against Microsoft, while proceeding first with Xockets' patent infringement claims against NVIDIA.  The allegations of Xockets' First Amended Complaint make clear that NVIDIA, the party who designed and developed the NVIDIA Accused Products, will have the most relevant witnesses, knowledge and documents regarding infringement.  And Xockets' patent claims against Microsoft are entirely dependent upon and derivative of its patent claims against NVIDIA.  Motions to sever and stay customer patent claims in these circumstances have routinely been granted in this district.  Further, NVIDIA has indicated it will join this Motion and agrees that the patent claims against Microsoft, as its customer, should be severed and stayed so NVIDIA may defend its products.

**A.** **All three customer-suit factors strongly favor severance and stay of Xockets' patent claims against Microsoft.**

    **1.** **Xockets' patent claims against Microsoft are based on use of the NVIDIA Accused Products, and its patent case against NVIDIA will resolve all the major issues in Xockets' patent claims against Microsoft.**

First, Xockets' patent infringement claims against Microsoft in its First Amended Complaint are based solely on Microsoft's *use* of the accused NVIDIA products, analogous to claims against resellers, and the first customer-suit factor has consistently been held to apply to customers sued for *using* products accused of infringement. *See Dali Wireless*, 2023 WL 1423990, at *3; *Decapolis Sys., LLC v. Univ. Health Sys. Servs. of Tex., Inc.*, No. 6:21-CV-01252-ADA, 2022 WL 2373705, at *2 (W.D. Tex. June 30, 2022) (staying claims against customer where the "Complaint accuses [the customer] of infringement based almost entirely upon their use of [the supplier's] software"); *GreatGigz Sols., LLC v. Costco Wholesale Corp.*, No. 6:21-CV-00807-ADA, 2022 WL 1037114, at *3 (W.D. Tex. Apr. 6, 2022) (granting stay where "Complaint is predicated entirely on Defendants' use of the supplier's product").

Here, there is no question the case against NVIDIA has "the potential to resolve the 'major issues' concerning the claims against" Microsoft, as there is well more than "significant overlap" in Xockets' infringement allegations against NVIDIA. *Dali Wireless*, 2023 WL 1423990, at *2; *Sonrai Memory*, 2022 WL 572301, at *3. First, for each asserted patent, Xockets alleges that the NVIDIA Accused Products alone "practice every element" of the claims (FAC ¶¶ 312, 367, 420, 474, 523, 572, 623); it defines the "Microsoft Accused Products" solely in terms of Microsoft's use of the NVIDIA Accused Products (*Id.* at ¶ 244); and its infringement allegations against Microsoft are identical to its infringement allegations against NVIDIA as far as what in the accused products meets every required element of the patent claims (*see* FAC ¶¶ 322–331, 376–384, 429–

437, 481—487, 530–536, 580–587, 630–636; *cf. id.* ¶¶ 312–321, 367–375, 420–428, 474–480, 523–529, 572–579, 623–629).

Second, under the patent joinder statute, 35 U.S.C. § 299, patent infringement claims against different defendants on the same patents must ordinarily be brought as separate cases. *See* 35 U.S.C. § 299(b). But here, by Xockets' own admission, it joined NVIDIA and Microsoft in the same case under 35 U.S.C. § 299(a) specifically because its right to relief is asserted against both defendants based on "***the same accused product or process***"—namely, Microsoft's "***use of the accused NVIDIA system and components that NVIDIA sells to Microsoft***." FAC ¶ 83; *see also id.* ¶¶ 308, 364, 417, 470, 520, 569, 620. As such, Xockets defines "Microsoft Accused Products" solely in terms of Microsoft's ***use*** of the NVIDIA Accused Products:

> Microsoft infringes the New Cloud Processor Patents at least through its ***use of NVIDIA BlueField DPUs and ConnectX DPUs (ConnectX-5 and later versions)***, and infringes the New Cloud Fabric Patents at least through its ***use of NVIDIA NVLink Switch DPUs***, in its server systems in its Microsoft Azure Cloud platform, including ***NVIDIA's Hopper and Blackwell GPU-enabled server computer systems available in DGX, HGX, MGX, and other configurations*** (hereinafter, the "Microsoft Accused Products").

*Id*. ¶ 244 (emphases added); *see also id.* at ¶ 312, 367, 420, 474, 523, 572, 623 (NVIDIA Accused Products "practice every element" of the claims). Thus, Xockets alleges the NVIDIA products infringe as sold by NVIDIA and used by Microsoft. Other than identifying the environment where Xockets contends these NVIDIA products are used (i.e., "in its Microsoft Azure Cloud platform"), Xockets' First Amended Complaint does not reference any non-NVIDIA technology and none of its infringement allegations are specific to how Microsoft uses the NVIDIA products.

Finally, the patent case against NVIDIA has the potential to resolve the major issues in the patent case against Microsoft. *Dali Wireless,* 2023 WL 1423990, at *2–3. Microsoft's liability for infringement, if any, is entirely derivative of NVIDIA's liability, if any. The major issues in any

patent case are whether the accused products infringe and whether the patents are invalid. Both major issues will be resolved in Xockets' case against NVIDIA. If either of those two major issues is resolved in NVIDIA's favor, there is nothing left to litigate against Microsoft in this patent case. And if Xockets prevails against NVIDIA, any damages awarded against NVIDIA will exhaust Xockets' patent claims against Microsoft for its use of the NVIDIA Accused Products. *See Decapolis*, 2022 WL 2373705, at *4 (severing and staying, and noting "if [the supplier] is found to infringe, Decapolis will be precluded from seeking damages against the [customers] here under the doctrine of patent exhaustion"); *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) ("a party is precluded from suing to collect damages for direct infringement by a buyer and user of a product when actual damages covering that very use have already been collected from the maker and seller of that product"). Thus, here, the patent case against NVIDIA will resolve the major issues in the patent case against Microsoft.

The mere fact that Xockets alleges that Microsoft's use of the NVIDIA Accused Products occurs in Microsoft's Azure Cloud environment (FAC ¶ 244) is irrelevant to the customer-stay analysis. *Dali Wireless* is directly on point. 2023 WL 1423990, at *2–3. There, the court severed and stayed patent claims against Verizon as a customer from the patent claims against Ericsson where Verizon was accused of infringement for *using* the accused Ericsson system in Verizon's LTE and 5G networks. There, like here, the infringement allegations against Ericsson and Verizon were identical. *Id.* (rejecting patentee's argument that Verizon's "deploying, operating, maintaining, testing, and using its own networks," or "involvement in the configuration of the accused products" changed the analysis or weighed against severance); *see also Nintendo*, 756 F.3d at 1365 (customer stay rule "exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute").

Accordingly, the requirements to satisfy the first customer stay factor are met here and weigh strongly in favor of severance and stay.

### 2. Microsoft agrees to be bound by infringement and invalidity issues decided in the case against NVIDIA.

Second, Microsoft hereby agrees to be bound by any findings as to infringement of the NVIDIA Accused Products and any invalidity determination actually decided in Xockets' patent case against NVIDIA as to the NVIDIA Accused Products. Thus, the second customer-suit factor also weighs in favor of severance and stay. *See Dali Wireless*, 2023 WL 1423990, at *4 (this Court finding that the second factor favored severance and stay where the customer "agrees to be bound by a Court's findings as to infringement applicable to the products at issue" and "by any invalidity determination actually adjudicated by a Court" (quotation omitted)); *see also Topia*, 2022 WL 18109619, at *4; *Infinite Data LLC v. Home Depot U.S.A. Inc.*, No. 13–260–RGA, 2014 WL 265704, at *2 n.2 (D. Del. 2014) (granting a stay for those defendants that agreed to be bound and observing such agreement extends to "what is actually determined in the context of the [supplier] action" such that "if new infringement allegations are raised later, there may also be new invalidity allegations").

### 3. NVIDIA is the only source of the Accused Products.

Third, NVIDIA is the only source of the Accused Products pled in Xockets' First Amended Complaint—i.e., NVIDIA's BlueField, ConnectX, and NVLink Switch DPUs including NVIDIA's Hopper and Blackwell GPU-enabled servers. FAC ¶¶ 32 ("This case focuses on NVIDIA's and Microsoft's infringement of Xockets' inventions [identifying the NVIDIA Accused Products]"), 33-45 (describing NVIDIA's alleged design and development of the NVIDIA Accused Products since its acquisition of Mellanox), 70 ("NVIDIA designs, develops, manufactures, sells, and offers to sell the Accused Products"), 184-238 (describing "NVIDIA's

Use of Xockets' Patented Technology"); *cf. id.* ¶¶ 244–254 (infringement allegations directed to Microsoft for "use of [NVIDIA Accused Products]").[2]  Xockets does not accuse any non-NVIDIA products of infringement in its First Amended Complaint.[3]  Thus, NVIDIA is the only source of the Accused Products that are at issue in this case, also favoring severance and stay.  *See Dali Wireless*, 2023 WL 1423990, at *4; *Topia*, 2022 WL 18109619, at *4.  Accordingly, all three customer-suit factors weigh strongly toward severing and staying Xockets' patent claims against Microsoft pending resolution of the patent claims against NVIDIA.

### B.    The traditional stay factors strongly support severance and stay.

While the "Court gives great weight" to the above factors in the customer-suit context, "traditional stay factors" further reinforce staying Xockets' patent claims against Microsoft.  *Dali Wireless*, 2023 WL 1423990, at *4; *see also, e.g.*, *Topia*, 2022 WL 18109619, at *4–5.

*First*, a stay will not unduly prejudice Xockets.  *Dali Wireless*, 2023 WL 1423990, at *4–5.  A stay "where the accused product comes from the remaining defendant [] does not significantly delay [Xockets] from litigating the question of infringement," and it is likely that "the bulk of the relevant evidence comes from the supplier of the accused product, not the customer."  *Id.* at *5; *see also Topia*, 2022 WL 18109619, at *5.  Further, Xockets cannot recover twice from both NVIDIA and Microsoft under the doctrine of patent exhaustion, since "any recovery [Xockets]

---

[2] Though Xockets alleges Microsoft and NVIDIA are "partners," it merely alleges they partnered to accelerate development and deployment of AI products in Microsoft's Azure cloud platform, *not* that they partnered on the design, development, or manufacturing of the NVIDIA Accused Products themselves.  *See, e.g.*, FAC ¶¶ 249 ("NVIDIA also advertises that it is 'partnering with Microsoft to accelerate the development and deployment of generative AI across Microsoft Azure, Azure AI services, Microsoft Fabric, and Microsoft 365.'"), 253 ("Microsoft has emphasized the significance of its collaboration with NVIDIA in delivering 'state-of-the-art AI capabilities for every enterprise on Microsoft Azure'").  Quite the opposite, Xockets' FAC concedes Microsoft is joined here as a customer of NVIDIA's Accused Products.  *Id.* ¶ 30.  Thus, none of these statements are relevant to the sever and stay analysis.

[3] Microsoft addresses the unaccused out-of-scope non-NVIDIA products in Section III.D below.

may obtain from [NVIDIA] will exhaust claims as to downstream customers such as [Microsoft]."
*Dali Wireless*, 2023 WL 1423990, at *4.

      *Second*, there is no question a stay will simplify the issues in the case, since the Court can conserve judicial resources to focus on NVIDIA as the party who designs, develops, and sells the Accused Products to Microsoft.  *See, e.g.*, *Dali Wireless*, 2023 WL 1423990, at *5.  The outcome of Xockets' patent claims against NVIDIA will "resolve the 'major issues' concerning the claims against the customer," and so "the issues will be greatly simplified by first resolving the claims against [NVIDIA]."  *Id.*; *see also Topia*, 2022 WL 18109619, at *5.  Doing so also reduces the burden on Microsoft as a customer of the accused technology and on the Court's limited resources by eliminating unnecessary hearings and adjudication of issues as to Microsoft.  Stays in circumstances like this are warranted to avoid the virtual certainty of overlapping, wasteful, and duplicative proceedings.  *See United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) ("A district court has inherent power to 'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (citation omitted)).  Thus, this factor weighs in favor of a stay.

      *Third*, the early stage of this case favors severance and stay of the patent claims against Microsoft.  This case is in its infancy, discovery has not yet opened, and no trial date has been set.  Instead, this Motion was brought at the earliest opportunity to avoid duplication and promote judicial economy.  This also strongly favors staying the patent claims against Microsoft.  *See id.*; *Topia*, 2022 WL 18109619, at *5.  Thus, all the traditional stay factors are also met here.

    **C.**    **Courts regularly sever patent and antitrust claims.**

      The presence of Xockets' antitrust claims does not change the customer stay analysis on its patent claims.  Courts regularly sever patent and antitrust claims.  *See, e.g.*, *Henan Oil Tools, Inc. v. Eng'g Enters.*, 262 F. Supp. 629, 631 (S.D. Tex. 1966) ("It is common for courts to sever antitrust

issues from patent validity and infringement issues.").  And it is clear that under Rule 21 a court can sever individual claims against a party, without severing remaining claims.  Fed. R. Civ. P. 21 ("The court may also sever any claim against a party.").  Indeed, Xockets itself originally filed its antitrust claims alone, separate from its patent claims.  *See* Dkt. 1.

Moreover, Defendants have moved to dismiss Xockets' antitrust claims pursuant to Rule 12(b)(6) for failing to state a claim under the antitrust laws and believe there is no plausible amendment that can save those claims.  *See* Dkts. 128, 129 (Defendants' Motions to Dismiss the antitrust claims).  Even if the antitrust claims are not dismissed, the issues and scope of discovery are very different, and all stay factors continue to weigh strongly in favor of severing and staying the patent claims against Microsoft as a customer of NVIDIA.  The burden on Microsoft and its personnel from expansive patent discovery into Microsoft's use of the accused NVIDIA products in the Azure Cloud Platform is enormous.  And it is wholly unnecessary to impose on a customer when the supplier, NVIDIA, is in the case ready, willing and able to defend its accused products; where the supplier, NVIDIA, is the primary source of proofs relevant to Xockets' infringement claims against both parties; and where Microsoft has agreed to be bound by findings of infringement and invalidity actually litigated.  As noted above, courts employ a "flexible approach" to avoid wasteful expenditure of resources and will therefore "stay[] proceedings if the other suit [or claim] is so closely related that substantial savings of litigation resources can be expected."  *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014).  With or without the antitrust claims, that remains the case here.

And ultimately, even if Xockets' antitrust claims survive (and they should not), whether or not the NVIDIA Accused Products infringe any valid patents remains the primary issue in the case from which all other issues depend.  *See Kraus v. Emhart Corp.*, 320 F. Supp. 60, 64 (N.D. Cal.

1970) ("Assuming patent infringement can somehow constitute an antitrust violation[,] plaintiff's claims of antitrust violations against defendants must also fall in that they stem from the claims of patent infringement."); *see also Wood Arts Golf, Inc. v. Callaway Golf Co.*, 196 F. Supp.2d 467, 471 (S.D. Tex. 2002) (finding that "because [plaintiff's] claim of unfair competition is wholly contingent upon a finding of patent infringement, this claim should … be dismissed").  Thus, the presence of the antitrust claims does not alter the customer stay analysis, and in fact, the presence of those claims is entirely consistent with prioritizing the patent claims against NVIDIA by severing and staying wholly duplicative patent claim against a customer for its mere *use* of the allegedly infringing technology, simplifying the issues while efficiently moving the case in the right direction.

### D. Xockets' unprompted new infringement contentions purporting to include non-NVIDIA products are outside the scope of the pleadings, violate the patent joinder statute, should be disregarded, and further justify severance and stay.

Despite no case schedule or Rule 26(f) conference having taken place, Xockets served patent infringement contentions on November 1, purporting to add infringement claim charts directed only to Microsoft based on unaccused non-NVIDIA products identified as "Microsoft Fungible and/or Azure Boost DPUs."  Ex. A at 12.  Neither product is mentioned anywhere in Xockets' First Amended Complaint.  Dkt. 7.  Xockets does not assert these new patent infringement contentions against NVIDIA, nor are they alleged to be related in any way to the NVIDIA Accused Products or Microsoft's use of the NVIDIA Accused Products pled in Xockets' First Amended Complaint.  *Id.*  These contentions are not properly before the Court and should be disregarded in ruling on the present Motion for at least the following reasons.

First, Xockets' infringement contentions have no effect.  They were served unprompted, without a schedule, before any 26(f) conference had taken place, and before discovery has even opened.  Immediately after the preliminary injunction hearing, Xockets proposed a highly

accelerated, highly unworkable schedule unmoored from any local rules, standing orders, or local practices in this district or elsewhere. Defendants told Xockets the schedule was unworkable and an alternate proposed schedule from Defendants would be forthcoming. Xockets did not respond and instead served its infringement contentions unprompted, apparently trying to force its preferred schedule on the proceedings, but its unilateral actions have no effect and can only be seen as another attempt to circumvent the rules.

Second, "Microsoft Fungible and/or Azure Boost DPUs" (included in Xockets' unprompted infringement contentions) are plainly outside the scope of Xockets' operative First Amended Complaint. Dkt. 7. Neither is mentioned anywhere in that Complaint nor included in the definition of Microsoft or NVIDIA Accused Products. *See* FAC ¶¶ 188, 209, 244 (defining "NVIDIA Accused Products" and "Microsoft Accused Products"). Instead, Xockets' First Amended Complaint alleges infringement against Microsoft based *solely* on use of the NVIDIA Accused Products in its Azure cloud platform. *See id*. ¶¶ 244, 322–331, 376–384, 429–437, 481–487, 530–536, 580–587, 630–636. Nor could Xockets amend its Complaint to include these allegations. It cannot amend as a matter of right, because it already did that when it filed its original and First Amended Complaint a few hours apart to try and circumvent the patent case reassignment order. *See* Dkt. 1 (original complaint) and Dkt. 7 (FAC filed same day); Fed. R. Civ. P. 15(a) ("A party may amend its pleading once as a matter of course … In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave").

Third, even if Xockets could amend its Complaint or had properly sought leave to do so (it has not), the Court is required by Federal Circuit precedent to first consider whether to sever the original NVIDIA-based claims against Microsoft before considering whether to permit Xockets to add infringement allegations for non-NVIDIA products. *See In re Nintendo Co.*, 544 F. App'x

934, 940 (Fed. Cir. 2013) ("*Nintendo II*").  In *Nintendo II*, Nintendo (the supplier) and its retailers (the customers) had moved to sever the claims against the retailers under the customer suit exception and the district court initially denied severance based on the patentee adding infringement allegations against the retailers relating to non-Nintendo products.  *Id.*  The Federal Circuit reversed, holding that "any determination as to whether the claims involving the non-Nintendo products should remain in this case was premature.  Before the court addressed whether [the plaintiff] could add claims against the retailer defendants under Rule 18, it first needed to assess whether the case against Nintendo—***as it was originally filed***—should be severed and transferred.  The subsequent addition of new non-Nintendo product claims against the retailer defendants does not factor into this inquiry."  *Id.* (emphasis added).  The *Nintendo* case directly rebuts Xockets' recent argument that this is a mere "bifurcation" issue that is "properly left for post-discovery."  Dkt. 136, at 4 n.2.  The Court cannot simply defer this issue to later.  It must decide whether to sever and stay the patent claims against Microsoft first based on the allegations of the First Amended Complaint as it was originally filed.

Fourth, even if the Court proceeds to analyzing joinder of these new products, these new unpled infringement contentions are misjoined under the patent joinder statute (35 U.S.C. § 299) and cannot be included in this case.  That statute provides that "***accused infringers may not be joined in one action*** as defendants or counterclaim defendants, or have their actions consolidated for trial, ***based solely on allegations that they each have infringed the patent or patents in suit***."  35 U.S.C. § 299(b).  Rather, the statute <u>only</u> permits joinder of two defendants in the same case if the infringement claims are based on ***the same transaction or occurrence relating to the same accused products***.  *See* 35 U.S.C. § 299(a) ("accused infringers may be joined in one action as defendants…or have their actions consolidated for trial, <u>only if</u>—(1) any right to relief is asserted

against the parties jointly, severally, or in the alternative with respect to or ***arising out of the same transaction, occurrence, or series of transactions or occurrences relating to ... the same accused product or process***") (emphasis added).  Xockets' First Amended Complaint invoked the patent joinder statute, alleging that its joinder of NVIDIA and Microsoft "is proper under 35 U.S.C. § 299" because "Microsoft infringes the asserted Xockets Patents at least ***through its use of the accused NVIDIA systems and components that NVIDIA sells to Microsoft***, as alleged below." FAC ¶ 83 (emphasis added).  And the remainder of its First Amended Complaint only ever alleges infringement by Microsoft based on its use of the NVIDIA Accused Products.  *Id.* at ¶¶ 244–250, 308, 322–331, 341–350, 364, 376–384, 394–403, 417, 429–437, 447–456, 470, 481–487, 497–506, 520, 526, 530–536, 546-555, 569, 580–587, 597–606, 620, 630–636, 646–655 (Patent Infringement Counts III–IX).

Even in the context of the broader joinder provisions of Federal Rule of Civil Procedure 20, Xockets' claims against non-NVIDIA products would not be properly joined in this case.  In *In re EMC Corp.*, the Federal Circuit considered whether claims of patent infringement against different products were properly joined under the same transaction or occurrence test of Rule 20 and concluded they were not, holding that "joinder is ***not*** appropriate where different products or processes are involved."  677 F.3d 1351, 1359 (Fed. Cir. 2012); *see also In re Nintendo Co.*, 544 F. App'x 934, 939 (Fed. Cir. 2013) ("The AIA's joinder provision is more stringent than Rule 20").  Thus, Xockets' unprompted new infringement contentions purporting to accuse "Microsoft Fungible and/or Azure Burst DPUs," instead of the Microsoft Accused Products defined in the First Amended Complaint, are not properly joined in this case.  Xockets does not accuse NVIDIA or allege any "transaction" involving NVIDIA with respect to these two new non-NVIDIA

16

products, so neither is part of the "same transaction" relating to "the same accused product" and their joinder here is improper.

Finally, even if the Court were to entertain these new out-of-scope infringement contentions against Microsoft (and it should not), the new contentions would only provide further support for severing and staying the patent claims against Microsoft. Under 35 U.S.C. § 299 or Rule 20, they cannot be tried with the patent claims against NVIDIA, and the Court should therefore sever and stay them regardless. *EMC*, 677 F.3d at 1359. Defending against different accused products would raise a host of different issues on both infringement and invalidity, require different evidence and witnesses, a different development story and history, and have the evidence primarily coming from a different source (Microsoft rather than NVIDIA), all of which are unrelated to the antitrust claims and supposed "buyers' cartel." The added scope and expense of defending these unrelated products arising from completely different series of transactions and occurrences poses significant prejudice to Microsoft compared to its role as a customer as pled in Xockets' First Amended Complaint, particularly since it would have to defend those products in the midst of Xockets' sweeping infringement allegations against NVIDIA's DPUs. Accordingly, not only would these new contentions not present any obstacle to severing and staying the patent claims against Microsoft under the customer suit exception, but they would bolster that conclusion due to the prejudice they would pose to Microsoft by joining unrelated products arising from unrelated claims.

Proceeding first on Xockets' patent claims against NVIDIA on the NVIDIA Accused Products would still meet the customer stay factors, since the case against the supplier "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Spread Spectrum*, 657 F.3d at 1358. Here, it is clear that the "major" issues are

those relating to the NVIDIA Accused Products, which pervade and dominate the case Xockets'

pled in its First Amended Complaint.  In contrast, Microsoft Fungible and/or Azure Boost are not

mentioned in the First Amended Complaint at all.  *See generally* FAC.[4]  Accordingly, even if the

Court were to entertain a request by Xockets to amend the pleadings to include Microsoft Fungible

and Boost (and it should not), it would still weigh strongly in favor of a stay under both the

customer-suit and traditional stay factors.

## IV.    CONCLUSION

For the reasons discussed above, Microsoft respectfully requests that the Court grant its

customer motion to sever and stay Xockets' patent claims against Microsoft pending final

resolution of Xockets' patent claims against NVIDIA, the supplier of the NVIDIA Accused

Products that are the only basis of Xockets' patent infringement claims against Microsoft in this

case.

---

[4] Even the unprompted infringement contentions served by Xockets focus on the NVIDIA Accused Products, listing nearly seven pages of accused NVIDIA-related products (Ex. A at 6-12) compared with barely half a page of the newly accused Microsoft Fungible and/or Boost products (*id*. at 12-13).  And for the NVIDIA Accused Products, Xockets served only a single infringement chart for both Microsoft and NVIDIA that relies simply on Microsoft's use of the NVIDIA Accused Products, confirming those products are the focus and the major issue of this case.

Dated:  December 11, 2024

Respectfully submitted,

By: */s/ Kelly C. Hunsaker*

Thomas M. Melsheimer
State Bar No. 13922550
Samuel W. Riebe
State Barn No. 24136101
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Tel: (214) 453-6500
Fax: (214) 453-6400
tmelsheimer@winston.com
sriebe@winston.com

Kelly C. Hunsaker
CA Bar No. 168307
Matthew R. McCullough (*pro hac vice*)
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Tel. (650) 858-6500
Fax (650) 858-6559
khunsaker@winston.com
mrmccullough@winston.com

Jeffrey L. Kessler (*pro hac vice*)
Aldo A. Badini (*pro hac vice*)
Susannah P. Torpey (*pro hac vice*)
Lauren E. Duxstad (*pro hac vice*)
Artem Khrapko (*pro hac vice*)
Rebecca Ou (*pro hac vice*)
Daniel Marzagalli (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
abadini@winston.com
storpey@winston.com
lduxstad@winston.com
akhrapko@winston.com
rou@winston.com
dmarzagalli@winston.com

Scott M. Border (*pro hac vice*)
**WINSTON & STRAWN LLP**
1901 L Street, N.W.
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
sborder@winston.com

Nasir Hussain (*pro hac vice*)
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL  60601-9703
Tel: (312) 558-5600
Fax: (312) 558-5700
nhussain@winston.com

Bruce A. Koehler
Andres E. Almanzan
**MOUNCE, GREEN, MYERS, SAFI,
PAXSON & GALATZAN, P.C.**
P.O. Box 1977
El Paso, TX 79950
Tel: (915) 532-2000
Fax: (915) 541-1548
koehler@mgmsg.com
almanzan@mgmsg.com

***Attorneys for Defendant
Microsoft Corporation***

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2024, the foregoing document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Kelly C. Hunsaker*
Kelly C. Hunsaker

## CERTIFICATE OF CONFERENCE

On December 11, 2024, counsel for movant conferred with opposing counsel concerning the relief sought in this Motion, and was advised that opposing counsel opposed this Motion on the basis that it served infringement contentions directed to separate Microsoft products.

*/s/ Kelly C. Hunsaker*
Kelly C. Hunsaker