**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| XOCKETS, INC.,<br><br>      *Plaintiff*,<br><br>  v.<br><br>MICROSOFT CORPORATION, NVIDIA CORPORATION, and RPX CORPORATION,<br><br>      *Defendants*. | Case No. 6:24-cv-00453-LS<br><br>Hon. Leon Schydlower |

**DEFENDANTS MICROSOFT CORPORATION AND RPX CORPORATION'S REPLY
IN SUPPORT OF JOINT PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

ARGUMENT ...........................................................................................................................1

I.     PLAINTIFF FAILS TO PLAUSIBLY ALLEGE AN ANTITRUST
       CONSPIRACY ...........................................................................................................1

       A.     Plaintiff Pleads No Direct Evidence of the Alleged Agreement ...............................2

       B.     Plaintiff Pleads No Circumstantial Evidence of the Alleged Agreement .................4

              1.     Plaintiff Fails to Plead the Threshold Element: Parallel Conduct ...............4

              2.     Plaintiff's Conclusory "Plus Factors" Do Not Tend to Show
                     Conspiracy .................................................................................................5

       C.     Plaintiff Fails to Plausibly Allege That Defendants Unreasonably
              Restrained Trade, Let Alone That *Per Se* Treatment Is Warranted............................7

II.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE A RELEVANT
       MARKET ....................................................................................................................8

III.   PLAINTIFF CANNOT DEMONSTRATE THAT IT WAS ACTUALLY
       HARMED ....................................................................................................................9

CONCLUSION...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. C/C PHH Mortg. Servs.*,
  2020 WL 826640 (S.D. Tex. Jan. 29, 2020) ................................................................................10

*Am. Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n*,
  633 F. Supp. 201 (N.D. Ill. 1986) ................................................................................................7

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  2018 WL 3032552 (S.D. Cal. June 19, 2018) ..............................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................................2, 4, 6

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
  691 F. App'x 389 (9th Cir. 2017) ................................................................................................5

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
  441 U.S. 1 (1979) ..................................................................................................................3, 7, 8

*Brunswick Corp. v. Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ....................................................................................................................10

*Campfield v. State Farm*,
  532 F.3d 1111 (10th Cir. 2008) ..................................................................................................9

*Cascades Comput. Innovation LLC v. RPX Corp.*,
  2013 WL 6247594 (N.D. Cal. Dec. 3, 2013) ...............................................................................4

*CCPI Inc. v. Am. Premier, Inc.*,
  967 F. Supp. 813 (D. Del. 1997) ..................................................................................................8

*Constr. Cost Data v. Gordian Grp. Inc.*,
  2017 WL 2266993 (S.D. Tex. Apr. 24, 2017) ..............................................................................9

*F.T.C. v. Super. Ct. Trial Laws. Ass'n*,
  493 U.S. 411 (1990) ......................................................................................................................7

*In re High-Tech Emp. Antitrust Litig.*,
  856 F. Supp. 2d 1103 (N.D. Cal. 2012) ......................................................................................7

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
  99 F. Supp. 3d 610 (D. Md. 2015) ..............................................................................................8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................................................10

*Marucci Sports, L.L.C. v. NCAA*,
    751 F.3d 368 (5th Cir. 2014)..............................................................................................2

*McWane, Inc. v. F.T.C.*,
    783 F.3d 814 (11th Cir. 2015)............................................................................................4

*N. Tex. Specialty Physicians v. F.T.C.*,
    528 F.3d 346 (5th Cir. 2008)..............................................................................................3

*Norris v. Hearst Tr.*,
    500 F.3d 454 (5th Cir. 2007)............................................................................................10

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
    997 F. Supp. 2d 526 (N.D. Tex. 2014)................................................................................6

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
    911 F.3d 505 (8th Cir. 2018)..............................................................................................5

*Sony Elecs., Inc. v. Soundview Techs., Inc.*,
    157 F. Supp. 2d 180 (D. Conn. 2001) ................................................................................4

*Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.*,
    496 F.3d 403 (5th Cir. 2007)..............................................................................................5

*Vaughn Med. Equip. Repair Serv., LLC v. Jordan Reses Supply Co.*,
    2010 WL 3488244 (E.D. La. Aug. 26, 2010) .....................................................................8

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012)................................................................................................3

**Other Authorities**

7 Areeda & Hovenkamp, *Antitrust Law* (5th ed. 2023) .......................................................7

Christopher R. Leslie, *Trust, Distrust, and Antitrust*, 82 Tex. L. Rev. (2004) ..................7

Plaintiff's Opposition fails to reconcile any of the fatal deficiencies of its antitrust claims and misapprehends the motion to dismiss standard as requiring acceptance of its conclusory allegations even when the pled facts undermine them. The Opposition does not overcome the Complaint's failure to allege any facts to plausibly support Plaintiff's fundamental claim: an alleged "side agreement" between NVIDIA and Microsoft concerning Plaintiff's patents. NVIDIA's and Microsoft's memberships in RPX, and their alleged nonresponse to an anonymized offer to **acquire an unidentified business** is no evidence of an agreement between them **not to unilaterally license Plaintiff's patents**. Nor does Plaintiff address the at-least-equal (indeed, more likely) possibility that NVIDIA and Microsoft each separately decided not to engage with Plaintiff (or were still weighing their options) for entirely unrelated reasons, which is consistent with Plaintiff's failure to license its patents to **anyone** for nearly a decade before the alleged conspiracy purportedly began.

Plaintiff likewise fails to plausibly allege a relevant market. The Complaint defines the relevant market as one limited to Plaintiff's patents without considering potential substitutes for those patents. And the Complaint concedes that there are many potential buyers of Plaintiff's patents, making an alleged boycott involving only NVIDIA and Microsoft even more implausible.

Finally, Plaintiff has failed to plausibly allege that it was harmed by Defendants' alleged conspiracy. Plaintiff's hypothetical claim of injury cannot satisfy Article III standing, let alone the heightened antitrust injury standard applicable here. Plaintiff has not articulated any means to cure these defects, so its antitrust claims should be dismissed with prejudice.

## ARGUMENT

### I.    Plaintiff Fails to Plausibly Allege an Antitrust Conspiracy

The crux of Plaintiff's antitrust claims is that NVIDIA and Microsoft conspired to reach a "side agreement" in the spring of 2024 not to negotiate with Plaintiff for a potential license of its

patents, purportedly for the express purpose of leaving Plaintiff to negotiate with RPX as its only option. FAC ¶ 287. Yet the Complaint fails to plead any direct or circumstantial evidence of such an agreement. Plaintiff ignores this fatal deficiency, dedicating less than two pages of its Opposition to addressing the missing allegations necessary to support the existence of the side agreement. Instead, Plaintiff wrongly asserts that "such allegations are not required, especially at the pleading stage," choosing not to tell the Court that its only support for this false proposition is from *Twombly*'s **dissent**. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 588 (2007); Opp'n at 8. In fact, *Twombly* holds that the absence of such allegations **requires** dismissal. *See Twombly*, 550 U.S. at 556-57; *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 375 (5th Cir. 2014) (affirming dismissal of complaint that failed to "demonstrate a 'meeting of the minds,'" and merely pled "various conclusory allegations that support[ed] one of many inferential possibilities").

## A.    *Plaintiff Pleads No Direct Evidence of the Alleged Agreement*

The Complaint contains no well-pled facts supporting the existence of an alleged side agreement between NVIDIA and Microsoft. Plaintiff does not dispute the absence of alleged communications among Defendants evidencing such an agreement. Indeed, the Complaint fails to identify **a single communication** between NVIDIA and Microsoft even mentioning Plaintiff or its patents and pleads no facts plausibly suggesting either one even knew the other had been approached. Nor does the Complaint allege any communications among Defendants from which the alleged side agreement could reasonably be inferred.

Plaintiff instead retreats to the argument that NVIDIA's and Microsoft's memberships in RPX are sufficient evidence of the claimed conspiracy.[1] Opp'n at 10. But Plaintiff effectively

---

[1] Plaintiff also mischaracterizes its "negotiations" with RPX as evidence of the alleged conspiracy. *See, e.g.*, Opp'n at 1-2. But Plaintiff offers no facts supporting the bald suggestion that RPX was negotiating on behalf of NVIDIA or Microsoft. *See, e.g.*, Prelim. Inj. Tr. 27:1-37:12, Dkt. 122. Moreover, the record—including Plaintiff's own admissions—is clear: Plaintiff's broker initiated

abandoned any claim based on RPX's business model by admitting that RPX's business practices are lawful if "an alternative opportunity to acquire individual rights is realistically available."[2] *Id.*; *see also* Pl.'s Reply, Mot. for Prelim. Inj. at 3, 17-18, Dkt. 99-2. This is precisely the case here. The membership agreements, incorporated by reference in the Complaint, expressly provide that RPX members retain the ability to individually negotiate with any patent owner (which Plaintiff does not dispute).[3] Mot. at 4 n.3, 7. That is, the "RPX model" itself refutes Plaintiff's claim.

Consequently, Plaintiff is left to try to allege conduct inconsistent with the model. But Plaintiff does not allege any facts showing that NVIDIA or Microsoft, or any other RPX member, agreed to any restraint on their ability to negotiate with Plaintiff. All Plaintiff can muster is the weak retort that while RPX members are "free to negotiate on their own, … courts look to market reality, not boiler-plate" contract language. Opp'n at 15. But the Complaint does not allege a single fact to support a purported "market reality" in which members only license through RPX or are restrained from individually licensing, or that the membership agreements' explicit language is somehow meaningless.

Unlike here, the cases Plaintiff cites each allege facts showing either an exclusive dealing or side agreement. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012) (express

---

contact, not RPX (*see, e.g.*, Prelim. Inj. Tr. 31:13-14); Plaintiff failed to allege that its patents have undergone an independent valuation (*see generally* FAC); and Plaintiff ceased communications and filed this lawsuit before RPX could even make an offer (FAC ¶¶ 283-84; Opp'n at 2 n.3).

[2] No allegations even remotely suggest that the RPX business model creates fewer licensing options for patent holders or licensors. *See Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 19-25 (1979) ("*BMI*") (package license was new product offering convenience and lower transaction costs). And Plaintiff's suggestion that RPX's advertisements indicating that it could achieve lower prices for members must indicate that RPX is resorting to an anticompetitive conspiracy is wholly speculative and divorced from reality. *See* Opp'n at 13-14, 16-17. The Complaint offers no facts to plausibly show that RPX operated illegally with respect to Plaintiff.

[3] This case thus differs markedly from *North Texas Specialty Physicians v. F.T.C.*, cited by Plaintiff, where the agreements expressly **prohibited** members from pursuing individual negotiations. 528 F.3d 346, 353 (5th Cir. 2008).

exclusive dealing agreements); *McWane, Inc. v. F.T.C.*, 783 F.3d 814 (11th Cir. 2015) (same); *Cascades Comput. Innovation LLC v. RPX Corp.*, 2013 WL 6247594, at \*5 (N.D. Cal. Dec. 3, 2013) (alleging facts plausibly showing agreement to deal only through RPX).[4] *Sony Electronics, Inc. v. Soundview Technologies, Inc.* is also inapposite. There, the association's members discussed the patent at issue in "numerous meetings" and "the industry members agreed on a 'reasonable' license term of 5 cents per unit." 157 F. Supp. 2d 180, 187 (D. Conn. 2001).[5] No such factual allegations are pled in the Complaint here.

### B.    *Plaintiff Pleads No Circumstantial Evidence of the Alleged Agreement*

Having pled no direct evidence, Plaintiff must plead circumstantial evidence of the alleged illegal agreement through (i) parallel conduct consistent with the alleged conspiracy and (ii) "plus factors" tending to exclude the possibility of independent action. Mot. at 8-10. It has done neither.

#### 1.    *Plaintiff Fails to Plead the Threshold Element: Parallel Conduct*

The only post-conspiracy, so-called "parallel conduct" Plaintiff alleges is that NVIDIA and Microsoft each did not respond to separate, unsolicited offers from a third-party broker on behalf of an **undisclosed principal** to **purchase an unnamed company**. *See id*. at 3 n.2. But these allegations cannot plausibly support parallel conduct by Defendants in refusing to negotiate a license with Plaintiff—an entirely different matter. Defendants' alleged nonresponses to this

---

[4] Notably, the *Cascades* court dismissed the plaintiff's initial complaint, which ***did not*** contain any alleged facts supporting the existence of an agreement after finding, under *Twombly*, the complaint was no more than a "generic pleading." *See* 2013 WL 6247594, at \*7.

[5] While Plaintiff (wrongly) asserts that the RPX membership agreements permit Defendants to share pricing information (Opp'n at 15-18), it fails to allege any facts that such information was ever exchanged. In any event, the alleged RPX policy Plaintiff cites (which is from two years before the purported conspiracy supposedly began) is entirely irrelevant to its allegation of a purported side agreement between NVIDIA and Microsoft not to negotiate individually with Plaintiff ***at all***. *Id*. at 17-18. Nothing in the Complaint supports the existence of an alleged side agreement, without which Plaintiff has admitted it has no claim. *See* Prelim. Inj. Tr. 15:16-16:9, Dkt. 122.

unsolicited outreach are at least equally consistent with independent decision-making and incapable of supporting a conspiracy claim. *See id.* at 8-9. Indeed, Plaintiff ignores the fact that, even if this alleged solicitation were to be considered as an offer to license patents (it should not), NVIDIA and Microsoft are just as (if not more) likely to have independently elected not to engage in individual negotiations for any number of valid reasons. These include, among others, the failure to disclose whose patents were being offered, a lack of interest in Plaintiff's patents or purported technology, or the practical reality that Microsoft, as a purchaser of allegedly infringing products from NVIDIA, might reasonably expect its supplier to obtain necessary patent rights. *Id.* at 9.

### 2.    *Plaintiff's Conclusory "Plus Factors" Do Not Tend to Show Conspiracy*

Because Plaintiff failed to allege parallel conduct consistent with the purported conspiracy, this Court need not go any further.[6] That said, Plaintiff's antitrust claims also fail because the Complaint pleads no facts plausibly alleging "plus factors" tending to exclude the possibility of independent conduct. *See Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.*, 496 F.3d 403, 409 (5th Cir. 2007).

*First*, rather than alleging specific facts tending to show an agreement, Plaintiff makes the conclusory argument that it would be in NVIDIA's and Microsoft's self-interest to individually negotiate with Plaintiff as they "both know they are infringing in connection with their AI servers and services." Opp'n at 11 n.4. But there are no factual allegations to support this claim. To start, the Complaint alleges no facts demonstrating that either NVIDIA or Microsoft "know" they are purportedly infringing and that they were told a license would cure such infringement. And while Plaintiff argues that Defendants would have individually pursued a "first-mover advantage" (*id.* at

---

[6] *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018); *Bona Fide Conglomerate, Inc.* v. *SourceAmerica*, 691 F. App'x 389, 391 (9th Cir. 2017); Mot. at 8.

11-12), Plaintiff never alleged that it ever offered either NVIDIA or Microsoft any such "advantage," nor does it explain why the many other potential licensees of its patents did not seek to avail themselves of this purported advantage. *See, e.g.*, FAC ¶¶ 20-21. Plaintiff's failure to address plausible alternative explanations for Defendants' "conduct" dooms the Complaint under *Twombly*. *See In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 538-39 (N.D. Tex. 2014); Mot. at 7-9.

*Second*, Plaintiff recycles its allegation that NVIDIA's and Microsoft's RPX membership is a "plus factor," claiming that it provides motive and opportunity for them to conspire. This is nonsensical. Even accepting for the sake of argument that an RPX license would necessarily result in a lower price to Plaintiff (it does not), there is no explanation for how a license by RPX on behalf of and available to its members (including potential competitors of NVIDIA and Microsoft) would be competitively beneficial to either NVIDIA or Microsoft. Moreover, Plaintiff cannot just claim that Defendants had the ability or opportunity to conspire; it must plead sufficient evidence to show the conspiracy plausibly occurred. *See Twombly*, 550 U.S. at 556-57; *In re Online Travel Co.*, 997 F. Supp. 2d at 541 ("opportunity to meet and conspire … standing alone, isn't suspicious" or "enough to suggest a conspiracy") (citation and internal quotation marks omitted). It does not.

*Third*, Plaintiff's reliance on NVIDIA's and Microsoft's purported market power in downstream product markets ignores its admission that courts look to **competing buyers** when determining market power in monopsony cases. Opp'n at 27; *see* Mot. at 16. Plaintiff concedes that "other RPX members" (of which there are hundreds) could be potential customers for Plaintiff's patents. Opp'n at 2. Though Plaintiff asserts that the other RPX members who "form virtually the entire market for Xockets' patents … also boycotted the Xockets' sales process," the Complaint includes no such allegations and pleads no facts to allege any such widespread boycott.

6

*Id.* Thus, even if NVIDIA and Microsoft conspired, nothing would prevent any of the several hundred other potential buyers from negotiating an individual license, making Plaintiff's conspiracy allegations all the more implausible.[7]

In sum, both mathematics and the case law establish that, here, "zero plus zero equals zero." *Am. Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n,* 633 F. Supp. 201, 215 n.23 (N.D. Ill. 1986) (noting that "[i]f no incident has probative value, all incidents taken together have no probative value").[8]

C.      ***Plaintiff Fails to Plausibly Allege That Defendants Unreasonably Restrained Trade, Let Alone That Per Se Treatment Is Warranted***

Plaintiff's Section 1 conspiracy claim fails because the Complaint does not include any well-pled facts that plausibly show an unreasonable restraint of trade under the applicable "rule of reason" test. *BMI,* 441 U.S. at 2, 24-25; Mot. at 10-11. Plaintiff is wrong that the *per se* rule should apply because Defendants' conduct is purportedly "a classic buyer-side price fixing conspiracy."[9]

---

[7] Such a large number of potential buyers makes Plaintiff's side agreement conspiracy theory even more implausible. *See* 7 Areeda & Hovenkamp, *Antitrust Law* ¶ 574 (5th ed. 2023) ("both collusion and oligopoly become more difficult as the number of firms in the market increases"); *see also* Christopher R. Leslie, *Trust, Distrust, and Antitrust,* 82 Tex. L. Rev. 515, 564-65 & n.356 (2004) (cartels with large numbers of firms are less likely to persist).

[8] Plaintiff's Section 2 claim fails for the same reasons as its Section 1 claim. *See* Mot. at 17-18. But even if Plaintiff had plausibly alleged an agreement, its Section 2 claim still could not survive because the Complaint alleges no facts to support its allegation that Defendants allegedly conspired for the **specific purpose** of creating a monopoly. *See id.*

[9] Plaintiff asserts that, as a *per se* case, the efficiency and market value of RPX's business model are irrelevant because "the law does not permit an inquiry into … reasonableness." Opp'n at 20 (quoting *F.T.C. v. Super. Ct. Trial Laws. Ass'n,* 493 U.S. 411 (1990) ("*SCTLA*")). But, in *SCTLA,* there was direct evidence of an agreement to reduce output until prices increased. Here, the Complaint alleges no facts to support an agreement to fix the price for licensing Plaintiff's patents. And the other cases Plaintiff cited alleged written agreements restraining the hiring of employees. *See Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.,* 2018 WL 3032552 (S.D. Cal. June 19, 2018); *In re High-Tech Emp. Antitrust Litig.,* 856 F. Supp. 2d 1103 (N.D. Cal. 2012). But here, the alleged agreement is supported neither by writing nor any oral communications.

Opp'n at 19. Without nonconclusory factual allegations that Defendants agreed to depress the price for licensing Plaintiff's patents, Plaintiff has not pled a *per se* unlawful price-fixing agreement. There are no allegations that anyone ever offered Plaintiff any price, at any time, for its patents. Rather, RPX allegedly indicated that it would "go back to [its] members to consider next steps," but Plaintiff sued before RPX could continue its discussion with Plaintiff's broker. FAC ¶¶ 283-84; Opp'n at 2 n.3. Further, RPX's joint-licensing model at issue here is precisely the type that the Supreme Court ***held is subject to rule of reason analysis, not the per se rule*** (even though the parties offering the joint license must agree upon a price). *BMI*, 441 U.S. at 24-25; Mot. at 10-12.[10]

## II.    The Complaint Does Not Plausibly Allege a Relevant Market

To support claims under both Sections 1 and 2 of the Sherman Act, Plaintiff must plausibly allege a relevant market and Defendants' market power. Mot. at 13. The Complaint fails to do this. It attempts to define a relevant market limited to only the technology covered by Plaintiff's own patents without accounting for potential substitutes—a fatal flaw mandating dismissal.[11] *See Vaughn Med. Equip. Repair Serv., LLC v. Jordan Reses Supply Co.*, 2010 WL 3488244, at \*20 (E.D. La. Aug. 26, 2010); *CCPI Inc. v. Am. Premier, Inc.*, 967 F. Supp. 813, 818 (D. Del. 1997); Mot. 14-15. Plaintiff merely asserts that courts have held that patents may sometimes constitute a relevant market. Opp'n at 27. The cases Plaintiff cites, however, involved expressly pled facts considering whether substitutes existed for the patents at issue.[12] *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 99 F. Supp. 3d 610, 621 (D. Md. 2015); *Constr. Cost Data v. Gordian Grp. Inc.*,

---

[10] For these same reasons, Plaintiff is wrong that "quick look" analysis alternatively applies.

[11] Plaintiff argues that it need not plead a market or market power under the *per se* or "quick look" doctrines but admits it must plausibly establish a relevant market and market power under the rule of reason standard, which applies here. Opp'n 25-26.

[12] Plaintiff has no response to the authorities Defendants cited finding that claims fail where a plaintiff neglects to consider interchangeable technology and close substitutes. *See* Mot. at 14-15.

2017 WL 2266993, at *1, *16 (S.D. Tex. Apr. 24, 2017). The Complaint does not meet this requirement.

Plaintiff wrongly contends that the flaws in its alleged market definition are beside the point because the Court must analyze the market of competing buyers in a monopsony case. Opp'n at 27. In fact, because Plaintiff has not properly alleged any relevant market, the Court need not even reach the issue of Defendants' market power. But even if it does, the Complaint still fails because it does not identify or consider which potential buyers of Plaintiff's patents, besides NVIDIA and Microsoft, would be seen by Plaintiff as being "reasonably good substitutes." *Id.*

Plaintiff alleges that its patents are of interest to "every business in every industry." FAC ¶ 19. Plaintiff cannot then plausibly claim that Defendants have market power in the alleged buyers' market as such a market would have to include all potential ***purchasers other than NVIDIA and Microsoft***.[13] *See* Mot. at 15-17. Plaintiff's cited case, *Campfield v. State Farm*, confirms this: the court there found that the relevant market must reflect the "total market demand for plaintiffs' product, ***not just defendants' demand***." 532 F.3d 1111, 1118 (10th Cir. 2008) (internal quotations omitted) (emphasis added) (affirming dismissal). Thus, even if Plaintiff had plausibly alleged a relevant buyers' market (it has not), it has failed to allege Defendants had market power in any such market. *See* Mot. at 15-17.

### III.    Plaintiff Cannot Demonstrate That It Was Actually Harmed

The Complaint does not plead facts plausibly alleging that the claimed conspiracy caused Plaintiff "lost revenues and opportunities," risking the future demise of its business. FAC ¶ 296.

---

[13] Plaintiff alleges that the demand for its purported technology extends beyond NVIDIA and Microsoft (*see* FAC ¶ 285) and then attempts to dismiss the relevance of these substitute buyers by arguing that they are also RPX members. Opp'n at 31. But the Complaint alleges neither facts suggesting that these buyers are part of the alleged conspiracy nor facts to show that membership in RPX limited members' ability to individually negotiate for licenses. *See* Mot. 6-7, 11-12.

9

To the contrary, the allegations demonstrate a lack of demand for Plaintiff's patents for nearly a decade before the alleged conspiracy purportedly began. *Id*. ¶¶ 257-58, 241-43, 281-82. Given the speculative nature of its claimed injuries, Plaintiff lacks Article III standing to pursue its antitrust claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); Mot. at 18-20.[14]

Plaintiff argues that the "groundbreaking" and "revolutionary" nature of its patents is demonstrated by "numerous admissions" purportedly made by NVIDIA and Microsoft about the "substantial value" of Plaintiff's patents. Opp'n at 33-34. Yet all these supposed "admissions" are just statements about Defendants' ***own*** products, not Plaintiff's patents. *See, e.g.,* FAC ¶¶ 251-54. Plaintiff's attempt to lay blame on Defendants for its lack of participation in what it calls a "multitrillion dollar industry" (Opp'n at 33) rings hollow when the facts Plaintiff pled show an across-the-board lack of interest in its patents for nearly a decade, followed by a transparent attempt to manufacture litigation. Plaintiff's alleged losses are speculative, conjectural, and unrecoverable.

**CONCLUSION**

For all the reasons set forth above and in Defendants' Motion, Plaintiff's antitrust claims should be dismissed. Further, because Plaintiff has offered no evidence that it could cure its pleading defects through amendment, the dismissal should be with prejudice. *See Abraham v. C/C PHH Mortg. Servs.*, 2020 WL 826640, at *3 (S.D. Tex. Jan. 29, 2020) ("Where a plaintiff presents no facts in response to a motion to dismiss that plausibly state a claim for relief, it is reasonable to conclude that plaintiff has put forth its best case and amendment would be futile.").

---

[14] Because Plaintiff cannot establish Article III standing, it also fails to adequately plead antitrust injury, which applies an even higher standard than Article III. *See Brunswick Corp. v. Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Norris v. Hearst Tr.*, 500 F.3d 454, 465 (5th Cir. 2007).

Dated: January 14, 2025

| | |
|---|---|
| */s/ Thomas M. Melsheimer* | */s/ Deron R. Dacus* |

Thomas M. Melsheimer (SBN: 13922550)
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, Texas 75201
Tel.: (214) 453-6500
tmelsheimer@winston.com

Kelly C. Hunsaker (CA Bar No. 168307)
Matthew R. McCullough (*pro hac vice*)
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, California 94065
Tel.: (650) 858-6500
khunsaker@winston.com
mrmccullough@winston.com

Jeffrey L. Kessler (*pro hac vice*)
Aldo A. Badini (*pro hac vice*)
Susannah P. Torpey (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Tel.: (212) 294-6700
jkessler@winston.com
abadini@winston.com
storpey@winston.com

Scott M. Border (*pro hac vice*)
**WINSTON & STRAWN LLP**
1901 L Street, N.W.
Washington, D.C. 20036
Tel.: (202) 282-5000
sborder@winston.com

Bruce A. Koehler
Andres E. Almanzan
**MOUNCE, GREEN, MYERS, SAFI,
PAXSON & GALATZAN, P.C.**
P.O. Box 1977
El Paso, Texas 79950
Tel.: (915) 532-2000
koehler@mgmsg.com
almanzan@mgmsg.com

***Counsel for Defendant Microsoft Corporation***

Deron R. Dacus (SBN: 00790553)
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Tel.: (903) 705-1117
ddacus@dacusfirm.com

Garrard R. Beeney (*pro hac vice*)
Steven L. Holley (*pro hac vice*)
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York 10004
Tel.: (212) 558-4000
beeneyg@sullcrom.com
holleys@sullcrom.com

Adam S. Paris (*pro hac vice*)
Caroline M.L. Black (*pro hac vice*)
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Tel.: (310) 712-6600
parisa@sullcrom.com
blackcar@sullcrom.com

***Counsel for Defendant RPX Corporation***

## CERTIFICATE OF SERVICE

I certify that, on January 14, 2025, the foregoing was electronically filed with the Clerk of Court using CM/ECF, and served via CM/ECF upon all counsel of record who are deemed to have consented to electronic service per Local Rule CV-5(b)(1).

/s/ Thomas M. Melsheimer
Thomas M. Melsheimer
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, Texas 75201
Tel.: (214) 453-6500
tmelsheimer@winston.com