REDACTED VERSION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **XOCKETS, INC.**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**NVIDIA CORPORATION, MICROSOFT CORPORATION, and RPX CORPORATION**<br><br>    **Defendants.** | **CASE NO. 6:24-cv-00453-LS**<br><br>**JURY TRIAL DEMANDED** |

## NVIDIA CORPORATION'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................... 2

    A.      Xockets' Complaint and the Accused Products ............................................... 2

    B.      The Xockets-Related Evidence Is Centered in the NDCA .............................. 2

    C.      The NVIDIA-Related Evidence Also Is Centered in the NDCA ..................... 5

        1.      NVIDIA is headquartered and centered in the NDCA. .................... 5

        2.      The accused NVLink and NVSwitch technologies were developed in the NDCA and Massachusetts. .................................................... 6

        3.      The accused BlueField DPU and ConnectX technologies were developed in the NDCA and Israel. ................................................ 7

        4.      Other NVIDIA witnesses are located in the NDCA and Utah. .................. 8

    D.      RPX Also Is Centered in the NDCA ............................................................... 8

    E.      No Relevant Microsoft Employees Are Located in the WDTX ....................... 9

    F.      Other Third Parties with Relevant Knowledge Are Located in the NDCA............ 9

III.    LEGAL STANDARDS .......................................................................................... 10

IV.     NDCA IS THE CLEARLY MORE CONVENIENT VENUE FOR THIS CASE............ 11

    A.      This Case Could Have Been Brought in the NDCA ...................................... 11

    B.      The Private Interest Factors Strongly Favor Transfer to the NDCA .................... 11

        1.      The NDCA is more convenient and less costly for willing witnesses. ...................................................................................... 11

        2.      Key trial witnesses are subject to compulsory process in the NDCA but not in the WDTX. ....................................................... 16

        3.      Key sources of proof are in the NDCA, not Texas. ...................... 16

        4.      The last private interest factor either slightly favors transfer or is neutral. ...................................................................................... 18

    C.      The Public Interest Factors Also Favor Transfer to the NDCA ......................... 18

        1.      The local interest factor strongly favors transfer to the NDCA. ................ 18

        2.      There are no administrative difficulties stemming from court congestion that weigh against transfer to the NDCA............................... 20

        3.      Familiarity with the governing law and conflicts of law are neutral. ........ 20

V.      CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*In re Acer Am. Corp*,
    626 F.3d 1252 (Fed. Cir. 2010)............................................................13

*In re Adobe*,
    823 F. App'x 929 (Fed. Cir. 2020) ................................................11, 20

*Aguilar-Ayala v. Ruiz*,
    973 F.2d 411 (5th Cir. 1992) ...............................................................16

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020)................................................... *passim*

*In re Apple Inc.*,
    No. 2021-181, 2021 WL 5291804 (Fed. Cir. 2021) .............................19

*BiTMICRO LLC v. Intel Corp*.,
    22-cv-00335-ADA, 2023 WL 3855091 (W.D. Tex. June 6, 2023).........15

*DataQuill, Ltd. v. Apple Inc.*,
    No. 13-ca-706-SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014).........19

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)......................................................11, 16

*In re Google LLC*,
    58 F. 4th 1379 (Fed. Cir. 2023) .............................................15, 18, 20

*In re Google LLC*,
    No. 2021-170, 2021 WL 4427899 (Fed. Cir. 2021) ........................12, 13

*In re Hoffman-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009).......................................................11, 16, 19

*In re HP*,
    826 Fed. App'x 899 (Fed. Cir. 2020).....................................................14

*In re Juniper Networks*,
    14 F. 4th 1313 (Fed. Cir. 2021) .......................................................16, 20

*Koss Corp v. Plantronics, Inc.*,
    No. 6:20-cv-00663-ADA, 2021 WL 2075685 (W.D. Tex. May 20, 2021) ............................17

*Moskowitz Family LLC v. Global Medical, Inc.*,
    C.A. 19-cv-00672-ADA, 2020 WL 4577710 (W.D. Tex. July 2, 2020) ................................15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re NetScout Sys., Inc.*,
    No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021)...................................13

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009).........................................................................10, 11

*In re Nintendo of America, Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014).................................................................................12

*Peak Completion Techs., Inc. v. I-TEC Well Solutions, LLC*,
    No. A-13-cv-086-LY, 2013 WL 12121002 (W.D. Tex. June 26, 2013) .................................15

*Safecast Ltd. v. Google LLC*,
    22-cv-00678-ADA, 2023 WL 4277349 (W.D. Tex. June 28, 2023) ......................................15

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) .....................................................................12, 13, 14

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008).................................................................................20

*Uniloc USA, Inc. v. Apple Inc.*,
    No. A-18-CY-990-LY, 2019 WL 2066121 (W.D. Tex. Apr. 8, 2019)....................................15

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ..................................................................10, 11, 18

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .............................................................2, 10, 11, 13

*Xiros, Ltd. v. Depuy Synthes Sales, Inc.*,
    No. 6:21-cv-00681-ADA, 2022 WL 3592448 (W.D. Tex. Aug. 22, 2022) ...........................14

*XY, LLC v. Trans Ova Genetics, LC*,
    No. W-16-CA-00447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ..............................17

**Statutes**

28 U.S.C. § 1400(b) ...........................................................................................11

28 U.S.C. § 1404(a) ...........................................................................1, 2, 10, 11

iii

## I.      INTRODUCTION

Defendant NVIDIA Corporation respectfully moves to transfer this case from the Western District of Texas ("WDTX") to the Northern District of California ("NDCA").  The WDTX has no meaningful ties to the parties or evidence, whereas the NDCA is the most convenient forum under 28 U.S.C § 1404(a) and controlling Fifth and Federal Circuit precedent.  Defendants Microsoft Corporation and RPX Corporation support this motion.

Plaintiff Xockets, Inc. and its witnesses are deeply rooted in the NDCA.  Xockets was founded in the NDCA in 2012, developed its patented technology in the NDCA, and was based in the NDCA until shortly before filing this action.  Xockets' recent Rule 26(a)(1) disclosures identify only three Xockets-affiliated witnesses and two of them live in the NDCA while the third lives in Pennsylvania.  Many other Xockets-related witnesses also are subject to subpoena in the NDCA but not in Texas, including named inventors of Xockets' patents, former Xockets employees, advisors and board members, Xockets' former product development partner, and Xockets' patent prosecution attorney.  In contrast, California-centric Xockets had no meaningful ties to the WDTX prior to planting its corporate flag here in the WDTX shortly before filing suit.

NVIDIA—whose accused products are the crux of this case—is headquartered in the NDCA and the accused NVIDIA technology was developed primarily in the NDCA, Israel, and Massachusetts by engineers residing there.  Third-party witnesses who have knowledge about patent invalidating prior art also are located in the NDCA.

Microsoft—who is being sued because it buys and uses certain accused NVIDIA products and therefore has moved to stay Xockets' patent infringement claims against it under the customer-suit doctrine—is headquartered in the State of Washington. Dkt. 139.  RPX—which Xockets casts as the ringleader of a non-existent antitrust conspiracy with NVIDIA and Microsoft—is

headquartered in the NDCA and does not have an established place of business in Texas.

Because the NDCA is clearly a more convenient forum, the case should be transferred to the NDCA "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C § 1404(a); *In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*") (transfer should be granted when "the transferee venue is clearly more convenient").

## II.    FACTUAL BACKGROUND

### A.    Xockets' Complaint and the Accused Products

Xockets filed this action on September 5, 2024, alleging Defendants violate federal antitrust laws. Dkt. 1.  Hours later, Xockets filed an amended complaint alleging patent infringement by NVIDIA and Microsoft.  Dkt. 7.  Having determined that the amended complaint alleged patent infringement, Judge Albright ordered the case to be reassigned.  Dkt. 61.

Xockets alleges the asserted patents are infringed by NVIDIA products utilizing (1) NVIDIA's BlueField DPU and ConnectX (ConnectX-5 and later) technologies and (2) NVIDIA's NVLink 3.0 and later and NVSwitch technologies (collectively, "Accused Products").  Dkt. 7, ¶¶ 188, 209.  Xockets alleges Microsoft infringes the asserted patents by using the Accused Products in Microsoft products.  *Id.*, ¶ 244.  Xockets' purported antitrust claims against Defendants hinge on the Accused Products' alleged infringement of Xockets' patents.  *Id.*, ¶¶ 1, 3-5, 7-8.

### B.    The Xockets-Related Evidence Is Centered in the NDCA

Xockets was founded in 2012 in the NDCA as a Delaware corporation and listed its principal office of the corporation in the NDCA until May 2024.  Decl. of Mark Osborn ISO Mot. to Transfer ("Osborn Decl."), ¶¶ 2-3, 32, 34, Exs. 1-2, 31, 33.  Xockets filed the patent applications related to its seven asserted patents between its 2012 founding and 2018 while located in the NDCA.  Dkt. 7, First Am. Compl., ¶¶ 88-89, 101-102, 113-114, 126-127, 138-139, 148-149, 159-160; Osborn Decl., ¶¶ 4-10, 32, 34, Exs. 3-9 (identifying Xockets as located in San Jose, CA), 31,

33.  The Xockets named inventors who allegedly developed the claimed technology live in the NDCA. *Id*., ¶¶ 4-10, 16-17, 32, 34, Exs. 3-9 (first page of each asserted patent showing the named inventors residing in the NDCA in Milpitas and Santa Cruz), 15-16, 31, 33.  Indeed, one picture Xockets reproduces in its complaint to illustrate the development of the claimed technology includes California legal notices on the wall behind the Xockets engineers.  Dkt. 7, ¶ 177; Osborn Decl., ¶ 11, Ex. 10 (close-up of notices).  And a 2017 Xockets slide presentation attached as an exhibit to the complaint states Xockets is "Based in San Jose, CA."  Dkt. 7, ¶ 257, Ex. 8 at slide 9.

Xockets was incorporated as a Delaware corporation from its inception in 2012 until just days before it filed this action, when it converted itself to a Texas corporation on August 30, 2024.  Osborn Decl., ¶13, Ex. 12.  Xockets did not register itself in Texas as a "foreign" Delaware corporation until May 2024, and even then only listed an address for a registered agent for service of process as its address in Texas.  *Id.*, ¶ 14, Ex. 13.  In short, Xockets has no apparent history in Texas other than the presence it created for purposes of filing this lawsuit.

Notably, Xockets' Rule 26(a)(1) disclosures identify only three Xockets-affiliated witnesses—Parin Dalal, Stephen Paul Belair, and Charles Fish—as persons with discoverable information.  Osborn Decl., ¶ 15, Ex. 14.  Dr. Dalal and Mr. Belair, the named inventors on the asserted patents, are in the NDCA (Palo Alto and Santa Cruz, respectively), while Mr. Fish, who works for Tech+IP Advisory, LLC, is in Pennsylvania.  *Id*., ¶¶ 16-18, 32, 34, Exs. 15-17, 31, 33.

NVIDIA also identified the following relevant former Xockets' employees, consultants and representatives, all of whom still reside in the NDCA and are therefore subject to subpoena there and not in the WDTX:

| Name and location in NDCA | Expected Relevant Knowledge |
| --- | --- |
| Dan Alvarez | Mr. Alvarez is Xockets' former Vice President of Engineering.  Osborn Decl. |

| | |
|---|---|
| Oakland, CA | ¶ 19, Ex. 18 (identifying location as Oakland, California); ¶¶ 32, 34, Exs. 31, 33. Mr. Alvarez is cited in Xockets' complaint (Dkt. 7, ¶ 257) and should have knowledge of the Xockets technology development alleged in the complaint and its failure to successfully commercialize that technology. *Id.*, ¶¶ 175-182. Mr. Alvarez also is listed as a named inventor on Xockets' provisional patent application 61/976,471, to which asserted U.S. Patent No. 11,082,350 claims priority, yet Mr. Alvarez is not a named inventor on the '350 patent, suggesting that the '350 patent may be invalid for failing to name all inventors. *Id.*, ¶ 114; Osborn Decl. ¶ 12, Ex. 11 at 1, 38. Xockets asked NVIDIA to produce documents referring to Mr. Alvarez in several requests for production.[1] *Id.*, ¶ 20, Ex. 19 (RFP Nos. 1, 27). |
| Brad Sako<br><br>San Jose, CA | Mr. Sako is the attorney who prosecuted Xockets' asserted patents and should have knowledge of the prosecution history of the patents, the conception of the claimed inventions, and prior art. *Id.*, ¶ 21, Ex. 20 (identifying San Jose, California as his location); ¶¶ 32, 34, Exs. 31, 33; ¶ 12, Ex. 11 at 1, 38. |
| Tom Kelly<br><br>San Francisco Bay area | Mr. Kelly is Xockets' former Head of Sales and is expected to have knowledge regarding the lack of successful commercialization of Xockets' technology. *Id.*, ¶ 22, Ex. 21 (identifying location in San Francisco Bay area); ¶¶ 32, 34, Exs. 31, 33. Xockets asked NVIDIA to produce documents referring to Mr. Kelly in several requests for production. *Id.*, ¶ 20, Ex. 19 (RFP Nos. 1, 27). |
| Ron Melanson<br><br>Redwood City, CA | Mr. Melanson ███████████████████████████████████████████████████████████████████████████████████████████████████ *Id.*, ¶ 23, Ex. 22 (identifying location as Redwood City, CA); ¶¶ 32, 34, 68, Exs. 31, 33, 67. Xockets asked NVIDIA to produce documents referring to Mr. Melanson in several requests for production. *Id*, ¶ 20, Ex. 19 (RFP Nos. 1, 27). |
| John Blair<br><br>San Francisco, CA | Mr. Blair was Xockets' Vice President of Business Development from 2014-2016 and is expected to have knowledge regarding the lack of successful commercialization of Xockets' technology. *Id.*, ¶ 24, Ex. 23 (identifying location as San Francisco, CA); ¶¶ 32, 34, Exs. 31, 33. Xockets also asked NVIDIA to produce documents referring to Mr. Blair in several requests for production. *Id.*, ¶ 20, Ex. 19 (RFP Nos. 1, 27). |
| Alun Evans<br><br>San Francisco Bay area | Mr. Alun is a former Principal Engineer, R&D for Xockets and is expected to have knowledge of the design, and development of Xockets technology and its failure to successfully commercialize the technology. *Id.*, ¶ 25, Ex. 24 (identifying location in San Francisco Bay area); ¶¶ 32, 34, Exs. 31, 33. |

---

[1] The parties disagree as to when fact discovery should open. Dkts. 133, 135, 136, 144. Xockets served discovery requests to defendants on December 11, 2024, even though the parties' dispute regarding the opening of fact discovery is still pending before the Court. Osborn Decl., ¶ 20, Ex. 19. Six of the seven Xockets-employees or advisors identified in Xockets' Requests for Production Nos. 1 and 27 are located in the NDCA. *Id.* ¶¶16-17, 19, 22-24, 34, Exs. 15 (Parin Dalal), 16 (Stephen Belair), 18 (Dan Alvarez), 21 (Tom Kelly), 22 (Ron Melanson), 23 (John Blair), 33. The remaining person, Greg Lavender, is in the Seattle, Washington area. *Id.*, ¶ 69, Ex. 68; ¶ 27, Ex. 26.

| Ashmeet Sidana<br><br>Palo Alto, CA | Mr. Sidana is a former Director of Xockets and is expected to have knowledge of Xockets' technology and business efforts, including its unsuccessful attempts to commercialize its technology. *Id.*, ¶¶ 26-28, 32, 34, Exs. 25 (identifying location in Palo Alto, CA), 26-27, 31, 33. |
|---|---|
| Ravi Belani<br><br><br>Los Altos, CA | ██████████████████████████████████████████ He is expected to have knowledge regarding Xockets' founding and its initial characterizations of technology, including Xockets' failed business efforts. *Id.*, ¶ 29, Ex. 28 (location in Los Altos, CA); ¶¶ 32, 34, 70, Exs. 31, 33, 69 (identifying Xockets as part of Mr. Belani's Alchemist program). |
| Bhadrik Dalal<br><br><br><br>Milpitas, CA | ████████████████████████████████████████████<br>████████████████████████████████████████████<br>████████████████████████████████████ and Mr. Dalal is the CEO of Catenary. *Id.*, ¶¶ 30-31, Exs. 29, 30 (identifying location in Milpitas, CA). This evidence raises questions regarding standing and whether others have ownership claims to the asserted patents. NVIDIA intends to seek documents and testimony from both Bhadrik Dalal and Catenary Corporation (also located in the NDCA). *Id.* |

In addition to the forgoing individuals, Xockets alleges that it developed a DPU product in 2015 called "StreamSwitch" that embodied its "patented DPU architecture" (Dkt. 7, ¶ 20) and that Xockets "enter[ed] into an exclusive license with SMART Modular for the manufacture of its StreamSwitch of DPUs." Osborn Decl. ¶ 33, Ex. 32; ¶ 27, Ex. 26; Dkt. 7, ¶ 20 (photo identifying Smart Modular Technologies). Smart Modular Technologies is headquartered in Newark, California, in the NDCA. Osborn Decl. ¶¶ 32, 34-35, Exs. 31, 33-34.

## C. The NVIDIA-Related Evidence Also Is Centered in the NDCA

### 1. NVIDIA is headquartered and centered in the NDCA.

NVIDIA was founded and has been headquartered in the NDCA since 1993. Decl. of Brandon Heiman ISO Mot. to Transfer ("Heiman Decl."), ¶ 3; Osborn Decl., ¶¶ 32, 34, Ex. 31, 33. NVIDIA employs approximately ████████ in and around its Santa Clara headquarters, which comprises about 3 million square feet of building space. Heiman Decl., ¶¶ 3, 10. Employees working in NVIDIA's headquarters perform research and development, engineering, and marketing and sales relating to the Accused Products. Decl. of Kevin Deierling ISO Mot. to

Transfer, ("Deierling Decl."), ¶ 8.

> ### 2.    The accused NVLink and NVSwitch technologies were developed in the NDCA and Massachusetts.

The initial releases of NVLink and NVSwitch through version NVLink 4.0 (released in 2022) were designed and developed primarily by NVIDIA employees located in Santa Clara and Massachusetts, where relevant documents related to those technologies were primarily created and are accessible by those employees.  Decl. of Robert Huang ISO Mot. To Transfer ("Huang Decl."), ¶¶ 4, 6, 9.  NVIDIA employees knowledgeable about the design, development, productization and marketing of the relevant NVLink and NVSwitch functionality through NVLink 4.0 are located in the NDCA (Robert Huang, Eric Tyson, Steve Glaser, Pradyumna Desale) and in Westford, Massachusetts (a team including Mark Hummel and Jonathan Owen).  Huang Decl., ¶¶ 4, 6, 8.  Development of NVLink 5.0 and NVSwitch 4 is being performed by NVIDIA employees ███ ████████████████████████████████████████████████.  *Id.*, ¶ 7.

Based on LinkedIn searches, Xockets may point to Marvin Degnan as an NVIDIA employee with knowledge regarding NVLink.  Mr. Degnan, who works from home in Waco, Texas, is part of Robert Huang's team, and Mr. Degnan's knowledge overlaps the knowledge of Mr. Degnan's teammate in Santa Clara (Eric Tyson).  Huang Decl., ¶¶ 4-5.  Mr. Huang also has team members who perform NVLink verification work in Austin.  *Id.*, ¶ 8.  These verification engineers do not define or write the specification for NVLink, but instead validate parts of the implementation to ensure consistency with what the specification already requires.  *Id.*  Based on NVIDIA's understanding of Xockets' allegations, neither Mr. Degnan nor the verification employees are likely trial witnesses because the people with the most complete knowledge about the design and functionality of the Accused Products are those who define the specification (*e.g.*, teams that include Eric Tyson in the NDCA, Jonathan Owen and Mark Hummel in Massachusetts,

and Michael Kagan in Israel).  *Id*., ¶¶ 4, 7-8.

>### 3.    The accused BlueField DPU and ConnectX technologies were developed in the NDCA and Israel.

The initial releases of BlueField DPUs and ConnectX were developed in Israel by Mellanox Technologies, Ltd. ("Mellanox"), a company NVIDIA acquired in April 2020. Deierling Decl., ¶¶ 3, 5; Declaration of Yuval Degani ISO Mot. to Transfer ("Degani Decl."), ¶ 5. Mellanox's U.S. subsidiary, Mellanox Technologies, Inc., was responsible for United States sales of ConnectX and BlueField until the acquisition and was located in Sunnyvale, California (in the NDCA).  Deierling Decl., ¶ 3; Osborn Decl., ¶¶ 32, 34, Exs. 31, 33.  Since NVIDIA acquired Mellanox in 2020, NVIDIA has developed and released newer versions of BlueField and ConnectX in Santa Clara and Israel.  Deierling Decl., ¶¶ 9-11.  NVIDIA employees knowledgeable about the research, design, development and marketing of the relevant functionality of the ConnectX and BlueField products are located in the NDCA (Kevin Deierling, Brian Sparks, Barak Gafni, Yuval Degani, Gady Rosenfeld), in Nevada (Yiftah Shahar), and in Israel (Michael Kagan, Benny Koren, Lion Levi, Michael Dubman, and Gilad Shainer).  Deierling Decl., ¶¶ 2-3, 6-15; Degani Decl., ¶¶ 2-3, 5-7, 9; Heiman Decl., ¶ 11.  Marc Hamilton in Santa Clara is also knowledgeable about system solutions that include ConnectX, BlueField, NVLink and NVSwitch. Deierling Decl., ¶ 15.  Documents related to the design, development and marketing of BlueField DPUs and ConnectX products were created in and are accessible in Santa Clara and Israel.  *Id*., ¶¶ 7, 10-11; Degani Decl., ¶ 6.  Certain documents related to budgeting and forecasts are restricted to individuals with responsibility for the information, and those individuals are located primarily in Santa Clara and Israel.  Deierling Decl., ¶ 12.

NVIDIA maintains an office in Austin, Texas.  Heiman Decl., ¶ 12.  However, the work done there relating to NVLink, NVSwitch, ConnectX and BlueField is related primarily to

software verification, implementation and sales.  Huang Decl., ¶ 8; Deierling Decl., ¶ 11; Degani Decl., ¶¶ 6-8.  Those employees are not likely trial witnesses because the individuals with the most complete knowledge about the design, development and sales of, and financial information regarding, the accused technology are located in the NDCA, Israel, Massachusetts and Nevada.  Huang Decl., ¶ 8; Deierling Decl., ¶¶ 11, 6, 13-15; Degani Decl., ¶ 6-7; Heiman Decl., ¶¶ 6-8.

### 4. Other NVIDIA witnesses are located in the NDCA and Utah.

The NVIDIA witness who likely will testify about NVIDIA's shipping, revenue and accounting information for the Accused Products is Brandon Heiman, who is located in Santa Clara.  Heiman Decl., ¶¶ 2, 6-9.  Furthermore, an NVIDIA witness knowledgeable regarding Xockets' antitrust allegations is Ben Damstedt, Vice President in the Legal Department at NVIDIA, who previously submitted a declaration in opposition to Xockets' preliminary injunction motion on its antitrust claims.  Mr. Damstedt resides in Utah.  Dkt. 92 (Decl. of Ben Damstedt ("Damstedt Decl."), ¶¶ 2-9.[2]

### D. RPX Also Is Centered in the NDCA

RPX is not accused of patent infringement.  Xockets' only claim against RPX is a purported violation of federal antitrust laws, which RPX has moved to dismiss.  Dkt. 128.  Dan McCurdy (the CEO of RPX) and Ryan Hanneken (RPX's Vice President of Acquisitions)—both of whom are cited in Xockets' complaint and submitted declarations on behalf of RPX in response to Xockets' preliminary injunction motion—reside in Connecticut and the NDCA, respectively.  Dkt. 7, ¶¶ 283-284; Declaration of Ryan Hanneken ISO Mot. to Transfer ("Hanneken Decl."), ¶¶ 5-6.

---

[2] Xockets' complaint identified certain NVIDIA employees (Brad Genereaux, Vishal Bhagwati, Timothy Teter, Rich Domingo and David Shannon) who allegedly were parties to communications with Xockets or its representative Tech+IP.  Dkt. 7, ¶¶ 241, 281.  Mr. Shannon is deceased and the others are located in the NDCA.  Deierling Decl., ¶ 16; Dkt. No. 92 (Damstedt Decl.), ¶ 8; Osborn Decl., ¶ 34, Ex. 33.

RPX is headquartered in San Francisco, California (in the NDCA) and does not have a regular and established place of business in Texas.  Hanneken Decl. ¶¶ 2-4.

### E.    No Relevant Microsoft Employees Are Located in the WDTX

Xockets' complaint alleges Microsoft infringes the asserted patents because it uses the NVIDIA Accused Products.  Dkt. 7, ¶¶ 83, 244.  Microsoft is headquartered in Redmond, Washington, and has established places of business in San Francisco, Palo Alto, and Mountain View, all located in the NDCA.  Decl. of Kayleigh Klinzman ("Klinzman Decl."), ¶ 3.  The Microsoft individuals identified by Xockets in the complaint as allegedly relevant to the antitrust claims do not reside in Texas.  Instead, four reside in the state of Washington and one (Christopher Young) resides in the NDCA.  Klinzman Decl., ¶ 4.  Michael Wetter (Dkt. 95, Ex. A) and Nicholas Kim (Dkt. 95, Ex. B), who are identified by Xockets in the complaint and submitted declarations on behalf of Microsoft in response to Xockets' preliminary injunction motion, are located in Washington.  Klinzman Decl., ¶ 4.  Microsoft has moved to stay the patent claims against it under the customer-suit exception because NVIDIA is the primary source of witnesses and evidence related to the accused NVIDIA products and is in the best position to defend its products against Xockets' patent claims.  Dkt. 139, 140.  Microsoft has agreed to be bound by the resolution of the issues of non-infringement and invalidity in the patent case against NVIDIA as to the accused NVIDIA products.  *Id.*

### F.    Other Third Parties with Relevant Knowledge Are Located in the NDCA

NVIDIA has identified the following invalidating prior art and associated companies and witnesses who reside in the NDCA:

| Prior Art | Inventor/Developer | Location in NDCA |
|-----------|--------------------|------------------|
| Named inventors on U.S. Patent No. 8,305,896, assigned to Cisco Technology, Inc. | Kenneth Durazzo | Morgan Hill, CA |
| | Cisco Technology | San Jose, CA |

| Named inventors of U.S. Patent No. 8,868,790, developed and filed at Fabric7 in Mountain View, CA and currently assigned to Oracle International Corporation | Cosmos Nicolaou Shreyas B. Shah Mangesh Shingane Fabric7 | San Francisco Bay Area, CA San Jose, CA Formerly in Mountain View, CA |

Osborn Decl., ¶¶ 32, 34, 36-42, Exs. 31, 33, 35-41.

## III.    LEGAL STANDARDS

The first step in the transfer analysis under 28 U.S.C § 1404(a) is whether the claims "might have been brought" in the proposed transferee district. *Volkswagen II*, 545 F.3d at 312-13.  The second step is the movant showing "good cause" for the transfer by demonstrating that the "transferee venue is clearly more convenient" than the transferor district.  *Id*. at 315.

In evaluating convenience, the district court weighs factors reflecting private and public interests.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id*.  The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law."  *Id*.  The plaintiff's choice of venue is not a factor in the transfer analysis.  *Volkswagen II*, 545 F.3d at 314-15; *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009).

Applying Fifth Circuit law, the Federal Circuit has stated that "[t]his court has held and holds again in this instance in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court

should grant a motion to transfer." *Nintendo*, 589 F.3d at 1198 (applying the *Volkswagen II* standard and citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009), and *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *In re Adobe*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020) (same, citing *Nintendo*).

## IV.     NDCA IS THE CLEARLY MORE CONVENIENT VENUE FOR THIS CASE

### A.     This Case Could Have Been Brought in the NDCA

A patent infringement action may be brought in "the judicial district where the defendant resides." 28 U.S.C. § 1400(b). Because both NVIDIA and RPX are headquartered in the NDCA (Heiman Decl., ¶ 3 and RPX Decl., ¶ 2), and because Microsoft has established places of business in San Francisco and Mountain View, California in the NDCA (Klinzman Decl., ¶ 3), venue would be proper in the NDCA.

### B.     The Private Interest Factors Strongly Favor Transfer to the NDCA

#### 1.     The NDCA is more convenient and less costly for willing witnesses.

An important factor in the transfer analysis is the convenience and cost to willing witnesses. *In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020); *Genentech*, 566 F.3d at 1343. To assess this factor, the Fifth Circuit applies the "100-mile rule": "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. The 100-mile rule applies here because the NDCA is approximately 1,700 miles from Waco, Texas. Osborn Decl., ¶ 41, Ex. 40. Neither NVIDIA nor Xockets have identified any likely party-affiliated trial witnesses in the WDTX and the majority of the likely party-affiliated trial witnesses are in the NDCA. Specifically:

<u>NVIDIA</u>:  Eleven likely NVIDIA employee witnesses are located near NVIDIA's Santa Clara headquarters within a short drive of the NDCA courthouses, with an additional NVIDIA

witness in Nevada, one in Utah, two in Massachusetts and five in Israel. Huang Decl., ¶¶ 4, 6-8; Deierling Decl., ¶¶ 6, 8, 11-15; Heiman Decl., ¶¶ 2, 6-8, 11; Degani Decl., ¶¶ 3, 5-7, 9; Damstedt Decl., ¶¶ 2-9; Osborn Decl., ¶¶ 32, 34, Ex. 31, 33.

Xockets:   If the three Xockets witnesses who it identified in its initial disclosures are "willing" witnesses, two of the three are located in the NDCA and the third is in Pennsylvania. Osborn Decl., ¶¶ 16-18, Exs. 15-17, ¶¶ 32, 34, Exs. 31, 33.

RPX:   RPX's likely witnesses, Ryan Hanneken (Vice President of Acquisitions at RPX) and Dan McCurdy (CEO of RPX), reside in the NDCA and Connecticut, respectively.

Microsoft:   As Microsoft explained in its pending stay motion (Dkt. 139), Xockets' Complaint alleges patent infringement against Microsoft based on NVIDIA's technology.  *Id.* at 1-2, 6.  Accordingly, it is the NVIDIA witnesses—not the Microsoft witnesses—who should be considered under the transfer factors regarding Xockets' patent claims.  *In re Nintendo of America, Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014) (granting mandamus, ordering sever-and-stay of customer claims, and ordering transfer based on location of *supplier's* witness).  Regarding Xockets' antitrust claims, the Microsoft likely witnesses include Michael Wetter and Nicholas Kim, who are in Redmond, Washington.  Dkt. 95, Ex. A (Wetter); Dkt. 95, Ex. B (Kim).

The fact that the majority of the likely willing witnesses are located in the NDCA and that the remaining willing witnesses (in Massachusetts, Utah, Pennsylvania, Washington, Nevada and Israel) are located far from the WDTX strongly favors transfer.  *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. 2021) ("Our cases have emphasized that when there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer."); *In re TikTok, Inc.*, 85 F.4th 352, 362 (5th Cir. 2023) (finding that the NDCA was the "clearly more convenient" venue

when the "bulk of relevant witnesses" resided outside of Texas in China).

If trial takes place in the WDTX, the majority of NVIDIA's, Xockets', RPX's and Microsoft's willing witnesses would have to travel over 1,700 miles and spend days away from home and work. Osborn Decl., ¶ 43, Ex. 42. This significant travel burden favors transfer. *In re TikTok*, 85 F.4th at 362 n.8 (applying Fifth Circuit law to hold that this factor clearly favored transfer when some key witnesses were from Japan and "would each have to travel an additional 1,756 miles or 7 hours by plane to Texas as compared with Washington State" and stating that "it is more convenient for witnesses to testify at home[,] and additional distance means additional travel time … meal and lodging expenses and time witnesses must be away from their regular employment") (internal quotations omitted); *In re Google LLC*, 2021 WL 4427899, at *4-*5 (holding that the willing witnesses factor strongly favored transfer, where total travel time for out-of-district witnesses was comparable because "[t]here is no major airport in the Waco Division of the Western District of Texas, and the Waco courthouse is more than 100 miles from the nearest airport"); *Volkswagen II*, 545 F.3d at 317 ("Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family and community."); *In re Acer Am. Corp*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (requiring party employees to travel for trial likely would result in significant expenses including lost productivity in time spent away from work); *In re NetScout Sys., Inc*., No. 2021-173, 2021 WL 4771756, at *3 (Fed. Cir. Oct. 13, 2021) (the convenience of the witnesses is best served if the court can minimize the time when witnesses are removed from their regular work or home responsibilities).

When willing witnesses in a third venue are taken into account (such as the willing witnesses from Israel, Massachusetts, Utah, Nevada, Washington and Pennsylvania), the location of those witnesses still favors transfer under the Fifth Circuit's 100-mile rule. *In re TikTok*, 85

REDACTED VERSION

F.4th at 361-62 (determining that the willing witnesses factor favors transfer because "most relevant witnesses are in China or California"); *Xiros, Ltd. v. Depuy Synthes Sales, Inc.*, No. 6:21-cv-00681-ADA, 2022 WL 3592448, at *5 (W.D. Tex. Aug. 22, 2022) (finding this factor favors transfer, where "the majority of witnesses outside of each of the forums (whether internationally, or in Indiana) reside closer to the [transferee district] than the WDTX . . . . [u]nder the Fifth Circuit's 100-mile rule").  Flight times for willing witnesses outside the NDCA are shorter from every venue except Pennsylvania and Boston, which both offer nonstop flights to NDCA but require connections for Waco.  Collectively, these witnesses will save 8 hours travelling to the NDCA rather than Waco, showing that the NDCA is clearly more convenient.

| Witness Location | Distance to WDTX | Distance to NDCA |
|---|---|---|
| Tel-Aviv, Israel (5 witnesses) | 17 hrs 35 mins (1 stop to Austin, TX) (7147 miles) + 1.5 hour drive to Waco (~110 miles). Osborn Decl., ¶¶ 44-45, Exs. 43-44. | 17 hrs (1 stop to San Francisco International Airport) (7533 miles). *Id.*, ¶¶ 46-47, Exs. 45-46. |
| Boston, Massachusetts (2 witnesses) | 5 hr 39 min (1 stop to Waco (ACT)) (1651 miles). *Id.*, ¶¶ 48-49, Exs. 47-48. | 6 hrs 26 mins (nonstop) (2704 miles). *Id.*, ¶¶ 50-51, Exs. 49-50. |
| Salt Lake City, Utah (1 witness) | 4 hrs 20 mins (1 stop) (1078 miles). *Id.*, ¶¶ 50-51, Exs. 51-52. | 2 hrs 8 mins (nonstop) (599 miles). *Id.*, ¶¶ 54-55, Exs. 53-54. |
| Las Vegas, Nevada (1 witness) | 4 hrs 11 mins (1 stop) (1144 miles). *Id.*, ¶¶ 56-57, Exs. 55-56. | 1 hr 33 mins (nonstop) (414 miles). *Id.*, ¶¶ 58-59, Exs. 57-58. |
| Redmond, Washington (4 witnesses) | 5 hrs 27 mins (1 stop) (1749 miles). *Id.*, ¶¶ 60-61, Exs. 59-60. | 2 hrs 9 mins (nonstop) (679 miles). *Id.*, ¶¶ 62-63, Exs. 61-62. |
| Philadelphia, Pennsylvania (1 witness) | 4 hrs 59 mins (1 stop) (1392 miles). *Id.*, ¶¶ 64-65, Exs. 63-64. | 5 hrs 58 mins (nonstop) (2521 miles). *Id.*, ¶¶ 66-67, Exs. 65-66. |

*In re HP*, 826 Fed. App'x 899, 902 (Fed. Cir. 2020) (when the defendant identified "several" witnesses residing in the proposed venue (the NDCA) and no witnesses residing in the existing venue (the EDTX), the district court erred in finding that this factor weighed against transfer on the ground that the "majority" of witnesses resided in Taiwan and travelling from there to either venue would be "equally inconvenient"); *Moskowitz Family LLC v. Global Medical, Inc.*, C.A.

REDACTED VERSION

19-cv-00672-ADA, 2020 WL 4577710, at *5 (W.D. Tex. July 2, 2020) ("the court cannot look past the greater number of party witnesses [for both parties] who would face significantly more inconvenience" in the transferor district than the transferee district).

Furthermore, although NVIDIA has a facility in Austin, neither NVIDIA nor Xockets has identified likely trial witnesses in the WDTX and the accused technology was primarily developed in the NDCA, Israel and Massachusetts, and not in the WDTX. Huang Decl., ¶¶ 4-9; Deierling Decl., ¶¶ 5, 9-12; Degani Decl., ¶¶ 5-9; Heiman Decl., ¶¶ 6-8. A defendant's general presence in the existing venue carries no weight in the transfer analysis. *Uniloc USA, Inc. v. Apple Inc.*, No. A-18-CY-990-LY, 2019 WL 2066121 *3 (W.D. Tex. Apr. 8, 2019); *Peak Completion Techs., Inc. v. I-TEC Well Solutions, LLC*, No. A-13-cv-086-LY, 2013 WL 12121002 at *3 (W.D. Tex. June 26, 2013). Moreover, even if there were one or two likely witnesses in the WDTX (which there are not), the presence of those witnesses would not outweigh the overwhelming number of relevant party witnesses in the NDCA. *Safecast Ltd. v. Google LLC,* 22-cv-00678-ADA, 2023 WL 4277349, at *2-3 (W.D. Tex. June 28, 2023) (convenience to willing witnesses favored transfer with five party witnesses in the NDCA and "possibly one" in the WDTX); *BiTMICRO LLC v. Intel Corp.*, 22-cv-00335-ADA, 2023 WL 3855091, at *4 (W.D. Tex. June 6, 2023) (willing witness factor favored transfer even when 13 potential witnesses were identified in WDTX).

The fact that Xockets now allegedly has a place of business in the WDTX—after being firmly rooted in California until shortly before this lawsuit was filed—does not change the analysis because none of the potentially relevant Xockets witnesses Xockets has disclosed resides in Texas. *In re Google LLC*, 58 F. 4th 1379, 1381, 1384 (Fed. Cir. 2023) (granting transfer to the NDCA when plaintiff had incorporated in Texas seven months before filing suit and established an office in Waco just one month before filing suit where no likely witnesses were located in Waco); *In re*

*Juniper Networks*, 14 F. 4th 1313, 1318-20 (Fed. Cir. 2021) (granting transfer where plaintiff established an office in Waco for litigation purposes and identified only one witness in Waco, who was not alleged to have information relating to the merits of the case).

### 2. Key trial witnesses are subject to compulsory process in the NDCA but not in the WDTX.

The ability to compel live trial testimony is crucial for evaluating witness testimony. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992). Transfer is thus favored when the proposed venue has subpoena power over a greater number of third-party witnesses than the existing venue. *Hoffman-La Roche*, 587 F.3d at 1337-38.

Here, neither NVIDIA nor Xockets has identified any likely third-party trial witnesses in Texas. In contrast, NVIDIA identified at least 13 third-party witnesses above who reside in the NDCA, namely Messrs. Belair, Alvarez, Sako, Kelly, Melanson, Blair, Evans, Sidana, Belani, Bhadrik Dalal, Causevic, Durazzo, Nicolaou, Shah and Shingane. §§ II.B, II.F, *supra*. Xockets is seeking discovery as to at least five of those individuals (Stephen Belair, Dan Alvarez, Tom Kelly, Ron Melanson, and John Blair) in its requests for production. Osborn Decl., ¶ 20, Ex. 19; *supra* fn. 1. This factor strongly weighs in favor of transfer. *Genentech*, 566 F.3d at 1345 (compulsory-process factor "weighs in favor of transfer, and not only slightly" where "there is a substantial number of witnesses within the subpoena power of the [NDCA] and no witness who can be compelled to appear in the [EDTX]").

### 3. Key sources of proof are in the NDCA, not Texas.

"This factor relates to the ease of access to non-witness evidence, such as documents and other physical evidence." *Apple*, 979 F.3d at 1339. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id*. at 1340 (citing

REDACTED VERSION

*Genentech*, 566 F.3d at 1345). "In determining the ease of access to sources of proof, the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017).

Here, the research, design and development of the accused NVIDIA technology occurred primarily at NVIDIA's Santa Clara headquarters, in NVIDIA's Massachusetts office, and in Israel. Huang Decl., ¶¶ 4, 6-9; Deierling Decl., ¶¶ 5-11, 13-14; Degani Decl., ¶¶ 3, 5, 6. Key NVIDIA technical, marketing, and financial documents relating to the accused technology were created primarily in the NDCA and are accessible there. Huang Decl., ¶¶ 4, 6-9; Deierling Decl., ¶¶ 5, 7, 9-11; Heiman Decl., ¶¶ 7-9; Degani Decl., ¶¶ 5-7. Further, certain databases concerning the shipping, revenue and financial information for the Accused Products and documents regarding budgeting and product and revenue forecasts are restricted access to only individuals who have responsibility for that information, and those individuals are primarily in Santa Clara and Israel. Deierling Decl., ¶ 12; Heiman Decl., ¶ 9.

Moreover, as discussed above, NVIDIA expects at least ten third-party witnesses in the NDCA have documents relating to invalidating prior art and Xockets' prior failed commercialization efforts, including Messrs. Belair, Alvarez, Sako, Melanson, Kelly, Evans, Sidana, Belani, Durazzo and Nicolaou, Shah and Shingane. This fact also weighs in favor of transfer. *Koss Corp v. Plantronics, Inc.*, No. 6:20-cv-00663-ADA, 2021 WL 2075685, at *3 (W.D. Tex. May 20, 2021) ("[Defendant]'s showing that additional, third-party documents are located in the NDCA further tips the scales in favor of transfer.").

Although Xockets' recent Rule 26(a)(1) disclosures indicate that ███████████ ████████████████████████████████████████████████████ (Osborn Decl., ¶ 15, Ex. 14 at 2-3),

the recent transfer of its documents to the WDTX should be given little relative weight. *Google*, 58 F.4th at 1381, 1385 (granting transfer to the NDCA, finding that this factor favored transfer despite plaintiff's incorporation in the district seven months prior to filing the lawsuit, renting space and storing documents there and conducting some distribution and sales activities in the space, given the other significant sources of proof in the NDCA).

**4.    The last private interest factor either slightly favors transfer or is neutral.**

The final private interest factor, "all other practical problems that make trial of a case easy, expeditious and inexpensive," either slightly favors transfer or is neutral. The practical problems often addressed by courts include whether there is co-pending litigation in the same district regarding the same patents or the same parties as well as the stage of the case. *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020). Here, there is no co-pending litigation. This case also is still in its early stages. Defendants filed a motion to dismiss the antitrust claims of the complaint, and briefing on that motion will not close until January 14, 2025. This factor thus either slightly favors transfer or is neutral.

**C.    The Public Interest Factors Also Favor Transfer to the NDCA**

**1.    The local interest factor strongly favors transfer to the NDCA.**

The local interest factor takes into account the preference to have localized interests decided at home. *Volkswagen I*, 371 F.3d at 206. "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'" *Apple*, 979 F.3d at 1345 (*quoting Acer*, 626 F.3d at 1256). The Federal Circuit has found that this factor clearly favors transfer where "the accused products were designed, developed, and tested in the NDCA; and because the lawsuit 'calls into question the work and reputation of several individuals residing' in

the NDCA." *Id.* (quoting *Hoffmann-La Roche*, 587 F.3d at 1336).

Here, the accused NVIDIA technology was designed primarily in the NDCA, in Massachusetts and in Israel. Huang Decl., ¶¶ 4, 6-9; Deierling Decl., ¶¶ 5-11, 13-14; Degani Decl., ¶¶ 3, 5-7, 9. Moreover, Xockets' complaint accuses NVIDIA employees of both: (1) willfully infringing each of the seven asserted patents, proceeding without "good faith" and being "willfully blind" as to each of the patents, and engaging in conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate" (*see, e.g.*, Dkt. 7, ¶¶ 351-356); and (2) engaging in an antitrust "conspiracy" with Microsoft and RPX to harm Xockets. *See, e.g.*, *id.*, ¶¶ 281, 286-288, 291. Because this suit "calls into question the work and reputation of several individuals residing" in the NDCA—namely NVIDIA engineers who developed the accused technology and NVIDIA management who allegedly conspired against Xockets—the NDCA's interest in this matter is "self-evident." *Hoffman-La Roche,* 587 F.3d at 1336, 1338.

NVIDIA's Austin facility does not change the outcome under this factor. *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *5 (Fed. Cir. 2021) ("We have repeatedly rejected that a party's 'general presence in a particular district' can alone 'give that district a special interest in the case' . . . Because only the Northern District of California has significant connections to the events that gave rise to this suit, the local interest factor weighs strongly in favor of transfer."); *DataQuill, Ltd. v. Apple Inc.*, No. 13-ca-706-SS, 2014 WL 2722201, at *4 (W.D. Tex. June 13, 2014) (local interest favored transfer notwithstanding defendant's Austin presence because the case was about Apple's actions designing and developing products, which occurred in the NDCA).

Xockets' recent move to the WDTX does not change the outcome because both the asserted Xockets patented technology and the accused NVIDIA technology were developed in the NDCA. *In re Google*, 58 F.4th at 1384 (Plaintiff that "established itself in Waco less than one year before

19

it filed this lawsuit"… "has no meaningful presence in the Western District of Texas that should be given significant, let alone, comparable weight to the facts tying the litigation to the California forum, where both the patented and accused technology were developed.").  This factor strongly favors transfer.

### 2.    There are no administrative difficulties stemming from court congestion that weigh against transfer to the NDCA.

"Th[is] factor concerns whether there is an appreciable difference in docket congestion between the two forums."  *In re Adobe*, 823 F. App'x at 932.  The NDCA and WDTX generally are comparable in caseload and time-to-trial, as the Federal Circuit recognized in 2021.  *In re Juniper Networks*, 14 F.4th 1313, 1322 (Fed. Cir. 2021).  Moreover, because this factor frequently calls for speculation, where, as here, several "relevant factors weigh in favor of transfer or are neutral, 'then the speed of the transferee district court should not alone outweigh those other factors.'"  *Id*. at 1344 n.5 (citing *Genentech*, 566 F.3d at 1347).

### 3.    Familiarity with the governing law and conflicts of law are neutral.

The last two factors are neutral. There are no perceived conflicts of law and both districts are equally qualified to apply patent law.  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008).

## V.    CONCLUSION

When a defendant is headquartered in the NDCA, its relevant witnesses and documents are in the NDCA, and several third parties are subject to subpoena in the NDCA, retaining the case in the WDTX is not convenient or in the interests of justice.  *In re Adobe,* 823 Fed. App'x at 931-32.  NVIDIA respectfully requests that this case be transferred to the NDCA.

 Date: December 23, 2024                    Respectfully submitted,

                                            */s/ Mark N. Osborn*

REDACTED VERSION

Mark N. Osborn
Texas Bar No. 15326700
Valerie R. Auger
Texas Bar No. 24076251
**KEMP SMITH LLP**
221 N. Kansas, Suite 1700
El Paso, Texas 79901
915 546-5214
mosborn@kempsmith.com
valerie.auger@kempsmith.com


John M. Guaragna
Texas Bar No. 24043308
Michael Saulnier
Texas Bar No. 24131647
**DLA Piper LLP (US)**
303 Colorado Street, Suite 3000
Austin, TX 78701
Tel: 512.457.7000
Fax: 512.457.7001
John.guaragna@us.dlapiper.com
Michael.saulnier@dlapiper.com

Mark Fowler
Yakov Zolotorev (*Pro hac vice*)
Carrie Williamson (*Pro hac vice*)
**DLA Piper LLP (US)**
3203 Hanover Street, Suite 100
East Palo Alto, CA 94304
Tel: 650.833.2000
Fax: 650.833.2001
Mark.fowler@us.dlapiper.com
Jake.zolotorev@us.dlapiper.com
Carrie.williamson@us.dlapiper.com

Clayton Thompson (*Pro Hac Vice*)
**DLA Piper LLP (US)**
1201 West Peachtree Street, Suite 2900
Atlanta, GA 30309-3449
Tel: 404.736.7800
Fax: 404.682.7800
clayton.thompson@dlapiper.com

Catherine Huang (*Pro Hac Vice*)
**DLA Piper LLP (US)**

REDACTED VERSION

4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Tel: 858.677.1400
Fax: 858.677.1401
Catherine.huang@us.dlapiper.com

Peter F. Nelson (*Pro Hac Vice*)
**DLA Piper LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel: 202.799.4000
Fax: 202.799.5000
Peter.nelson@us.dlapiper.com

Charles Loughlin (*Pro Hac Vice*)
Christopher Fitzpatrick (*Pro Hac Vice*)
Justin Bernick *(Pro Hac Vice)*
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Tel: 202.637.5661

**ATTORNEYS FOR DEFENDANT
NVIDIA CORPORATION**

22

REDACTED VERSION

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2024, I served or caused to have served the foregoing

on counsel of record via email with the sealed motion to which the foregoing was appended.


*/s/ Carrie Williamson*
Carrie Williamson

## **CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for NVIDIA conferred with Plaintiff's counsel. Plaintiff

opposes NVIDIA's request sought in this motion. Microsoft and RPX support NVIDIA's

motion.

*/s/ Mark Osborn*
Mark Osborn


## **CERTIFICATE OF SERVICE**

I certify that, on January 21, 2025, the foregoing was electronically filed with the Clerk of

Court using CM/ECF, and served via CM/ECF upon all counsel of record who are deemed to have

consented to electronic service per Local Rule CV-5(b)(1).

/s/ Mark N. Osborn
Mark N. Osborn

.