IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| XOCKETS, INC., <br><br> Plaintiff, <br><br> v. <br><br> NVIDIA CORPORATION, MICROSOFT CORPORATION, and RPX CORPORATION, <br><br> Defendants. | Civil Action No. 6:24-cv-453-LS <br><br> JURY TRIAL DEMANDED |

**DEFENDANT MICROSOFT CORPORATION'S
REPLY IN SUPPORT OF NVIDIA'S MOTION TO TRANSFER VENUE**

Xockets' Opposition makes clear that the relevant factors to transfer under § 1404(a) all point strongly in favor of transfer to NDCA. Xockets' cursory treatment of Microsoft in its Opposition reinforces what Microsoft has argued—that Microsoft is accused only of using accused *NVIDIA* products, so the most relevant witnesses are with NVIDIA in NDCA. To the extent Microsoft has relevant trial witnesses, venue discovery made clear that Microsoft's most likely trial witnesses are located in or around its headquarters in Washington, which is significantly closer to, and easier to travel to, NDCA than WDTX for trial. Beyond this, Xockets' Opposition improperly relies on an unaccused non-NVIDIA product (Boost) that is outside the scope of its complaint, contrary to this Court's ruling otherwise. The handful of Microsoft employees identified in Xockets' Opposition are unlikely trial witnesses because their knowledge is immaterial to this particular case and, in any event, the testing and marketing functions identified by Xockets are performed in and/or directed from Microsoft's headquarters in Washington. Thus, the Microsoft-specific facts do not undermine, and in fact support, transfer.

1

### A. Witnesses relevant to Xockets allegations against Microsoft are at NVIDIA.

As explained in Microsoft's Motion to Sever and Stay Patent Claims Under the Customer Suit Exception (Dkt. 139), Xockets' claims asserted in its complaint against Microsoft are based entirely on Microsoft's alleged use of the NVIDIA Accused Products. Dkt 139 at 6–9. Xockets does not credibly dispute this premise. Instead, Xockets speculates about hypothetical customization Microsoft might possibly perform. Opp. at 13. But, as explained below in Section D, Xockets fails to show that any hypothetically possible customization has any relevance to the specific accused NVIDIA products, the Asserted Patents, the Microsoft witnesses Xockets identifies, or the state of Texas. Further, this speculation is belied by Xockets' infringement contentions, which rely on a single chart to allege infringement against both Microsoft and NVIDIA in exactly the same manner: i.e., that the accused NVIDIA products infringe on their own and Microsoft is merely alleged to infringe by using these accused NVIDIA products. *See, e.g.*, Dkt. 164-2 (claim chart highlighting that all references to Microsoft allege nothing more than use of the accused NVIDIA products). As such, the most relevant witnesses and evidence will come from NVIDIA or Xockets, and Microsoft thus joins NVIDIA's Motion to Transfer Venue (Dkt. 145) and its reply (Dkt. 223-1), which explain why the relevant witnesses and evidence from NVIDIA and Xockets are most strongly connected to California such that the most convenient venue for this dispute would be NDCA.

### B. Xockets' reliance on non-NVIDIA products exceeds the scope of its complaint and has already been rejected by the Court.

Xockets improperly attempts to rely on facts relating to non-accused, non-NVIDIA products, even though such products are outside the scope of its complaint and not properly at issue in this case. *See, e.g.*, Opp. at 3 ("*Microsoft* and NVIDIA *DPUs*"), 13 ("*certain Microsoft products*, such as Azure Boost, that are not provided by NVIDIA"). The Court, in deciding

2

Xockets' motion to compel and determining the proper scope of discovery for this transfer motion, expressly held that it "adopts Xockets' definition of 'Accused Products' from its operative complaint. *See* ECF No. 7 ¶ 9 n.6." Dkt. 203 at 3 n.12. The complaint's definition adopted by the Court states, "*See* … paragraphs 188, 209, and 244 for Accused Products." Dkt. 7 ¶ 9 n.6. Paragraphs 188 and 209 of the complaint refer exclusively to NVIDIA and NVIDIA products. *Id.* ¶¶ 188, 209. Paragraph 244 identifies the accused products for Microsoft by referring exclusively to NVIDIA products that the complaint merely alleges are used by Microsoft. *Id.* ¶ 244 ("NVIDIA Bluefield DPUs and ConnectX DPUs," "NVIDIA NVLink Switch DPUs," "NVIDIA's Hopper and Blackwell GPU-enabled server computer systems"). Thus—as the Court has already ruled in adopting Xockets' complaint definition of Accused Products—no non-NVIDIA products are properly at issue in this case because they are not within the scope of Xockets' complaint. The Court should thus disregard Xockets' arguments relating to these products in analyzing whether to transfer venue.

### C. Venue discovery showed Microsoft's likely trial witnesses and relevant activities are primarily based in Washington.

Xockets' Opposition omits the evidence it obtained in venue discovery showing Microsoft's activities and relevant witnesses are primarily located closer to NDCA. Though the physical location of servers with accused products is immaterial to a patent case,[1] Xockets relies on servers in Texas in arguing against transfer. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 214-7 (Xockets Opp. Ex. 4) at 10. For the accused NVIDIA ConnectX products, ▮▮▮

---

[1] No evidence will need to be gathered from the physical server itself and Xockets does not contend otherwise or offer any explanation why the physical server location is relevant to transfer.

3

████████████████

████████████████████████████████████████████████. *Id.* at 11.  Microsoft has tested ██

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████. *Id.* at 13.

For people with primary responsibility for various aspects of Microsoft's use of the accused NVIDIA products (i.e., the list of people that would include the most likely trial witnesses), Microsoft identified ██ people across all the accused NVIDIA products, with ██ in Washington, ██ in California, ██ in Texas, and ██ in other locations.  *Id.* at 11–14.[2]  Notably, for two of the accused NVIDIA products (Bluefield and ConnectX), ████████████████████████████ ████████████ (*id.*), and Xockets has not contended that there are any relevant witnesses in Texas for those products.

Despite pointing to three witnesses knowledgeable about validation or systems engineering for certain accused NVIDIA products (e.g., Opp. at 12 (identifying ████████████████ ████████)), Xockets omits that ████████████████████████████████████████ ████████ and is thus more closely located to NDCA, supporting transfer.  Dkt. 214-13 (Xockets Opp. Ex. 18) at 56:16–19.  And despite pointing to two individuals knowledgeable about marketing in Texas, Xockets omits that Microsoft's corporate representative explained that Microsoft's marketing ████████████████████████████████████████████████████████████████ ████████████████████████████████ Dkt. 214-12 (Xockets Opp. Ex. 17) at 24:17–25:6.  Thus, while there may be individuals with some knowledge of marketing in Texas, ████████████████

---

[2] Xockets makes the inexplicable argument that "Microsoft does not assert that any relevant Microsoft related witness is located in NDCA." Opp. at 11.  But as Xockets admits just two sentences later, Microsoft did identify individuals in California.  *Id.*  It is true that the majority of Microsoft's witnesses and relevant activities are based in Redmond, Washington rather than California—something Xockets fails to acknowledge in its Opposition—but this still supports transfer to the NDCA given that Redmond, Washington is substantially closer to the NDCA than this Court.

4

██████████████████████████████████, which is more closely located to NDCA, supporting transfer.

Thus, the majority of Microsoft's witnesses and relevant activities are based in Redmond, Washington, which is substantially closer to NDCA than this Court. As the Fifth Circuit has explained, when the distance between venues exceeds 100 miles, "the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *In re TikTok*, 85 F.4th 352, 361 (5th Cir. 2023). "This is an 'obvious conclusion' because 'it is more convenient for witnesses to testify at home[,]' and 'additional distance means additional travel time ... meal and lodging expenses' and time 'witnesses must be away from their regular employment.' Witnesses also suffer 'personal costs associated with being away from work, family, and community' when they testify far from home." *Id.* (citation omitted). Thus, under binding precedent, Microsoft's witnesses in Redmond, Washington—which substantially outnumber its witnesses in Texas—strongly support transfer under the convenience of witnesses factor.

D. **Xockets relies on irrelevant employees in Texas who are not likely trial witnesses.**

Next, Xockets attempts to rely on Microsoft witnesses responsible for aspects of using the NVIDIA products that have little to no relevance to Xockets' patent claims. Xockets identifies only ██ Microsoft witnesses. Opp. at 12. Xockets contends that ████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████ Dkt. 214-13 (Xockets Opp. Ex. 18) at 56:16–19. But Xockets' patents have nothing to do with ██████████████████████, and Xockets does not contend otherwise. *See generally* Dkt. 7-1 to 7-7 (Asserted Patents). Xockets further identifies ████████████ ████████████████████████████████████████████████████████████████████████████████

5

████████████████

████████████████████████████████████████████

██████████████████████████████████████ Dkt. 214-13 (Xockets Opp. Ex. 18) at 47:13–48:1.  But again, Xockets' patents do not claim any novel method of ████ ███████████████████████████████, *see* Dkt. 7-1 to 7-7, and so Xockets has failed to show that these witnesses have knowledge that is specifically relevant to the Asserted Patents.  Even if this ████ were relevant, Xockets fails to acknowledge that ████████████████ ██████████████████████████████████████. Dkt. 214-13 (Xockets Opp. Ex. 18) at 56:16–19.

Next, Xockets identifies ██████████████████████ as having knowledge of "marketing."  Opp. at 12.  But as explained above, ██████████████████████ ██████████████, much closer to NDCA.  Dkt. 214-12 (Xockets Opp. Ex. 17) at 24:17–25:6.  Though Xockets argues marketing witnesses have knowledge relevant to infringement and damages, it fails to explain how.  The accused NVIDIA products operate in accordance with their technical designs and specifications regardless of how Microsoft markets its own services, so Microsoft's marketing is immaterial to infringement.  And, as explained in Microsoft's Motion to Sever and Stay, any award of damages against NVIDIA will exhaust Xockets' claims against Microsoft, meaning that any argument that Microsoft's witnesses are relevant to damages is speculative at best.  *See* Dkt. 139 at 8 (quoting *Decapolis Sys., LLC v. Univ. Health Sys. Servs. of Tex., Inc.*, No. 6:21-CV-01252-ADA, 2022 WL 2373705, at *2 (W.D. Tex. June 30, 2022) ("if [the supplier] is found to infringe, Decapolis will be precluded from seeking damages against the [customers] here under the doctrine of patent exhaustion")).

The final Microsoft employee identified by Xockets is ██████████, who is knowledgeable about ████████████████ Opp. at 12.  As Microsoft's corporate representative

6



explained, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 214-13 (Xockets Opp. Ex. 18) at 51:14–22.  But Xockets' patents do not claim any invention relating to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and so Xockets fails to show that ▮▮▮▮▮▮ has any relevance to transfer.

Thus, Xockets has improperly relied on Microsoft witnesses responsible for irrelevant aspects of Microsoft's use of the accused NVIDIA products.  Xockets argues these witnesses are relevant because, Xockets speculates, Microsoft "decide[s] which features to implement, how to customize these features, and whether to implement NVIDIA's features or their own."  Opp. at 13.  But neither Xockets' complaint (Dkt. 7) nor its infringement contentions (*e.g.*, Dkt. 164-2) identify any Microsoft customization as relevant to any Asserted Patents.  Instead, Xockets alleges infringement based *solely* on the premise that Microsoft uses the accused NVIDIA products.  Further, the basis of Xockets' speculation about customization is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Dkt. 214-9 (Xockets Opp. Ex. 13) at 89:2–91:3.  Xockets' argument thus depends on several unsupported leaps in logic: that the specific accused NVIDIA products are customized (even though ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), that this customization is done by Microsoft (even though ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), that this customization is somehow relevant to Xockets' Asserted Patents (even though Xockets makes no attempt to show how), and that this customization would somehow be tied to Texas (even though Xockets has only identified ▮ specific Microsoft witnesses in Texas with irrelevant knowledge, so even if these employees were involved in customization it would be irrelevant customization).  Xockets thus fails to show that any of the ▮ Microsoft witnesses it

identifies—whether involved in any speculative customization or not—support maintaining the case in this venue despite the stronger connections of both Xockets and NVIDIA to NDCA.

### E. Microsoft's data centers and files are nationwide and there is nothing uniquely relevant to those in Texas

The only other Microsoft-specific evidence Xockets relies on is the location of Microsoft datacenters, internal file storage, and offices. These are of little importance as it is unlikely any evidence would need to be physically gathered from these locations, and Xockets does not contend otherwise. Further, as Xockets acknowledges, these facts are not uniquely linked to this district. Xockets admits that Microsoft datacenters also have servers with the accused NVIDIA products in Washington and California. Opp. at 18. Xockets further admits that Microsoft's internal files are "stored in locations throughout the United States." *Id.* And Xockets does not dispute that Microsoft also has offices in California and Washington. Dkt. 147-1 ¶ 3. Thus, these facts do not demonstrate any particular connection to this district. And, as explained above, Xockets has only identified a handful of persons connected to Microsoft's Texas offices, all with knowledge irrelevant to Xockets' Asserted Patents and this case. Thus, none of the Microsoft-specific evidence supports maintaining the case in this Court, particularly where both NVIDIA and Xockets—the primary sources of relevant evidence given the scope of Xockets' complaint—are more strongly connected to NDCA.

## CONCLUSION

Xockets' limited argument relating to Microsoft should be given little weight because Xockets' complaint focuses solely on the accused NVIDIA products, confirming that NVIDIA witnesses will be most relevant. Even so, Xockets has failed to show that any Microsoft-specific facts support keeping the case in this venue. To the contrary, the majority of Microsoft's witnesses are located closer to NDCA, which, when combined with NVIDIA's and Xockets' own ties to

NDCA, supports transfer.  Microsoft therefore respectfully requests the Court grant NVIDIA's Motion to Transfer and transfer this case to NDCA (including transfer of any companion case that is severed and stayed pursuant to Microsoft's customer stay motion).

Dated:  October 2, 2025                          Respectfully submitted,

By: */s/ Kelly C. Hunsaker*
Thomas M. Melsheimer
State Bar No. 13922550
Samuel W. Riebe
State Bar No. 24136101
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Tel: (214) 453-6500
Fax: (214) 453-6400
tmelsheimer@winston.com
sriebe@winston.com

Kelly C. Hunsaker
CA Bar No. 168307
Matthew R. McCullough (*pro hac vice*)
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Tel. (650) 858-6500
Fax (650) 858-6559
khunsaker@winston.com
mrmccullough@winston.com

Jeffrey L. Kessler (*pro hac vice*)
Aldo A. Badini (*pro hac vice*)
Susannah P. Torpey (*pro hac vice*)
Lauren E. Duxstad (*pro hac vice*)
Artem Khrapko (*pro hac vice*)
Rebecca Ou (*pro hac vice*)
Daniel Marzagalli (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com

abadini@winston.com
storpey@winston.com
lduxstad@winston.com
akhrapko@winston.com
rou@winston.com
dmarzagalli@winston.com

Scott M. Border (*pro hac vice*)
**WINSTON & STRAWN LLP**
1901 L Street, N.W.
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
sborder@winston.com

Bruce A. Koehler
Andres E. Almanzan
**MOUNCE, GREEN, MYERS, SAFI, PAXSON & GALATZAN, P.C.**
P.O. Box 1977
El Paso, TX 79950
Tel: (915) 532-2000
Fax: (915) 541-1548
koehler@mgmsg.com
almanzan@mgmsg.com

*Attorneys for Defendant*
*Microsoft Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2025, the foregoing document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Kelly C. Hunsaker*
Kelly C. Hunsaker
